Case Nos. 2021-2299, -2338

───────────────────────────

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

───────────────────────────

## COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,
*Plaintiff-Appellant,*

v.

## SEIRUS INNOVATIVE ACCESSORIES, INC.,
*Defendant-Cross-Appellant.*

───────────────────────────

Appeals from the United States District Court
for the Southern District of California
Case No. 3:17-cv-01781-HZ, Judge Marco A. Hernandez

───────────────────────────

# CORRECTED OPENING BRIEF OF PLAINTIFF-APPELLANT
# COLUMBIA SPORTSWEAR NORTH AMERICA, INC.

───────────────────────────

Nika Aldrich
Scott D. Eads
Sara Kobak
SCHWABE, WILLIAMSON &
    WYATT P.C.
1211 S.W. 5th Avenue, Suite 1900
Portland, Oregon 97204
Telephone:  503-222-9981
Facsimile:  503-796-2900

*Attorneys for Columbia Sportswear
North America, Inc.*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Plaintiff-Appellant Columbia Sportswear North America, Inc. certifies:

1.    The full name of every party or *amicus curiae* represented by me is:  **Columbia Sportswear North America, Inc.**

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  **Not Applicable.**

3.    All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or *amicus curiae* represented by me are:  **Columbia Sportswear Company**

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or *amicus curiae*, or are expected to appear in this Court, are:

**SCHWABE, WILLIAMSON & WYATT P.C.:   Jason A. Wrubleski, David R. Boyajian, David W. Axelrod, Devon Z. Newman, Brenna K. Legaard, and Angela E. Addae.**

**STOEL RIVES LLP:    Brian Nese.**

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal is:

**_Columbia Sportswear North America, Inc. and Columbia Sportswear Company v. Ventex Co., Ltd._, U.S.D.C. D. OR. No. 3:17-cv-00623-MO.**

6.     Organizational victims in criminal cases and debtors and trustees in bankruptcy cases:  **Not Applicable.**

Dated this 13th day of January, 2022.

/s/  Nika Aldrich
Nika Aldrich

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

STATEMENT OF RELATED CASES ........................................ 1

STATEMENT OF JURISDICTION ........................................... 1

STATEMENT OF THE ISSUES ................................................ 2

STATEMENT OF THE CASE .................................................... 4

    I.    Background ............................................................... 4

    II.    The Field of Art and Asserted Design Patent ........................ 5

    III.    Seirus's Infringement ................................................ 11

    IV.    Because of Seirus's Infringement, Columbia has Never Used the D'093 Patented Design ........................................... 17

    V.    The Lawsuit and its Procedural History .............................. 18

        A.    District Court Proceedings ........................................ 18

        B.    The Prior Appeal .................................................. 20

        C.    The Reexamination ................................................ 22

        D.    Proceedings on Remand .......................................... 23

        E.    The Jury Verdict .................................................. 41

SUMMARY OF ARGUMENT .................................................. 41

        A.    Errors Concerning Alleged Comparison Prior Art ...... 42

        B.    Errors Concerning Relevance of Source Confusion ..... 44

ARGUMENT ........................................................................ 46

    I.    Standards of Review ................................................ 46

II.   The District Court Erred in Its Jury Instructions by
      Failing to Limit the Scope of Comparison Prior Art for
      the  Design Patent Infringement Test. ................................. 48

      A.   The scope of prior art relevant to design patent
           infringement is limited to designs for the particular
           article of manufacture identified in the asserted
           design patent. ................................................................ 50

      B.   At minimum, the Court should hold the scope of
           prior art is limited to the design corpus relevant to
           an obviousness analysis. ............................................... 54

      C.   The scope of the D'093 Patent is limited to "heat
           reflective materials" ..................................................... 54

      D.   The court's jury instructions misstated the law and
           erroneously instructed the jury that all prior
           patents are prior art that could be considered. ........... 56

      E.   The district court's jury instructions were erroneous
           even adopting the broader design corpus applicable
           to obviousness ............................................................... 59

      F.   The district court's failure to properly instruct the
           jury about the relevant comparison prior art for the
           design patent infringement test was prejudicial ......... 60

      G.   If the Court remands for consideration of any of
           Seirus's prior art, it should order the district court
           to instruct the jury about the meaning of "heat
           reflective material." ...................................................... 62

III.  The District Court Erred in Prohibiting Columbia's
      Counsel From Distinguishing Prior Art Based on
      Whether  it Was "Heat Reflective." ....................................... 64

IV.   The District Court Erred by Failing to Instruct the
      Jury  That Confusion as to Source is Not an
      Appropriate  Consideration For Design Patent
      Infringement ........................................................................ 67

H.     This Court's precedents confirm that "likelihood of confusion" is not an appropriate consideration for design patent infringement ............................................ 67

I.      The district court erred in failing to instruct the jury on the law as elucidated in *Unette*, *Braun*, and *L.A. Gear* ...................................................................... 74

J.      The district court's failure to provide a *Unette/Braun/L.A. Gear* clarifying instruction was prejudicial ...................................................................... 76

K.     This Court's prior decision in this case does not disturb the Court's earlier precedent ............................ 78

CONCLUSION ......................................................................... 82

ADDENDUM

Judgment (Dkt. 609) ............................................................ Appx1

Jury Verdict Form (Dkt.606) ............................................. Appx3

U.S. Patent D657,093 (D'093 Patent) ............................... Appx4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ............................................................ 53

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) .............................................................. 47

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) ...................................................... *passim*

*Columbia Sportswear North Am., Inc. v. Seirus Innovative Accessories, Inc.*,
202 F. Supp. 3d 1186 (D. Or. 2016) ...................................................... 19

*Columbia Sportswear North Am., Inc. v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) ...................................................... *passim*

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) ............................................................ 74

*Curver Luxembourg, SARL v. Home Expressions Inc.*,
938 F.3d 1334 (Fed. Cir. 2019) ...................................................... *passim*

*Deckers Corp. v. United States*,
752 F.3d 949 (Fed. Cir. 2014) ............................................................. 80

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ...................................................... *passim*

*Engel Indus. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999) ............................................... 22, 56, 59

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314 (Fed. Cir. 2016) ............................................... 30, 63, 64

*Gilbrook v. City of Westminster,*
    177 F.3d 839 (9th Cir. 1999) ........................................................ 47, 76

*Gorham Co. v. White,*
    81 U.S. 511, 20 L. Ed. 731 (1871) ................................................ *passim*

*Hupp v. Siroflex of Am., Inc.,*
    122 F.3d 1456 (Fed. Cir. 1997) .................................................... *passim*

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
    589 F.3d 1233 (Fed. Cir. 2009) .................................................... *passim*

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,*
    988 F.2d 1117 (Fed. Cir. 1993) .................................................... *passim*

*Lululemon Athletica Canada Inc. v. Peloton Interactive, Inc.,*
    Case No. 2:21-CV-9252 (C.D. Cal. Nov. 29, 2021) .............................. 81

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.,*
    93 Fed. Appx. 214 (Fed. Cir. 2004) ................................................ 73

*Montgomery Ward & Co. v. Duncan,*
    311 U.S. 243 (1940) .................................................................... 47, 76

*Newell Cos., v. Kenney Mfg. Co.,*
    864 F.2d 757 (Fed. Cir. 1988) ........................................................ 80

*Peloton Interactive, Inc. v. Lululemon Athletica Canada Inc.,*
    Case No. 1:21-cv-10071-ALC (S.D.N.Y. Nov. 24, 2021) ...................... 81

*Robert Bosch, LLC v. Pylon Mfg. Corp.,*
    719 F.3d 1305 (Fed. Cir. 2013) ...................................................... 73

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.,*
    655 F.3d 1364 (Fed. Cir. 2011) ...................................................... 48

*In re Surgisil, L.L.P.,*
    14 F.4th 1380 (Oct. 4, 2021) ........................................................ *passim*

*Unette Corp. v. Unit Pack Co. Inc.,*
    785 F.2d 1026 (Fed. Cir. 1986) .................................................... *passim*

*Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*,
  157 F.3d 1311 (Fed. Cir. 1998) ........................................... 53

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) ........................................... 46

*Wagner v. Cnty. of Maricopa*,
  747 F.3d 1048 (9th Cir. 2013) ............................................. 48

*Wilkerson v. Wheeler*,
  772 F.3d 834 (9th Cir. 2014) ..................................... *passim*

## Statutes

28 U.S.C. § 1291 ......................................................................... 2

28 U.S.C. § 1295(a)(1) ............................................................... 2

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1338(a) .................................................................... 1

## Other Authorities

1 McCarthy on Trademarks and Unfair Competition § 6:11 ................. 80

Adding a Logo to a Copycat Product Qualif[ies] as a
  Successful Design Around?  Stern Kessler, IP Hot Topic:
  Does Adding a Logo to a Copycat Product Qualify as a
  Successful Design Around? (available at
  https://www.sternekessler.com/news-insights/client-
  alerts/ip-hot-topic-does-adding-logo-copycat-product-
  qualify-successful-design) ................................................... 80

MPEP 1502 ............................................................................... 51

# STATEMENT OF RELATED CASES

This is the second appeal to this Court in this patent dispute.  The decision following the first appeal is reported at *Columbia Sportswear North Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019) ("*Columbia I*").  No other appeal from this case has been before this Court or any other appellate court in the United States.

In April 2017, plaintiff-appellant Columbia Sportswear North America, Inc. ("Columbia") and its affiliates filed suit against Ventex Co., Ltd. ("Ventex") in the United States District Court for the District of Oregon, accusing Ventex and its agent of infringing the patent at issue in this appeal.  That case, which is captioned *Columbia Sportswear North America, Inc., et al. v. Ventex Co., Ltd, et al.*, Case No. 3:17-cv-00623 (D. Or.), is stayed pending the outcome of this appeal.

Counsel is unaware of any other case that will directly affect, or will be directly affected by, this Court's decision in this appeal.

# STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and § 1338(a).  The district court entered final judgment on August 20, 2021.  Columbia timely filed a notice of appeal on September 7, 2021.  This

Court has jurisdiction under 28 U.S.C. § 1291 and § 1295(a)(1).

## STATEMENT OF THE ISSUES

(1)   As a matter of first impression for the Court, and in view of this Court's recent decision in *In re Surgisil, L.L.P.*, 14 F.4th 1380, 1382 (Oct. 4, 2021), what is the relevant scope of "comparison prior art" that is to be considered in a design patent infringement analysis under *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678-79 (Fed. Cir. 2008) (en banc)?

(2)   Whether the district court erred in instructing the jury that *all* prior patents are comparison prior art to a design patent, and in failing to instruct the jury to limit the scope of comparison prior art for the design infringement analysis to "heat reflective materials," which is the article of manufacture identified in the claim of the asserted U.S. Patent D657,093 (D'093 Patent)?

(3)   Whether, in the alternative, the district court erred in failing to instruct that "the scope of prior art" to a design patent is limited to "designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their designs," as this Court held in *Hupp v. Siroflex of Am., Inc.*, 122

F.3d 1456, 1462 (Fed. Cir. 1997).

(4)    Whether the district court erred in prohibiting Columbia from distinguishing prior art on grounds that it failed to disclose a "heat reflective material," which is the article of manufacture identified in the claim of D'093 Patent?

(5)    Where the *Gorham* standard applicable to design patent infringement concerns "deceiving" a consumer concerning products available for "purchase," and where (a) Columbia did not sell a patented product for purchase, and where (b) Seirus applied its brand name to its products, whether the district court erred in failing to instruct the jury that:

a.    "Likelihood of confusion," or "confusion as to the source or provider of the goods accused of infringing is irrelevant to determining whether a patent is infringed," as this Court held in *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992), and *Unette Corp. v. Unit Pack Co. Inc.,* 785 F.2d 1026, 1029 (Fed. Cir. 1986); and

b.    "Labelling a product with source identification or branding does not avoid infringement," as this Court held in *L.A. Gear, Inc. v.*

*Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993).

## STATEMENT OF THE CASE

### I.    Background

This case concerns Columbia's groundbreaking "heat reflective material," which is sold under the trademark Omni-Heat®. The Omni-Heat® product line has earned Columbia wide acclaim in the market and over $1 billion in sales since it was launched in 2010. (Appx131.)

Heat reflective materials derive from NASA's invention of the space blanket, a thin sheet of highly reflective metal foil that reflects the wearer's heat back to them. The clothing industry has long since used heat reflective materials in apparel. (Appx617-618.) But, although the metal foil is highly heat reflective, it disadvantageously blocks the transfer of moisture vapor away from the wearer. This lack of "breathability" can cause the inside of the garment to become wet, accelerating heat loss due to the increased heat conductivity of wet materials. (Appx779-780.)

In 2008, Columbia invented a new approach. Columbia used two layers: a layer of heat reflective foil glued to a layer of breathable, base material. Pieces of the heat reflective foil were arranged in an array on

the base material, leaving portions of the base material uncovered. (Appx779-781.)  This way, the foil would reflect heat to keep the wearer warm while the exposed sections of base material would ensure breathability, keeping the inside of the garment dry.  While Columbia's engineering team had developed the material that could achieve these characteristics, Columbia still had to develop appealing designs that could be applied to such a heat reflective material—a particular and peculiar article of manufacture.

## II.    The Field of Art and Asserted Design Patent

Columbia tasked its Design Director, Zach Snyder, to create appealing designs that could be applied to heat reflective materials.

Mr. Snyder considered many factors in the process of inventing designs for this unique application, including aesthetically pleasing arrays of metallic foil to be affixed to the base material. (Appx781.)  As he testified at trial, designing with heat reflective materials is different from designing with conventional fabrics.  For example, with conventional fabrics, designs can be implemented with ink, which has well-understood properties and is readily available in many different colors.  (Appx782.)  When designing for a two-layer heat reflective

material, however, the design is implemented through shapes of foil glued onto the base material. The combination of, and contrast between, the shapes and colors of the reflective top layer and the solid base material underneath creates the ornamental design seen by ordinary observers. (Appx780-781.) The foil is inherently shiny, which caused Mr. Snyder "to think a little differently about how that will interact with the material below it." (Appx782.)

While working on potential designs, Mr. Snyder considered the inherent properties of the composite materials (base substrate, metallic foil, and glue), and the manufacturing process by which the new material would be assembled. (Appx783-784.) He was also concerned about how the design, implemented with metallic foil, would be viewed by consumers. Mr. Snyder explained "people are not used to shiny metallics on their clothes … so I was trying to consider how … you work with that in something that would be very unexpected for the people wearing it." (Appx784-785.)

Mr. Snyder not only sought to create a design that would look appealing on a variety of different garments: for example, a "ski jacket," a "coat that you wear in the city," "gloves," and "socks," but he also

wanted a design that would be appropriate for men, women, and children. Mr. Snyder was "very cognizant of this idea that it needs to appeal to … a wide audience." (Appx785.)

He also considered the goal of creating a "connection" in the mind of the user between "the thing that you're designing" and "what you're designing for." (Appx778.) For example, Mr. Snyder wanted to convey intuitively to the purchaser of a garment that this unique, heat reflective material on the inside of the garment would make the user warmer. When working with ink, conveying the concept of "heat" is relatively straightforward; a designer can use the color red, which is often associated with heat. But Mr. Snyder was attempting to convey the concept of heat on a heat reflective material, which has only a shiny layer of foil adhered onto a bottom layer—a difficult design problem. (Appx783.)

For inspiration, Mr. Snyder drew upon his experience growing up in Arizona in inventing his designs:

> [O]ne of the things that happens on a hot summer day is, in the distance, you can see heat ripples, right? Like so this mirage of—of distortion that comes from the heat rising off the ground. And I thought that could be … a great reference point for this idea of communicating heat.

> And one of the things that I liked about the heat ripples is both that it—it was a naturally occurring heat reference. And I also liked that it was something that could translate into a simple shape, which for me fit that idea of being very universal.

(Appx786.)

With this vision in mind, Mr. Snyder invented the following design for a heat reflective material, showing the contrast between the top reflective layer (white) and the solid base material (black):



(Appx4 (original, undistorted drawings are at Appx1704-1706).) On April 3, 2012, the Patent Office issued the D'093 patent for this inventive design for a "heat reflective material." (*Id.*)

The D'093 patent is not directed to just any material, but rather is specifically directed to a particular ornamental design for a *particular* article of manufacture. It is entitled "Heat Reflective Material" and claims "[t]he ornamental design of a heat reflective material, as shown and described." (*Id.*) It includes Figure 1, shown above, which is described as "an elevational view of a heat reflective material." (Appx5.) Figures 2 and 3 reinforce that the design is for a heat reflective material implemented through two composite layers. For example, Figure 2 shows the three-dimensional nature of the heat reflective material, with the top (white) layer cut out in the ornamental shape glued onto the solid (black) bottom layer:



## FIG. 2

(Appx5, Appx1704.)

Figures 4-10 show various "perspective view[s] of the heat reflective material as used" in different garments, including hats, socks, and gloves. For example, Figures 7 and 8 below show the patented design for a heat reflective material being used in socks and gloves:



FIG. 7

FIG. 8

(Appx4-7, Appx1704-1706.)

## III.  Seirus's Infringement

In 2012, snow sports accessory manufacturer Seirus set out to copy Columbia's Omni-Heat® heat reflective material technology by obtaining samples from Columbia's Chinese and Korean manufacturers in violation of their contractual commitments to Columbia.  (Appx132-157.)  For its competing product, Seirus started with the following:



(Appx1436.)

Seirus then decided to add its brand name.  Seirus's CEO, Mike

Carey, explained that there was only one purpose for adding Seirus's

brand name; it was "to make sure everybody knew that it was our brand

that was associated with this product." (Appx1098-1099; Appx1528-1529, Appx1671-1672.)



(Appx1435.) Where Columbia marketed its products using its heat reflective material under the mark Omni-Heat®, Seirus adopted the name HeatWave™.

13



(Appx887-888; Appx1293.)

Like the D'093 Patent, Seirus's HeatWave™ heat reflective material is made by gluing a top layer of foil onto a solid base material. (Appx973.) As seen below, the Seirus design is virtually identical to Columbia's D'093 patented design, including the identical frequency and amplitude of the claimed D'093 design:



Columbia's patented design                    Seirus's design

(Appx1616.)

Indeed, and as shown in the demonstrative below, Figure 2 from Columbia's D'093 Patent fits seamlessly into Seirus's fabric design.



(Appx1617.) While the Seirus HeatWave™ heat reflective material includes the Seirus trademark "SEIRUS" in a stylized font, the addition of its trademark does not change the fact that the Seirus heat reflective material uses the claimed design from Columbia's D'093 design patent.

Like the examples in the D'093 Patent, Seirus uses its HeatWave™ heat reflective material on the inside of its gloves, socks, and hats.



Columbia's patented design          Seirus's design

(Appx1338.)  Thus, not only did Seirus take Columbia's idea for a heat reflective material, but it also took the ornamental design of the D'093 patent for its own use.

## IV.  Because of Seirus's Infringement, Columbia has Never Used the D'093 Patented Design

In addition to the patented D'093 design, Mr. Snyder also invented several other designs for heat reflective materials.  Columbia initially launched its Omni-Heat® Reflective product line with a pixilated design rather than the D'093 patented design.  (Appx127.)

Years after the initial launch, Columbia prepared to launch an additional set of products using a heat reflective material within its Omni-Heat® Reflective product line.  It considered using the D'093 patented design for this subsequent launch but by then Seirus was already using it.  Concerned about potential consumer confusion, Columbia opted for a different design.  (Appx127-129, Appx12.)  Thus, Columbia has never sold a product embodying its D'093 patented design.

## V.    The Lawsuit and its Procedural History

### A.    District Court Proceedings

Columbia filed this action in January 2015 in the District of Oregon, accusing Seirus's HeatWave™ line of products of infringing the D'093 patent and two utility patents.[1]

In March 2016, Seirus stipulated to judgment of no invalidity as to the D'093 patent.  (Appx104-105.)

Columbia thereafter asked the Court to construe the D'093 Patent and moved for summary judgment of infringement.  Seirus responded by arguing that its design did not infringe because Seirus's HeatWave™ heat reflective material had its source-identifying brand name on it.  As

---

[1] The two utility patents are not at issue in this appeal.

part of its non-infringement argument, Seirus also introduced a number of alleged prior art references that Seirus argued were so visually close that they required a finding of non-infringement. However, <u>none</u> of those prior art references disclosed a heat reflective material, which is the article of manufacture identified in the D'093 patent's claim.

In August 2016, the district court issued an order addressing the scope of the D'093 Patent and ruling in favor of Columbia on its summary judgment motion of infringement. *Columbia Sportswear North Am., Inc. v. Seirus Innovative Accessories, Inc.*, 202 F. Supp. 3d 1186 (D. Or. 2016) (Appx106-122.) Concerning the scope of the claim, the district court held that "Columbia's D'093 patent protects the 'ornamental design of a heat reflective material, as shown and described' in the claim." (Appx119.) Regarding infringement, the district court relied on *L.A. Gear* for the rule that an infringer cannot "avoid[] infringement by labelling" a product with a source identifier and thus ruled that Seirus's brand name on the heat reflective material did not avoid infringement. (Appx115, Appx121 (citing *L.A. Gear*, 988 F.2d at 1126).)

The district court also held that, because the patent was limited to "heat reflective material," much of the alleged prior art was from

19

"products far afield" and thus "not relevant to a comparison between Columbia's and Seirus's designs for heat reflective material." (Appx119-120.)   The district court held that "[t]he only prior art that even approaches relevance to Columbia's design patent" was a pair of patents issued to Blauer concerning "breathable shell[s] for outerwear."   But the district court further held that, even considering Blauer's design, "the contrasting waves of Seirus's design are still substantially closer to the contrasting wave design disclosed in the D'093 patent than either Seirus's or Columbia's design is to" Blauer's design.   (Appx120-121.) Thus, the district court found that Seirus infringed.  (Appx122.)

That left only the question of damages for a jury trial, which was held in September 2017.   The jury awarded Columbia Seirus's total profits from its sales of the infringing HeatWave™ products. (Appx158-159.)

### B.    The Prior Appeal

Seirus appealed both the summary judgment decision and the damages award.   A panel of this Court reversed, criticizing the district court's decision to exclude the added Seirus brand name from the infringement analysis.   *Columbia Sportswear North Am. Inc. v. Seirus*

*Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019) ("*Columbia I*"). While Columbia maintained that the district court followed the holding in *L.A. Gear*, a panel of this Court disagreed, stating:

> In that case, the parties did not dispute that the patented and accused designs were substantially similar. *L.A. Gear*, 988 F.2d at 1125. In fact, "copying [was] admitted." *Id.* In evaluating infringement there, we explained that design infringement is not avoided "by labelling." *Id.* at 1126. A would-be infringer should not escape liability for design patent infringement if a design is copied but labeled with its name. But *L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one.

*Id.*, 942 F.3d at 1131 (emphasis in original).

This Court also held that the district court improperly resolved fact issues in the infringement analysis, including the visual similarity of the patented design, the accused design, and the alleged prior art "Blauer" reference. *Id.*

Although Seirus challenged a number of the district court's factual determinations in its appeal, Seirus did *not* challenge the district court's legal conclusion that the scope of the D'093 Patent is limited to a "heat reflective material" (*see* Appx119), nor did this Court find any error in

21

that determination. Similarly, Seirus did not challenge the district court's conclusion that most of the asserted comparison prior art was "not relevant" to an infringement analysis. (Appx120.) Thus, when the mandate issued, those determinations (*e.g.* the scope of the D'093 patent and the exclusion of irrelevant "prior art") became the law of the case, subject to the mandate rule. *See Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1382-83 (Fed. Cir. 1999). This Court remanded the case to district court for a second trial limited to the issue of infringement.

### C.    The Reexamination

While the case was pending on appeal, Seirus filed a petition for *ex parte* reexamination of the D'093 Patent. Seirus asserted a number of the same alleged prior art references that it had submitted for consideration in opposition to Columbia's motion for non-infringement, in addition to more than 10 other references. These references included "Blauer," a purported prior art reference at issue here. (Appx481-484.)

The Examiner initially considered Blauer; however, he dropped his reliance on Blauer after Columbia explained that Blauer lacked the contrasting colors required by the D'093 patent. (Appx586, Appx593-596, Appx602-610.) Ultimately, the Patent Office granted a reexamination

certificate confirming patentability of the D'093 Patent claim. (Appx1443.)

## D.    Proceedings on Remand

On remand, two key issues permeated pretrial briefing: (i) the relevant scope of the admissible "comparison prior art" to the infringement analysis; and (ii) the role that actual or likely consumer confusion should play in any design patent infringement analysis, particularly given Seirus's addition of its brand name on the HeatWave™ heat reflective material. Those issues are addressed in turn below.

### 1.    Seirus's alleged "comparison prior art."

Seirus disclosed that it intended to rely on alleged prior art patents that the district court had already ruled were "not relevant" because they were "far afield" from "heat reflective materials." (Appx119-120.) Three of those patents are pertinent to this appeal.

U.S. Patent No. 1,515,792 ("Respess") is a utility patent from 1913 disclosing a complex machine for making fabric used "in making a rubber tire"—*i.e.* the interior structure of early radial tires. (Appx1467-1468, 1:25-28.) Seirus relies on Figure 5, below:



(*Id.*) Respess neither discloses nor teaches anything about "heat reflective materials." Indeed, the district court had previously ruled that Respess "is not relevant to a comparison between Columbia's and Seirus's designs for heat reflective material" (Appx120), a finding that was not challenged on appeal.

U.S. Patent No. 2,539,690 ("Boorn") is a utility patent from 1947 that discloses a method of inlaying plastic threads into plastic sheets. In Figure 6, below, "a plastic sheet 26 is shown as provided with the inlaid wavy stripes 27." (Appx1464-1465, 3:26-28.) It is formed by pressing the threads into the plastic sheets using rollers until they are flush, as shown in Figure 5.



(Appx1464.) Like Respess, Boorn neither discloses nor teaches anything about "heat reflective materials." Also like Respess, the district court previously ruled that Boorn "is not relevant to a comparison between Columbia's and Seirus's designs for heat reflective material." (Appx120.) That finding was not challenged on appeal.

U.S. Patent 5,626,949 to Blauer is a patent relating to waterproof shells—*i.e.*, rain jackets. (Appx1457-1461.) Like Boorn and Respess, Blauer discloses nothing about "heat reflective materials," let alone a design for any. Instead, Blauer discloses a "printed stratum" of acrylic urethane—a clear elastomer coating that "maintain[s] shell fabric appearance" while providing "dimensional stability." (*Id.* 3:56-59.) Consistent with the specification, Blauer's figure 5 shows his idea as white-on-white, representing a clear layer of urethane spread onto fabric.



FIG. 5

(Appx1459.) The district court had previously held that Blauer was "[t]he only prior art that even approaches relevance to Columbia's design patent." But the district court noted that, unlike the D'093 Patent, "[t]he waves in [Blauer] are not contrasting colors" and the wavelength and amplitude of the waves was very different from the Columbia design, which was the same as Seirus's. (Appx121.)

### 2. Arguments to the district court regarding alleged "prior art"

Through pretrial briefing, Seirus indicated its intent to argue that Respess, Boorn, and Blauer were relevant as comparison prior art for infringement, even though none disclosed heat reflective material. Specifically, Seirus intended to argue an abstruse point from theoretical physics that everything in the universe reflects at least some infinitesimal amount of heat and, therefore, all materials in the universe

are "heat reflective materials" within the meaning of the D'093 patent claim.

Columbia moved *in limine* to preclude this argument, noting that it had "already [been] rejected by the Court in its summary judgment/*Markman* ruling," which was not challenged on appeal, and therefore was "now law of the case." (Appx280-281.) Columbia also objected to the admissibility of all three prior art references because Seirus could not establish that they were related to the claimed "heat reflective material." (Appx323-327.).

At the same time, Seirus moved *in limine* to preclude Columbia from distinguishing any prior art based on whether it was a "heat reflective material" because, it argued, doing so allegedly would import a "functional" element into the patent claim. (Appx237-238.) Columbia opposed the motion on numerous grounds, including that it conflicted with the district court's prior rulings—unchallenged and undisturbed on appeal—concerning the scope of the D'093 Patent and the corresponding scope of relevant "comparison prior art." (Appx403-405.)

At the pretrial conference, the district court determined the references and arguments that would be allowed at trial. First, the

district court ruled that Seirus would be permitted to introduce any comparison prior art so long as it was directed at a "wave pattern[] on fabric"—*i.e.*, regardless of whether the pattern applied to "heat reflective material." (Appx421-430.)

Second, and contrary to its prior ruling, the district court precluded Columbia from making any arguments distinguishing prior art on the grounds that it was not a "heat reflectiv[e] material," apparently accepting Seirus's flawed argument that doing so would allow "infringement [to] turn[] on a functional aspect of [the] claim." (Appx238, Appx421.)

### 3. Seirus's reliance on the alleged "prior art" at trial

During trial, Seirus relied heavily on Respess, Boorn, and Blauer to argue that the accused HeatWave™ heat reflective material did not infringe the asserted claim of the D'093 patent. Seirus argued that this alleged comparison prior art was so visually similar to the D'093 patent that the scope of the D'093 did not encompass the design of the accused HeatWave™ heat reflective material. A significant part of the testimony of Seirus CEO Mike Carey concerned this art. (Appx1036-1042, Appx1139-1142.) On cross, Mr. Carey testified that he did not

28

understand these prior patents because they were "old," "difficult to understand," and for products that are "not an area that we make product for." (Appx1064, Appx1072.)

To establish that Blauer was not proper comparison prior art, Columbia asked Mr. Carey about the purpose of its printed stratum (*i.e.*, to improve "dimensional stability"). Seirus objected. The district court sustained Seirus's objection holding that Columbia's question concerned the "function" of the invention disclosed in Blauer, and thus was counter to the district court's *in limine* order. (Appx1064-1065.)

### 4. The district court's jury instructions concerning the relevant comparison prior art

During pretrial proceedings, Columbia sought two jury instructions concerning the relevance of alleged "prior art." Columbia's proposed instruction 9E read in relevant part as follows:

> The Design Patent is limited to the design of Heat Reflective Materials, as shown and described in the patent. The term "Heat Reflective Materials" has its plain and ordinary meaning. The ordinary meaning of a claim term is not the meaning of the term in the abstract. Instead, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent. In other words, the term takes its meaning from the context in which it is used in the patent.

> The plain and ordinary meaning of "Heat Reflective materials" in the context of the Design Patent does not include all materials.

(Appx360.)  In support, Columbia cited the language of the patent and case law concerning claim construction, including *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1320 (Fed. Cir. 2016). Columbia also argued that the district court had already found that the D'093 Patent was limited to heat reflective materials, and that "[t]he Court's holdings about the scope of the claim was a determination of law, which was not challenged on appeal by Seirus, and is therefore law of the case." (Appx361-363.)

Columbia also requested instruction 9F as follows:

> In design patent law, the term "prior art" refers to prior designs that address the same subject matter or field of endeavor as the patented design or that address a field of endeavor so similar that a designer having ordinary skill would look to articles in that field for their designs.  The subject matter and field of endeavor of the D'093 patent is ornamental designs for Heat Reflective Materials.

(Appx369.)  This instruction relied on this Court's ruling in *Hupp*, 122 F.3d at 1462, that "[t]he scope of prior art" to a design patent "is not the universe of abstract design … [but is limited to] designs of the same article of manufacture or of articles sufficiently similar that a person of

ordinary skill would look to such articles for their designs." (Appx369-371.)

During the trial, the district court provided the parties with a draft of its proposed jury instructions. The court declined to include any instruction on the scope of the patent or relevant comparison prior art. Instead, the court's instruction stated simply: "Prior art includes things that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country before the creation of the claimed design."

Columbia objected to this instruction because it erroneously instructed the jury that for determining design patent infringement *all* prior patents, regardless of article of manufacture, were admissible comparison prior art, so long as they pre-dated the D'093 priority date. Columbia asserted that the question whether a prior reference is relevant "prior art" for purposes of design patent infringement is a question for the jury. (Appx1172-1173.) Columbia explained that, even though Respess, for example, ostensibly concerned a type of "fabric," the jury should be allowed to decide whether fabric for "radial tires would be considered prior art" to the D'093 Patent, which regards a heat reflective

material used in clothing.  Columbia further asserted that the jury may well "draw the conclusion … that it would … not be the type of patent that would be looked at by an ordinary designer" in Mr. Snyder's field. (Appx1172.)  As to the other two patents at issue, Columbia similarly argued:

> [t]he same, frankly, with Blauer and with Boorn … We just don't think [a] … graphic designer would actually look to those in the first place, and we would like the jury to have the opportunity to draw that conclusion for themselves, rather than be dictated what is prior art and what is not.

(Appx1173.)

At this juncture, the district court expressed concern that it may have made a mistake in its conclusions regarding "prior art," and that its proposed instruction may improperly usurp the role of the jury in deciding what is relevant comparison prior art for purposes of the design patent infringement test. (Appx1174-1175.)  Specifically, the district court said as follows:

> Well, if I'm wrong on the law regarding whether or not it's a question of fact or question of law, then I need to be right on the law to the extent that I can be.

\*    \*    \*

32

> I don't know what the answer is.  I was operating
> under the assumption it was a question of law for the
> Court.

(*Id.*)  That night, Columbia presented a proposed revision to the court's

instruction on prior art, quoting directly from *Hupp* and asking the Court

to include the following in its instruction:

> The term 'prior art' refers to prior designs of the same
> article of manufacture or of articles so similar that a
> person of ordinary skill would look to such articles for
> their designs.

(Appx1481.)    Columbia also reminded the Court that "whether a

reference is analogous art is a question of fact." (*Id.*)

The court rejected this request, instead adding a single sentence to

its instruction.  The instruction, as given, reads:

> You must decide what is prior art.  Prior art includes
> things that were publicly known, or used in a publicly
> accessible way in this country, or that were patented
> or described in a publication in any country before the
> creation of the claimed design.

(Appx1521.)

Pursuant to this instruction, the jury's role was limited to

determining whether the art was known, used, patented or published

prior to the invention date of Columbia's patent.  As a practical matter,

that left nothing for the jury to decide given that the dates of the three

references were not in dispute. The court then instructed that the jury "must" familiarize itself with this art "in determining whether there has been infringement." (Appx1521.) Despite Columbia's objections, the district court declined to instruct the jury on the scope of relevant comparison prior art for the infringement analysis. The door thus was wide open to admit any "fabric" as comparison prior art, regardless its use, or whether it concerned or disclosed a heat reflective material. The judge decided whether something was "fabric," and concluded that Respess, Boorn, and Blauer qualified.

In its closing argument, Seirus leveraged the judge's overly permissive jury instruction on the scope of comparison prior art, and argued extensively about all three references. Seirus invited the jury to find non-infringement arguing that the scope of Columbia's patented D'093 design was narrowed in view of the wave patterns disclosed in the asserted prior art. (Appx1224, Appx1231-1232, Appx1236-1242, Appx1624, Appx1634, Appx1644-1650, Appx1663.) Seirus did not mention, nor did the judge permit Columbia to point out, the fact that the asserted prior art failed to disclose any heat reflective materials.

### 5.    Jury instructions concerning use of Seirus's logo and "likelihood of confusion"

In addition to the dispute over the scope of the comparison prior art, it became clear in the run-up to trial that Seirus intended to litigate the case based on principles of trademark law rather than those applicable to design patents. For example, Seirus would argue that the presence of its brand name defeats Columbia's patent infringement claim by avoiding a likelihood of consumer confusion as to the *source* of Seirus's product.

The problem with this approach, of course, is that a "likelihood of confusion" as to source is irrelevant to the question of design patent infringement. As this Court has noted, "when there is a source-indicating label, the label" may "make consumer confusion unlikely" enough to avoid *trade dress* infringement. *L.A. Gear*, 988 F.2d 1117. However, confusion as to source has no relevance to a claim of design patent infringement. *Id.* at 1126. That is because "[d]esign patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace … or allow of avoidance of infringement by labelling." *Id.*

Thus, a central issue with respect to the jury instructions was the role of Seirus's name on its products and the extent to which actual or

likely confusion as to source was a relevant consideration for the jury in a design patent case.

Columbia proposed two separate jury instructions to address these issues. First, in Requested Jury Instruction 9B, Columbia asked the court to include the following:

> Confusion as to the source or provider of the goods accused of infringing is irrelevant to determining whether a patent is infringed.

Thus, consistent with *L.A. Gear*, the fact that Seirus included its brand name on its products as a source identifier could not avoid infringement. Columbia relied on *Braun* and *Unette* for this principle. Columbia also explained that this instruction would help "prevent jury confusion concerning what is meant by [use of the term] 'deceive'" in the standard articulated in *Gorham Co. v. White*, 81 U.S. 511, 528, 20 L. Ed. 731 (1871). (Appx349.)

Columbia also sought Requested Jury Instruction 9D, titled "Logo/Confusion":

> Labelling a product with source identification or branding does not avoid infringement. Consumer confusion as to the source or provider of the products is not a consideration in an infringement analysis. [B]ut you may consider an ornamental logo, its placement, and its appearance as one among other

potential differences between a patented design and an accused one in deciding whether the overall appearance of the patented and accused design are substantially similar.

(Appx356.)  Columbia argued that this instruction properly synthesized the holding in *L.A. Gear* with the holding in *Columbia I*.  Columbia argued that the jury

> *must be instructed* as to the law as elucidated in both *L.A. Gear* and *Columbia Sportswear*.  This is particularly critical given the factual dispute about whether Seirus's logo would be perceived by the ordinary observer as a design element or is merely a means of identifying Seirus as the source, as shown in its advertising materials.

(Appx357 (emphasis added).)

Seirus, too, sought a jury instruction concerning the impact of its logo on the infringement analysis, quoting solely from *Columbia I*, and ignoring this Court's instructive holding in *L.A. Gear*.  (Appx377.) Columbia opposed Seirus's proposed instruction, arguing that it was "incomplete" and that the Court should instruct the jury pursuant to its Requested Instruction 9D instead.  (Appx380.)

As noted above, after the close of evidence, the district court provided the parties with its draft jury instructions.  The court resolved the disputes above by deciding to give *neither* of the parties' proposed

instructions on these issues.   The Court in fact decided to give no instruction on these issues at all.   Instead, in its Instruction No. 10, the district court proposed to instruct the jury pursuant to the basic *Gorham* standard as follows:

> Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other.

While it rejected Columbia's proposed jury instruction regarding the irrelevance of "confusion" and "logos" to the design patent infringement test, the district court added the following instruction:

> You do not need, however, to find that any purchasers were actually deceived or confused by the appearance of the accused products.

And though the instruction correctly notes that *actual* confusion is not the test for design patent infringement, the instruction incorrectly implied that a "*likelihood* of confusion"—the classic test for trademark infringement—may be relevant to a determination of design patent infringement.

To remedy this defect, Columbia asked the Court for a modification to its instruction concerning "confusion," explaining:

> The Court's current instruction [addresses the issue of *actual* confusion], but we think it could go a little further in view of the case law. And, in particular, the Federal Circuit has been clear that *even a likelihood of confusion* is not a necessary or even appropriate factor in a design infringement case.

(Appx1159 (emphasis added).) Columbia quoted passages from *Unette* for the proposition that "likelihood of confusion" is a trademark law concept relating to source confusion and is not an appropriate consideration in determining design patent infringement. (Appx1168-1169; *see also Unette*, 786 F.2d at 1029.)

The Court invited the parties to file draft revisions to the Court's instructions. (Appx1185.) That night, Columbia filed a proposed modification to the Court's Instruction No. 10:

> Amend the second sentence of the third paragraph to read as follows: "You do not need, however, to find that any purchasers were actually deceived, nor do you need to find any actual confusion *or likelihood of confusion* amongst consumers in the marketplace."

(Appx1481 (emphasis added).)

Columbia cited as support:

> "Likelihood of confusion is not a necessary or appropriate factor for determining infringement of a design patent." *Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029 (Fed. Cir. 1986). "Concluding that a

> purchaser is unlikely to be confused by any similarity
> in a competitor's product only serves to blur the
> otherwise clear line that exists between the test of
> infringement of a design patent and the 'likelihood of
> confusion test' for infringement of a trademark." *Id.*

(*Id.*)   The following morning, the district court circulated its final

instructions.   It declined to modify its instruction, or to include any

instruction on the irrelevance of likelihood of confusion and logos to the

design patent infringement test.

### 6.    Seirus's closing argument seized on the district court's flawed instruction

Shortly after the district court confirmed that it would not

incorporate a "likelihood of confusion" or "logos" instruction, Seirus

exploited that gap in its closing argument.   Specifically, Seirus put a slide

on the screen that cited the basic *Gorham* standard:

> ***Two designs are substantially the same if, in the
> eye of an ordinary observer***, giving such attention
> as a purchaser usually gives, ***the resemblance
> between the two designs is such as to deceive an
> ordinary observer, inducing him to purchase
> one supposing it to be the other***.

(Appx1625 (emphasis in original).)

Seirus then argued to the jury as follows:

> Remember when I showed you this instruction?  Hard
> to imagine ***with all those logos*** that an ordinary
> observer, the consumer, would be deceived into

> thinking that's Columbia's patent. I don't see it. I don't see how that's possible ***because Seirus is telling the world this is ours***. ***This is ours***.

(Appx1225-1226 (emphases added).)

Thus, while Seirus's counsel mimicked the language of *Gorham*, the thrust of the argument unambiguously went to the type of consumer confusion relevant only in a trademark or trade dress case—confusion as to source—rather than the design comparison necessary to determining infringement of a design patent.

## E.    The Jury Verdict

The jury thereafter returned a verdict that Seirus was not liable for infringement. Columbia timely appealed.

## SUMMARY OF ARGUMENT

The district court's errors concern two primary issues. The first issue concerns the district court's jury instruction that ***all*** prior patents "must" be considered in a design patent infringement analysis regardless whether they concern the particular article of manufacture identified in the asserted claim of the D'093 patent, namely, a heat reflective material. The second issue concerns the lack of a jury instruction concerning confusion as to source, particularly given Seirus's brand name on its products.

41

## A.     Errors Concerning Alleged Comparison Prior Art

***First***, the district court erred by failing to instruct the jury that the scope of the D'093 Patent was limited to heat reflective materials.   In *Surgisil*, this Court recently confirmed that design patent claim scope is "limited to the particular article of manufacture identified in the claim." 14 F.4th at 1382; *see also Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1336 (Fed. Cir. 2019) (holding that where the article of manufacture identified in the design patent was a chair, the scope of the design patent does not include the design as applied to baskets).   Here, the patent claims an ornamental design for a "heat reflective material."   Moreover, that limited scope of the D'093 Patent was established as a matter of law in the original proceedings, and it became law of the case when Seirus failed to challenge it during the prior appeal.   The jury should have been instructed that the scope of the D'093 Patent was limited to heat reflective materials, which would have been determinative as to the scope of any comparison prior art.

***Second***, the district court erred in its jury instructions concerning the scope of the comparison prior art for purposes of conducting the design patent infringement test.   The district court instructed the jury

42

that *all* prior patents are prior art without any instruction to limit the

comparison prior art for the infringement analysis to ***like-kind articles***

***of manufacture***, namely, heat reflective materials.

However, "[t]he scope of prior art is not the universe of abstract

design." *Hupp*, 122 F.3d at 1462. Notably, this Court recently clarified

that:

> A design claim is limited to the article of
> manufacture identified in the claim; it does not
> broadly cover a design in the abstract. The Patent
> Act permits the grant of a design patent only to
> "[w]hoever invents any new, original and
> ornamental design *for an article of manufacture*."

*Surgisil*, 14 F.4th at 1382 (emphasis in original.)

*Surgisil* makes clear that, inasmuch as a design patent's scope is

limited "to the particular article of manufacture identified in the claim,"

the relevant prior art for anticipation must be limited to like-kind articles

of manufacture. *Id.* Importantly, this Court has long-held that, for

design patents, anticipation and infringement are opposite sides of the

same coin and that the standards for judging each are identical. *Int'l

Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir.

2009). Inasmuch as the scope of a design patent and its relevant art for

anticipation purposes is limited to like-kind articles of manufacture, so

43

must be the scope of a design patent and its relevant prior art for infringement purposes.

Here, none of the alleged comparison prior art asserted by Seirus involved "heat reflective materials." The district court's failure to instruct the jury on the scope of the relevant comparison prior art was prejudicial error.

***Third***, even assuming the broader scope of art relevant to an obviousness analysis should apply to an infringement analysis, this Court's jury instructions were still erroneous. The district court declined to apprise the jury that the scope of prior art is limited to the scope articulated in *Hupp*. Instead, the district court erroneously directed the jury to consider ***all*** prior patents, even from non-analogous arts.

***Fourth***, the district court erred in ordering that Columbia's counsel could not present evidence or argue that the asserted comparison prior art failed to disclose heat reflective materials, the particular article of manufacture identified in the claim of the D'093 patent.

## B.    Errors Concerning Relevance of Source Confusion

The district court also erred in failing to instruct the jury, consistent with *Unette*, *Braun*, and *L.A. Gear*, that "likelihood of

confusion" as to source is not relevant in determining infringement in a design patent case.

The district court instructed the jury based on the standard set by the Supreme Court in *Gorham*, which instructs the jury to find infringement if "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other …"

But, as explained by this Court in subsequent decisions, the district court must clarify the meaning of this language where either (1) the patent owner does not make a patented product available for "purchase," or (2) like Seirus, the infringer argues that labelling the product with its name avoids "deception."  Specifically, the "deception" referenced in *Gorham* relates solely to the similarity of two *designs* in the marketplace, and not to consumer confusion as to *source*.  *Unette*, 785 F.2d at 1029.

This Court has repeatedly emphasized that while confusion as to source may be a lynchpin in a trade dress case, such "likelihood of confusion" has no relevance to a determination of design patent infringement.  *Id.*  In the leading *Unette/Braun/L.A. Gear* trilogy of cases, this Court reinforced this key point, further holding that "[d]esign patent infringement … does not … allow of avoidance of infringement by

labelling." *L.A. Gear*, 988 F.2d at 1126.

In this case, where the logo issue was front and center, it was particularly critical for the district court to instruct the jury on issues relating to likelihood of confusion. Seirus exploited the absence of instructions about source confusion in its closing argument by openly inviting the jury to find no infringement because the "Seirus" brand name on its products made clear that Seirus, and not Columbia, was the <u>source</u> of its infringing products. The district court's failure to give the requested clarifying instruction allowed the jury to wrongly dispose of the case based on principles of ***trademark*** law rather than the ***design patent*** principles actually laid out in *Gorham*.

## ARGUMENT

### I.    Standards of Review

"This court reviews challenges to jury instructions under the law of the regional circuit where the district court sits." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1328 (Fed. Cir. 2008).

The Ninth Circuit "review[s] a district court's formulation of civil jury instructions for an abuse of discretion, but [] consider[s] *de novo* whether the challenged instruction correctly states the law." *Wilkerson*

*v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014) (internal citation omitted).

"Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999). Jury instructions are erroneous if they do not adequately inform the jury of the law. *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1543-44 (11th Cir. 1996). The need for sufficient jury instructions applies with greater force in the complex field of intellectual-property rights where "the need for proper guidance is accentuated and heightened … ." *Id.* Failure to instruct the jury on an important contested issue mandates a new trial. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

"In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered. Harmless error review for a civil jury trial shifts the burden to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Wilkerson*, 772 F.3d at 838 (cleaned up, quotes omitted).

Similarly, "[t]his court reviews a district court's decision to exclude evidence under the law of the regional circuit." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1372 (Fed. Cir. 2011).  In the Ninth Circuit, evidentiary rulings are generally reviewed for an abuse of discretion.  *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013).  The same applies to orders that an attorney may not make certain arguments to the jury.  *Id.*

## II.    The District Court Erred in Its Jury Instructions by Failing to Limit the Scope of Comparison Prior Art for the Design Patent Infringement Test.

The district court erred by instructing the jury, in effect, that *any* prior patent, regardless of field of endeavor or subject matter, is "prior art" that should be considered in a design patent infringement analysis. At minimum, the district court should have instructed the jury, consistent with Columbia's proposed jury instruction, that the scope of comparison prior art—sometimes referred to as the "design corpus,"[2]—is limited to "designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their

---

[2] *See, e.g.,* L'Oréal Société Anonyme v. RN Ventures Ltd., [2018] EWHC 173 (Pat).

designs." *Hupp*, 122 F.3d at 1462. That was the broadest design corpus applicable to any design patent analysis at the time of trial.

However, subsequent to the jury trial, this Court issued its decision in *Surgisil*, which held that a narrower scope of prior art is relevant to the question of anticipation—the prior art must be designs of the article of manufacture recited in the claim. *Surgisil*, 14 F.4th at 1382. Based on this Court's prior holding that "the same test must be used for both infringement and anticipation," *Int'l Seaway*, 589 F.3d at 1239, the scope of comparison prior art relevant to design patent infringement likewise should be limited to designs for the particular article of manufacture recited in the asserted design patent claim—here, "heat reflective materials."

As a matter of first impression, this Court should decide whether the scope of prior art relevant to a design patent infringement analysis is limited to the narrow scope applicable to anticipation, or should be expanded to encompass the broader scope applicable to obviousness determinations. Either way, the district court erred by suggesting that *all* prior patents "must" be considered in an infringement analysis. This Court should reverse and remand with clear instructions of the scope of

comparison prior art relevant to a design patent infringement analysis. None of Seirus's alleged prior art qualifies.

## A. The scope of prior art relevant to design patent infringement is limited to designs for the particular article of manufacture identified in the asserted design patent.

In its en banc decision in *Egyptian Goddess*, this Court held that an infringement determination in a design patent case should include reference to prior art, as "context in which the claimed and accused designs are compared." 543 F.3d at 677. The en banc *Egyptian Goddess* Court referred to this prior art as "comparison prior art." *Id.* at 678.

However, "[t]he scope of prior art is not the universe of abstract design." *Hupp*, 122 F.3d at 1462. This Court has never directly addressed whether the scope of comparison prior art for determining patent infringement is limited to prior art relevant to anticipation, or includes the expanded scope of prior art that may be relevant to obviousness. However, this Court *has* held that "the same test must be used for both infringement and anticipation." *Int'l Seaway*, 589 F.3d at 1239.

*Int'l Seaway* issued shortly after *Egyptian Goddess* and considered whether the standard for finding anticipation of a design patent needed

to be conformed to the new infringement standard articulated in *Egyptian Goddess*. This Court altered the standard applicable to anticipation of design patents to "continue our well-established practice of maintaining identical tests for infringement and anticipation." *Id.* at 1240.

Two recent decisions by this Court have established that: (i) infringement is limited to designs involving the claimed article of manufacture (*Curver*); and (ii) anticipatory prior art is limited to art involving the same article of manufacture (*Surgisil*). Taking these decisions together with the earlier *Int'l Seaway* decision leads to the conclusion that the only comparison prior art relevant to an infringement analysis is prior art involving the particular article of manufacture recited in the patent claim.

In the first of these two recent decisions, this Court held that a design patent claim's scope is limited to the article of manufacture identified in its claims. *Curver*, 938 F.3d at 1339-42. In addition to Supreme Court precedent, this Court relied on Patent Office regulations, including, *e.g.,* MPEP 1502 which defines "the subject matter which is claimed [a]s the design embodied in or applied to an article of

manufacture," and explains that the "[d]esign is inseparable from the article to which it is applied and cannot exist alone merely as a scheme of surface ornamentation."  The *Curver* Court also specifically noted that the scope of a design patent is directly related to the scope of relevant prior art:  limiting scope to the claimed article of manufacture reduces the need for prior art searching during examination.  *Curver*, 938 F.3d at 1341, fn. 3.  The *Curver* court thus held that a design patent covering a "chair" as an article of manufacture could not be infringed by a basket.  *Curver*, 938 F.3d at 1336-38.

After the remand trial in this case, this Court reaffirmed and expanded this principle in *Surgisil*.  *Surgisil* was an appeal from a Patent Office decision rejecting a design patent claim for a "lip implant" as anticipated by an "art tool" that looked like a pencil.



**Prior Art Design**                    **Patented Design**

Blick® "Stump" Art Tool                    "Lip Implant"

**Holding: Legal error to base finding of anticipation
on prior art unrelated to article of manufacture
identified in asserted design patent.**

This Court reversed, stating that "[a] design claim is limited to the article of manufacture identified in the claim.  It does not broadly cover a design

in the abstract." *Id.*, 14 F.4th at 1382. Thus, the Court confirmed that the scope of prior art for anticipation purposes is limited to the article of manufacture identified in the patent's claim.

Applying this Court's rationale in *Int'l Seaway* to its recent decisions in *Curver* and *Surgisil*, this Court should now confirm that the scope of prior art relevant to design patent infringement is limited to designs involving the article of manufacture recited in the patent claim. Such a holding will preserve the "well-established practice of maintaining identical tests for infringement and anticipation." *Int'l Seaway*, 589 F.3d at 1240.

Notably, in its prior cases applying prior art to an infringement analysis, this Court has, in practice, always limited "comparison prior art" to art involving the claimed article of manufacture. *See, e.g.*, *Egyptian Goddess*, 543 F.3d at 680 (relying on, as prior art, "[t]he two closest prior art nail buffers"); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324-25 (Fed. Cir. 2007) (infringement determined in context of prior "trigger sprayer shrouds' patented designs"); *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1324 (Fed. Cir. 1998) (infringement determined in context of prior

vending machine designs); *Braun*, 975 F.2d at 820 (comparison to prior hand-held electric mixer designs).

> ## B. At minimum, the Court should hold the scope of prior art is limited to the design corpus relevant to an obviousness analysis.

The design corpus applicable to a design patent obviousness analysis is broader than the new standard for anticipation prior art adopted in *Surgisil*. Specifically, for obviousness purposes, "[t]he scope of the prior art" is limited to "designs of the same article of manufacture *or of articles sufficiently similar that a person of ordinary skill would look to such articles for their designs*." *Hupp*, 122 F.3d at 1462 (emphasis added).

Although Seirus argued for a broader scope of "prior art" before the district court, it has cited no case where a court has considered art for infringement purposes beyond the scope relevant to invalidity. Nor has Seirus cited any theory, principle, or policy by which the Court should expand the scope of comparison prior art for infringement beyond the art relevant to an obviousness analysis.

> ## C. The scope of the D'093 Patent is limited to "heat reflective materials"

As *Curver* and *Surgisil* make clear, the scope of the D'093 Patent is

limited to "heat reflective materials"—a term that was generally known in the field.  (*See* Appx617-618.)  That the D'093 Patent is directed—and limited—to a design for "heat reflective materials" is taken directly from the title ("HEAT REFLECTIVE MATERIAL"), the express language of the single claim ("The ornamental design of a ***heat reflective material***"), and each of the 10 figure descriptions.  (E.g. "FIG. 1 is an elevational view of a ***heat reflective material***") (Appx4); *see also Surgisil*, 14 F.4th at 1382 ("[a] design claim is limited to the article of manufacture identified in the claim").

Moreover, the fact that the D'093 patent claim is limited to a "heat reflective material" was already established as law of the case.  In its *Markman*/summary judgment decision, the district court held that "Columbia's D'093 patent protects the 'ornamental design of a heat reflective material, as shown and described.'"  (Appx119.)  The district court further held that "the vast majority of Seirus's prior art covers products far afield from Columbia's 'heat management materials,' which … significantly limits relevance of the prior art in this case."  (*Id.*)  Indeed, the district court specifically excluded both Respess and Boorn and further held that Blauer only "approache[d] relevance."  (Appx120.)

Thus, in 2016, the district court properly limited the scope of the claim, and the relevant prior art, to "heat reflective materials," consistent with the title, claim, and description of the figures. (Appx4.) Seirus failed to challenge that holding on appeal, raising it for the first time only in the remand proceeding.

Therefore, even in the absence of *Surgisil*, the proper scope of the D'093 Patent to "heat reflective materials" was law of the case and not subject to further review. *See, e.g.*, *Engel Indus.*, 166 F.3d at 1382-83 ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.").

As further discussed below, the district court's failure to properly limit the jury's consideration of comparison prior art was prejudicial error.

**D.    The court's jury instructions misstated the law and erroneously instructed the jury that all prior patents are prior art that could be considered.**

In pre-trial proceedings, Columbia sought Requested Instruction 9E (Claim Scope), which in relevant part asked the Court to instruct the jury that the D'093 Patent "is limited to the design of Heat Reflective

Materials, as shown and described in the patent." (Appx360-363.) Columbia sought the same in its proposed instruction 9F, which asked the Court to instruct the jury that "[t]he subject matter and field of endeavor of the D'093 patent is ornamental designs for Heat Reflective Materials." (Appx369-372.) Seirus objected to these proposed instructions. (Appx363-368, Appx372-376.) The district court ultimately declined to give any instruction concerning the scope of the D'093 Patent. Indeed, the district court went further and instructed Columbia's counsel that they were ***prohibited*** from raising whether any of the alleged comparison prior art were "heat reflective materials." (Appx421.)

Columbia also asked the district court, twice, to instruct the jury about the scope of comparison prior art for purposes of the design patent infringement test. (Appx369, Appx1481.) Rather than instruct the jury about the scope of the patent claim and the relevant comparison prior art, the judge effectively instructed the jury that *all prior patents, regardless of article of manufacture,* "must" be considered in the design patent infringement test. (Appx1521.) This was clear error.

The district court should have instructed the jury that the scope of the patent is limited to "heat reflective materials." Since the *scope of the*

*patent* is limited to "heat reflective materials," as recited in the claim, on remand, this Court should hold that the *scope of prior art* relevant to an infringement analysis is likewise limited to "heat reflective materials." As discussed above, such a holding is necessitated by this Court's holdings in *Surgisil, Curver, Egyptian Goddess* and *Int'l Seaway*.

The Court should further direct that none of the Respess, Boorn and Blauer references should be considered as comparison prior art at a retrial because none involve a "heat reflective material."

(1)   Respess regards a complex machine for making fabric used "in making a rubber tire"—i.e. the interior structure of early radial tires (Appx1467-1475)

(2)   Boorn regards a method of inlaying plastic threads into plastic sheets (Appx1464-1466)

(3)   Blauer regards a "printed stratum" of acrylic urethane—a clear elastomer coating that "maintain[s] [a] shell fabric appearance" to provide "dimensional stability" to a waterproof shell (Appx1461)

Indeed, the district court already found that Respess and Boorn were both "far afield" and "not relevant to a comparison between Columbia's

and Seirus's designs for heat reflective material." (Appx119-120.) The district court found the same about Blauer, noting that it was "[t]he only prior art that even *approaches* relevance." *Id.* (emphasis added). Seirus failed to challenge those findings during the prior appeal.[3] Therefore, it is law of the case that none of Seirus's prior art is a heat reflective material, and none of it should be considered in an infringement analysis. *Engel Indus.*, 166 F.3d at 1382-83.

### E. The district court's jury instructions were erroneous even adopting the broader design corpus applicable to obviousness

At the very least, the district court should have instructed the jury that "[t]he term 'prior art' refers to prior designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their designs," as Columbia specifically requested. (Appx1481 (citing *Hupp*); *see also* Appx369.)

The Court's failure to properly instruct the jury on these critical issues concerning the scope of the claim and the comparison prior art for

---

[3] Although Seirus challenged the Court's fact finding regarding Blauer, its argument on appeal was limited to two sentences concerning the shape of the wave in Blauer, not whether it discloses a heat reflective material. *See Columbia I*, ECF 29, pp. 27-28.

design patent infringement purposes was harmful error, as discussed immediately below, and should be reversed.

### F.  The district court's failure to properly instruct the jury about the relevant comparison prior art for the design patent infringement test was prejudicial.

Where the jury instructions fail to fairly and correctly cover the law, prejudice is presumed. *Wilkerson*, 772 F.3d at 838.  Here, the error was clearly prejudicial.  Seirus's alleged "prior art" was critical to its non-infringement case.  Seirus argued that the scope of the D'093 patent was narrowed in view of that art, and thus the D'093 patent could not encompass the accused Seirus design.  Its lead witness testified at length about its asserted art and Seirus's counsel discussed this art at length during their closing argument, replete with numerous slides depicting it. (Appx1634, Appx1644-1650, Appx1663.)  One of those slides directly exploited the district court's flawed jury instruction.  Specifically, Seirus's counsel showed the erroneous instruction to the jury, highlighting the following: "Prior art includes things … that were patented … before the creation of the claimed design." (Appx1624.)  Thus Seirus reinforced the judge's erroneous instruction that *all* prior patents were "prior art" that "must" be considered in the infringement analysis.

Without a jury instruction to the contrary, Seirus leaned heavily on prior art unrelated to the article of manufacture specified in the D'093 patent to make its non-infringement case.

Worse yet, another slide compared the D'093 Patent with Seirus's HeatWave™ heat reflective material, with all three alleged "prior art" references positioned in between.



(Appx1663.)  Seirus's argument was that the scope of the D'093 patent is fenced off (i.e. narrowed) by the three asserted references.   None, however, should have been presented to the jury as none deal with heat

reflective materials.[4]

Notably, Seirus failed to adduce *any* evidence that "a person of ordinary skill would look to such articles" for designing a heat reflective fabric. Indeed, neither of the designers who testified in the case did. Moreover, Seirus's lead witness, its owner and CEO, testified that the patents were "old," "difficult to understand," and for products that are "not an area that we make product for." (Appx1064, Appx1072.) Thus, they would not be relevant under either possible design corpus.

Accordingly, this Court, exercising *de novo* review, should find the district court's jury instruction was legally erroneous and prejudicial. *Wilkerson*, 772 F.3d at 838. The Court should reverse and remand for a new infringement trial for this reason alone.

### G. If the Court remands for consideration of any of Seirus's prior art, it should order the district court to instruct the jury about the meaning of "heat reflective material."

As discussed above, none of Seirus's "prior art" discloses a heat

---

[4] The only one of the three patents to mention the word "heat" is Boorn, which talks about using heat as part of the manufacturing process, an application that is irrelevant to the heat reflective materials for hats, shoes and socks claimed in the D'093 patent. (Appx1465-1466, cols. 3-4.)

reflective material—a fact that is now law of the case.  None of those references discloses use of metallic foil on a base material to reflect heat, as the term was defined during reexamination.  (*See* Appx617-618.) Notwithstanding those facts, in pretrial briefing, Seirus argued that Respess, Boorn, and Blauer all disclose "heat reflective materials" based on abstruse principles of theoretical physics suggesting that all materials in the universe reflect some nominal amount of heat.  This argument does not pass the red-face test.  This Court has repeatedly rejected such arguments, including in *Eon Corp.*, 815 F.3d at 1320-1323 (the plain and ordinary meaning of "mobile" does not include utility meters bolted to buildings).  As discussed above, adopting the *Surgisil* standard, none of this art was admissible because none of it was for the same article of manufacture recited in the claim.

Moreover, if this Court remands for consideration of any of Seirus's art, it should also direct the district court to instruct the jury consistent with Columbia's Proposed Instruction 9E.  That proposed instruction concerned the plain and ordinary meaning of "heat reflective materials" as that term was used in the D'093 Patent:

> The term "Heat Reflective Materials" has its plain and ordinary meaning.  The ordinary meaning of a

> claim term is not the meaning of the term in the abstract.  Instead, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent.  In other words, the term takes its meaning from the context in which it is used in the patent.
>
> The plain and ordinary meaning of "Heat Reflective materials" in the context of the Design Patent does not include all materials.

(Appx360-361, quoting largely verbatim from *Eon Corp.*, 815 F.3d at 1320 (Fed. Cir. 2016).)   The district court erred in declining to give this instruction.  Such an instruction is critical to understanding the correct scope of the patent claim and the prior art, if the jury is allowed to consider that art at all.

## III.   The District Court Erred in Prohibiting Columbia's Counsel From Distinguishing Prior Art Based on Whether it Was "Heat Reflective."

Beyond its failure to properly instruct the jury, the district court also erred in prohibiting Columbia's counsel from arguing about the scope of the relevant comparison prior art.   Seirus moved *in limine* that Columbia should not be permitted to distinguish any prior art based on what it called "functional grounds," i.e., whether the alleged prior art reference concerned the relevant article of manufacture, namely, a "heat reflective material."  The district court held, "[f]unctional grounds are not

64

a relevant consideration. So that motion is granted." (Appx421.) That precluded Columbia from asking any questions to distinguish the prior art based on whether it disclosed a "heat reflective material."

At trial, when Columbia asked Seirus's witness what "the purpose of painting this wavy structure" on the shell of Blauer was, the Court upheld an objection on the basis that the question violated the *in limine* order because it was probative of the "function" of Blauer's invention. (Appx1064-1065.)

The district court's decision here, too, was wrong for all the reasons discussed above in connection with this Court's *Curver, Surgisil,* and *Hupp* decisions. As this Court decided in *Surgisil*, a design patent claim is limited to the article of manufacture recited in the claim—here, heat reflective materials. *Surgisil*, 14 F.4th at 1382. This does not, as Seirus incorrectly argued, import a functional limitation into the claim. Instead, it prevents the claim from "broadly cover[ing] a design in the abstract." *Id.* Just as Surgisil's design patent did not cover its claimed shape on any and all articles of manufacture, Columbia's design patent does not cover its design regardless of article of manufacture. Instead, the scope of the D'093 patent, and its relevant comparison prior art, is limited to

the particular article of manufacture identified in the D'093 patent—a

heat reflective material.



Columbia should have been permitted to question witnesses and

argue to the jury that asserted prior art was irrelevant to infringement

because it had nothing to do with heat reflective material.   Because

comparison prior art is limited by the article of manufacture recited in a

design patent's claim, it was error for the district court to exclude any

questioning or argument on whether the prior art related to the claimed

article of manufacture.

Moreover, even if the scope of prior art is not strictly limited to heat

reflective materials, a reasonable jury could decide that the "function" of

the prior art is relevant to whether "a person of ordinary skill would look

to such articles for their designs." *Hupp*, 122 F.3d at 1462.  Indeed, Columbia's inventor, Zach Snyder, and Seirus's designer, Sean Carey, both testified that they were looking for a design that would convey the idea of reflecting heat and making the user warmer.  (Appx785-786, Appx1111)  Whether a prior patent had anything to do with reflecting heat or making a user warmer would have been directly relevant to whether an ordinary designer of skill would have "look[ed] to" it for inspiration. *Hupp*, 122 F.3d at 1462.

It was an abuse of discretion to order Columbia not to distinguish prior art on the basis that it was not a "heat reflective material."  This Court should reverse and remand this case for a new trial for this additional reason.

## IV. The District Court Erred by Failing to Instruct the Jury That Confusion as to Source is Not an Appropriate Consideration For Design Patent Infringement.

### H. This Court's precedents confirm that "likelihood of confusion" is not an appropriate consideration for design patent infringement

This Court has held that jury instructions concerning design patent infringement "must … follow the standard articulated in *Gorham*":

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs

> are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham*, 81 U.S. at 528; *Braun*, 975 F.2d at 819.

But *Gorham* concerned a typical case where the patent owner makes a patented product that competes in the marketplace with a similar product offered by the accused infringer. 81 U.S. at 530. Thus, the language "if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other," can logically apply to such a situation. Consistent with this framework, this Court has held that, where the patentee makes a product embodying the invention, it is appropriate to compare the two products to each other. *See Braun*, 975 F.2d at 821.

However, this Court, in *Unette*, clarified that likelihood of consumer confusion as to <u>source</u> is not part of the design patent infringement test. This is especially true where, as here, the patentee does not sell a product covered by the patent. As *Unette* points out:

> Likelihood of confusion as to the source of the goods is not a necessary or appropriate factor for determining infringement of a design patent. The holder of a valid design patent need not have progressed to the manufacture and distribution of a

'purchasable' product for its design patent to be
infringed by another's product.

785 F.2d at 1029 (emphases added).  The Court further referenced a

"clear line that exists between the test for infringement of a design patent

and the 'likelihood of confusion' test for infringement of a trademark." *Id.*

This Court similarly contrasted the tests for trade dress

infringement and design patent infringement in *Braun.*  There, Braun

sued a competitor for both trade dress and design patent infringement

concerning handheld electric blenders.  The jury found for Braun in

regards to both.

On appeal this Court held that "[d]esign patent infringement does

not concern itself with the broad issue of consumer behavior in the

marketplace," citing *Unette's* language about "likelihood of confusion."

975 F.2d at 820, 828.  The Court ultimately *affirmed* a finding of design

patent infringement.  *Id.* at 821-22.  However, the Court *reversed* the

verdict of trade dress infringement.  *Id.* at 825-828.  Critically, the Court

focused on the brand names, logos, and other source identifying

information on the packaging to conclude that there was no "likelihood of

confusion" for trade dress purposes:

> Braun identifies its product as a "hand blender" in horizontal red letters directly below the brand name "Braun" and the product named "Multipractic" in plain black lettering. The name Braun also appears in stylized black lettering on the white background at the bottom of the carton. In contrast, Waring refers to its product by its registered trademark "Blendor" preceded by the words "Hand Held" in vertical white lettering on a grey stripe of the front panel that is bordered by a red stripe. Its Waring name appears in logo form in white letters on a red rectangle.

*Id.* at 827-28. The Court also noted: "[i]n addition, Waring's prominent labelling of the carton with its brand name and trademark logo is probative evidence that the cartons are not confusingly similar." *Id.* at 828. This lack of likely confusion did not, however, shield the defendant from design patent infringement. *Id.* at 821-22.

Following its key holdings, and in a discrete section of its opinion, the Court contrasted the standards for design patent infringement and trade dress in relation to "likelihood of confusion." *Id.* at 828. The Court noted that:

> [P]urchasers' likelihood of confusion as to the source of a good is a necessary factor for determining trademark and trade dress infringement. To show infringement, the holder of a trademark or trade dress therefore must have progressed to the manufacture and distribution of a "purchasable" product. A[s] a result, consumer behavior in the marketplace is a highly relevant factor in

> determining trademark and trade dress infringement... .
>
> In contrast, ... a different quantum of proof applies to design patent infringement, which does not concern itself with the broad issue of consumer behavior in the marketplace. *Unette,* 785 F.2d at 1029. The single element here required to show design patent infringement involves a much narrower field of inquiry. In short, a design patentee may prove infringement simply by showing that an ordinary observer would be deceived by reason of an accused device's ornamental design.

*Id.* (quote omitted).

Four years later, the Court reached the same result through a similar analysis in *L.A. Gear*. *L.A. Gear* concerned design patent and trade dress claims over a "shoe upper." 988 F.2d at 1121 (citing U.S. Design Patent No. D'299,081). The D'081 Patent disclosed the surface ornamentation and design of the shoe upper. Thom McAn copied the general design of the shoe and also added the brand name "balloons" in a stylized font as shown below.



*Id.* at 1121, 1125.

Notably, the designs are not identical. For example, the crosshatched fabric in the lower portion of the patent drawing is clearly not the same as the portion under the "balloons" mark. Nonetheless, the district court found the shoes were "strikingly similar," and found Thom McAn liable for both trade dress and design patent infringement. *Id.* at 1122.

As in *Braun*, the Federal Circuit *reversed* the district court's finding of trade dress infringement, finding that the inclusion of the logo was sufficient to avoid any likelihood of consumer confusion. *Id.* at 1133-34. However, the Federal Circuit *affirmed* the finding of design patent infringement. In distinguishing the tests for trade dress and design patent infringement, the Court again held, "[d]esign patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace … or allow of avoidance of infringement by labelling." *Id.* at 1126. The Court cited *Unette*, 785 F.2d at 1029, further holding that "[l]ikelihood of confusion as to the source of the goods is not a necessary or appropriate factor for determining infringement of a design patent."

*Unette, Braun,* and *L.A. Gear* establish three principles that help to inform the basic *Gorham* standard, particularly where (i) there are not competing products in the marketplace (*Unette*), and (ii) source-identifying information is applied to the accused products (*Braun, L.A. Gear*). First, design patent infringement can occur even where the patent holder does not practice its patent, making a comparison between "purchasable" products (and the corresponding "deception" described in *Gorham*) impossible. *Unette*, 785 F.2d at 1029. Second, courts must avoid allowing the jury to apply trademark law's "likelihood of confusion" standard to deciding infringement in a design patent case, where source confusion has no relevance. *Id.*; *Braun*, 975 F.2d at 828. Third, as this Court held in *L.A. Gear* "[d]esign patent infringement … does not … allow of avoidance of infringement by labelling." 988 F.2d at 1126.

*Unette, L.A. Gear,* and *Braun* all remain good law. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1316 (Fed. Cir. 2013) (en banc) ("Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc."). They have been repeatedly relied upon by this Court for these holdings. *See, e.g., Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 Fed. Appx. 214, 217 (Fed. Cir. 2004) (quoting

73

*Unette* on inappositeness of likelihood of confusion standard in design patent analysis); *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665 (quoting *Unette* on likelihood of confusion at point of sale).

## I.     The district court erred in failing to instruct the jury on the law as elucidated in *Unette*, *Braun*, and *L.A. Gear*

Where, as here, an accused infringer argues that application of a logo avoids a likelihood of consumer confusion, a district court must do more than provide the jury with the basic *Gorham* standard; it should also explain that "likelihood of confusion" is not an appropriate consideration, and that, accordingly, labelling a product with source identification or branding does not avoid infringement.

Columbia asked the district court to instruct the jury on these critical issues, with language that came directly from these three cases. In its pretrial jury instruction requests, Columbia asked for Requested Jury Instruction 9B:

> Confusion as to the source or provider of the goods accused of infringing is irrelevant to determining whether a patent is infringed.

(Appx348.)  That proposed instruction cited *Braun* and *L.A. Gear*.

Columbia also asked for Requested Jury Instruction 9D titled "Logos/Confusion":

> Labelling a product with source identification or branding does not avoid infringement.  Consumer confusion as to the source or provider of the products is not a consideration in an infringement analysis.

(Appx356 (citing *L.A. Gear* and *Unette*).)

However, at trial, the district court indicated it would give no instruction on "logos," "source identification," or likelihood of consumer confusion, and would only instruct the jury that it need not find "actual confusion."  Columbia tried one more time, arguing that, while the court addressed actual confusion, "the Federal Circuit has been clear that *even a likelihood of confusion* is not … [an] appropriate factor in a design infringement case."  (Appx1159-1160.)  Citing *Unette*, Columbia argued that the district court should at least include the following instruction on "likelihood of confusion":

> You do not need, however, to find that any purchasers were actually deceived, nor do you need to find any actual confusion **or likelihood of confusion** amongst consumers in the marketplace.

(Appx1481 (Columbia's Requested modification to Court's Instruction

No. 10 (citing *Unette*)).)

The district court again refused. This Court should now hold that the district court's failure to provide any of Columbia's requested clarifying instructions based on *Unette*, *Braun*, and *L.A. Gear* was reversible error. *Gilbrook*, 177 F.3d at 860 ("Jury instructions must be formulated so that they fairly and adequately cover the issues presented … and are not misleading.") That failure necessitates a new trial. *Montgomery Ward*, 311 U.S. at 251.

### J. The district court's failure to provide a *Unette/Braun/L.A. Gear* clarifying instruction was prejudicial

As noted, where the jury instructions fail to fairly and correctly cover the law, prejudice is assumed. *Wilkerson*, 772 F.3d at 838. Prejudice is clear here, because Seirus exploited the district court's failure to explain the law to the jury on this critical issue. Shortly after the court denied Columbia's requests, Seirus misleadingly argued in its closing that use of Seirus's brand name, *as source identifier*, avoided infringement by eliminating the "deception" referenced in *Gorham*. Thus, contrary to this Court's well-established law, Seirus's counsel erroneously argued that the elimination of source confusion *by itself* was

a sufficient basis to find no infringement. Seirus's counsel started by identifying the following clause in *Gorham*:

> … the resemblance between the two designs is such as to **deceive** an ordinary observer, ***inducing him to purchase one supposing it to be the other***.

(Appx1625 (emphases altered).) Seirus's counsel then argued to the jury that there could be no "deception" because the accused HeatWave™ products had a logo that identified Seirus as the source of those products:

> Hard to imagine ***with all those logos*** that an ordinary observer, the consumer, would be deceived … I don't see how that's possible ***because Seirus is telling the world this is ours***. This is ours.

(Appx1225-1226 (emphases added).)



(Appx1616.)

But, as confirmed in this Court's subsequent clarifying decisions,

*Gorham* actually had nothing to do with source confusion. While Seirus's counsel cleverly mimicked the language of *Gorham*, the thrust of their argument undeniably was that consumers seeing a Seirus logo would know that Columbia was not the source of Seirus's product. The argument openly invited the jury to decide that Seirus's infringement was avoided by source-labeling.

That is precisely the type of analysis that *Unette*, *Braun*, and *L.A. Gear* held was improper. Seirus's argument was also precisely the type of specious analysis that Columbia's proposed jury instructions would have precluded.

Thus, the district court's failure to instruct the jury on the proper role—if any—that Seirus's logo should play in the infringement analysis, and that a "likelihood of confusion" was not to be considered, was prejudicial. This Court should remand for a new trial on that additional basis, with guidance to the district court about proper instructions for consideration of a logo on an accused product in an infringement analysis.

### K.  This Court's prior decision in this case does not disturb the Court's earlier precedent

In the prior appeal of this case, a panel of this Court held that the district court erred in its reliance on *L.A. Gear*, and remanded the case

for trial.  At summary judgment, the district court relied on *L.A. Gear* for the proposition that "a defendant cannot avoid infringement by merely affixing its logo to an otherwise infringing design."  Applying that principle, the district court "d[id] not consider … the Seirus logo, in the infringement analysis." (Appx115.)  In reversing, this Court held:

> In evaluating infringement there, we explained that design infringement is not avoided "by labelling." [*L.A. Gear*], at 1126.  A would-be infringer should not escape liability for design patent infringement if a design is copied but labeled with its name.  But *L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one.

*Columbia I*, 942 F.3d at 1131.  However, the *L.A. Gear* Court's holding did not rest on the fact that the product was copied.  Its holding was based on well-established case law, including *Unette*.  And the *L.A. Gear* Court expressly declined to consider the ornamental BALLOONS "logo, its placement, or its appearance" in affirming a finding of design patent infringement.  It affirmed infringement without any such consideration.

As noted, in remanding this case, this Court should provide guidance to the district court about how to properly instruct the jury where a logo is applied to a product accused of infringing a design patent.

That guidance should be consistent with the holdings of *Unette*, *Braun*, and *L.A. Gear*.  To the extent *Columbia I* is in conflict with *Unette*, *Braun*, or *L.A. Gear*, the prior cases control.  *Deckers Corp. v. United States*, 752 F.3d 949, 964 (Fed. Cir. 2014); *see also Newell Cos., v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("Where there is direct conflict, the precedential decision is the first.").

Stripped of its reliance on "copying," this Court's holdings in *L.A. Gear* and *Columbia I* are difficult to reconcile.  *See* 1 McCarthy on Trademarks and Unfair Competition § 6:11, n. 21 and accompanying text (5th ed.).  This Court's holding in *Columbia I* has also led to considerable uncertainty among litigants and prospective litigants.  The design patent community has questioned whether "Adding a Logo to a Copycat Product Qualif[ies] as a Successful Design Around?"  Stern Kessler, IP Hot Topic: Does Adding a Logo to a Copycat Product Qualify as a Successful Design Around?  (available at https://www.sternekessler.com/news-insights/client-alerts/ip-hot-topic-does-adding-logo-copycat-product-qualify-successful-design).  And would-be infringers have taken note, relying on a new "logo defense" to design patent infringement.  For example, in a recently filed case involving design patents for women's

clothing, the following product and patent, among others, have been

alleged:



| Peloton Accused Product | Lululemon D903,233 Patent |
|---|---|

*Lululemon Athletica Canada Inc. v. Peloton Interactive, Inc.*, Case No.

2:21-CV-9252, ECF 1, p. 13 (C.D. Cal. Nov. 29, 2021) (yellow circle

added).  Presumably relying on this Court's decision in *Columbia I*, the

defendant filed a declaratory judgment action, arguing that "confusion

between products [is] a virtual impossibility due to the prominent display

of the parties' respective trademarks on their products …"  *Peloton*

*Interactive, Inc. v. Lululemon Athletica Canada Inc.*, Complaint, Case No. 1:21-cv-10071-ALC, ECF 1, ¶ 5 (S.D.N.Y. Nov. 24, 2021).

Does this Court intend that adding a brand name should be sufficient to avoid design patent infringement?  Or that a jury may even consider it?  Does design patent protection really end when a prominent label is applied to a product?

This Court should provide clear guidance, for the benefit of the district court in this case and others, the role—if any—of logos or other source identifiers in a design patent infringement analysis.

## CONCLUSION

For the reasons stated herein, the Court should reverse the judgment of non-infringement and remand for a new trial.

Dated this 13th day of January, 2022.

Respectfully submitted,

/s/  Nika Aldrich
Nika Aldrich
Scott D. Eads
Sara Kobak
Schwabe, Williamson & Wyatt
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204
naldrich@schwabe.com
seads@schwabe.com

skobak@schwabe.com
Telephone:  503-222-9981

Attorneys for Plaintiff-Appellant
Columbia Sportswear
North America, Inc.



**FILED**

AUG 06 2021

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ *gs* DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

COLUMBIA SPORTSWEAR NORTH
AMERICA, INC.,

        Plaintiff,

    v.

SEIRUS INNOVATIVE ACCESSORIES,
INC.,

        Defendant.

No. 3:17-cv-01781-HZ

**VERDICT FORM**

We, the jury, being first duly empaneled and sworn in the above-entitled cause, do unanimously find as follows:

1. Has Columbia proved by a preponderance of the evidence that Seirus infringed U.S. Patent D657,093 ("Design Patent")?

    _____ Yes    __X__ No

The Presiding Juror should sign and date this Verdict Form.

    DATED this ___6___ day of August, 2021



1 – VERDICT FORM

**Appx1**

**Document Selection Menu**

## Multiple Documents

To view the main document and its attachments without incurring a PACER fee, click on the hyperlinks displayed on this menu. You may incur a PACER fee to view CM/ECF documents from hyperlinks within the documents.

Select the document you wish to view.

| | | | |
|---|---|---|---|
| <u>606</u> | Main Document | 1 page | 207 kb |
| <u>1</u> | *Restricted* | | 0 kb |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA SPORTSWEAR NORTH AMERICA, INC., | No. 3:17-cv-01781-HZ |
| | JUDGMENT |
| Plaintiff, | |
| v. | |
| SEIRUS INNOVATIVE ACCESSORIES, INC., | |
| Defendant. | |

HERNÁNDEZ, District Judge:

This matter being tried and the jury having rendered its verdict on August 6, 2021, IT IS

ORDERED AND ADJUDGED that judgment is entered in favor of Defendant Seirus Innovative

Accessories, Inc., and against Plaintiff Columbia Sportswear North America, Inc.

DATED: ___August 10, 2021_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

**Appx3**

US00D657093S

(12) **United States Design Patent**        (10) **Patent No.:**        **US D657,093 S**

Snyder        (45) **Date of Patent:**        ** **Apr. 3, 2012**

(54) **HEAT REFLECTIVE MATERIAL**

(75) Inventor: **Zach Snyder**, Portland, OR (US)

(73) Assignee: **Columbia Sportswear North America, Inc.**, Portland, OR (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/346,786**

(22) Filed: **Nov. 5, 2009**

(51) **LOC (9) Cl.** .................................................. **29-03**

(52) **U.S. Cl.** .................................................. **D29/101.1**

(58) **Field of Classification Search** .................... D5/47,
D5/54, 55, 56, 57; D6/582; D32/40; 442/327,
442/394; D29/100, 101.2, 101.3, 101.4,
D29/101.5; 428/196, 131; 451/523, 533,
451/537, 539; D8/90
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D119,351 S | * | 3/1940 | Tabin ................................ D5/56 |
| D130,877 S | * | 12/1941 | Tips ................................ D5/47 |
| D154,151 S | * | 6/1949 | Ryan ................................ D6/582 |
| 7,226,879 B2 | * | 6/2007 | Tilton et al. ................... 442/327 |
| D551,407 S | * | 9/2007 | Caruso et al. .................. D32/40 |
| D573,354 S | * | 7/2008 | Nam ................................ D5/62 |
| D583,568 S | * | 12/2008 | Sordi ............................... D5/28 |
| D631,262 S | * | 1/2011 | Evans .............................. D5/56 |
| D638,224 S | * | 5/2011 | Ko et al. .......................... D5/56 |

FOREIGN PATENT DOCUMENTS

JP          63-125525          8/1988

* cited by examiner

*Primary Examiner* — Susan Bennett Hattan
*Assistant Examiner* — Barbara B Lohr
(74) *Attorney, Agent, or Firm* — Schwabe, Williamson & Wyatt, P.C.

(57) **CLAIM**

The ornamental design of a heat reflective material, as shown and described.

**DESCRIPTION**

FIG. **1** is an elevational view of a heat reflective material;
FIG. **2** is an enlarged elevational view thereof, taken from any area in the design;
FIG. **3** is a cross-sectional side elevational view thereof, taken in the direction of line **3-3** in FIG. **1**;
FIG. **4** is a top perspective view of the heat reflective material as used in a sleeping bag;
FIG. **5** is a front perspective view of the heat reflective material as used in footwear;
FIG. **6** is a front perspective view of the heat reflective material as used in legwear;
FIG. **7** is a rear perspective view of the heat reflective material as used in a sock;
FIG. **8** is a rear perspective view of the heat reflective material as used in handwear;
FIG. **9** is a front perspective view of the heat reflective material as used in outerwear; and,
FIG. **10** is a rear perspective view of the heat reflective material as used in footwear.
The broken lines in the drawings depict environmental subject matter only and form no part of the claimed design.

**1 Claim, 3 Drawing Sheets**





PLAINTIFF'S
EXHIBIT

1

USDC 3:17-cv-01781

**Appx4**



FIG. 1   FIG. 2

FIG. 3



FIG. 4



FIG. 5

FIG. 6

FIG. 7

FIG. 8

FIG. 9



FIG. 10



# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure and Federal Circuit Rule 32(b) because this brief contains 13,993 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Century Schoolhouse.

Dated:  January 13, 2022.

/s/  Nika Aldrich
Nika Aldrich

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the **CORRECTED OPENING BRIEF OF APPELLANT COLUMBIA SPORTSWEAR NORTH AMERICA, INC.** was served by the Appellate CM/ECF System, on the 13th day of January, 2022, on the following parties:

|  | Christopher S. Marchese |
|---|---|
|  | marchese@fr.com |
|  | Seth M. Sproul |
|  | sproul@fr.com |
|  | John W. Thornburgh |
|  | thornburgh@fr.com |
|  | Fish & Richardson P.C. |
|  | 12390 El Camino Read |
|  | San Diego, CA 92130 |
|  | Tel: 858-678-5070 |
|  | |
|  | *Attorneys for Defendant/Cross-Appellant Seirus Innovative Accessories, Inc.* |

By: /s/  Nika Aldrich

Nika Aldrich