No. 21-2299, - 2338

IN THE

# United States Court of Appeals
# for the Federal Circuit

COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,

Plaintiff-Appellant,

v.

SEIRUS INNOVATIVE ACCESSORIES, INC.

Defendant-Cross-Appellant.

Appeal from the United States District Court for the Southern District of California, No. 3:17-cv-01781-HZ, Judge Marco A. Hernandez

**DEFENDANT-CROSS-APPELLANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S OPENING BRIEF**

Christopher S. Marchese
Seth M. Sproul
John W. Thornburgh
FISH & RICHARDSON, P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: 858-678-5070

April 20, 2022

Attorneys for Defendant-Cross-Appellant

## CERTIFICATE OF INTEREST

Counsel for Defendant-Cross-Appellant Seirus Innovative Accessories, Inc.

("Seirus") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Seirus Innovative Accessories, Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **None**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Oliver J. Richards, Michael A. Amon, Garrett K. Sakimae, Craig Countryman**

   **Markowitz Herbold PC: Harry Wilson, Renee Rothauge**

   **Troutman Sanders LLP: Paul McGowan, Lisa D. Hardie, Matthew D. Murphy, Alison A. Grounds, Eric Jaegers, Anup M. Shah**

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

   **None**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None**

April 20, 2022                          */s/ John W. Thornburgh*
                                        John W. Thornburgh

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST ...................................................................... I

STATEMENT OF JURISDICTION.................................................................10

STATEMENT OF THE ISSUES....................................................................11

INTRODUCTION ....................................................................................12

STATEMENT OF THE CASE.......................................................................13

SUMMARY OF THE ARGUMENT .................................................................38

ARGUMENT ..........................................................................................40

I. STANDARDS OF REVIEW ...................................................................40

II. THE JURY VERDICT OF NONINFRINGEMENT SHOULD
BE AFFIRMED ..................................................................................41

   A. Infringement Is an Intensely Factual Issue, and the Jury's Verdict Should
Be Respected ........................................................................ 41

   B. The District Court Properly Refused to Read Functional Limitations Into
Columbia's Design Patent........................................................ 42

      1. The District Court Properly Rejected Columbia's First
Proposed Instruction ........................................................42

      2. The District Court Properly Rejected Columbia's
Proposed Edit to the District Court's Own Instruction.....................49

      3. The District Court Properly Precluded Columbia from
Arguing Prior Art Could Be Disregarded on Functional
Grounds ......................................................................55

   C. The District Court Properly Rejected Columbia's Position That Seirus's
Logos Cannot Avoid Infringement................................................ 56

1. The District Court Properly Rejected Columbia's First Proposed Instructions ........................................................56

2. The District Court Properly Rejected Columbia's Proposed Edit to the District Court's Own Instruction ......................59

D. Any Error in the Jury Instructions or Exclusion of Argument Was Harmless 63

III. (*CONDITIONAL CROSS-APPEAL*) THE HEATWAVE FABRIC, NOT SEIRUS'S END-PRODUCTS, IS THE RELEVANT "ARTICLE OF MANUFACTURE" AS A MATTER OF LAW ...............................................................................66

A. The Patent Shows the Relevant Article is the Fabric .......................... 67

B. The Accused Design's Relative Lack of Prominence in the End-Products Shows the Article is the Fabric .......................................................... 68

C. The Patented Wave Design Is Conceptually Distinct from the Glove........ 70

D. The HeatWave Fabric is the Relevant Article Because It Is Manufactured and Sold Separately .......................................................................... 71

E. At a Minimum, the Court Should Grant a New Trial on Damages ............. 72

1. The Plaintiff Should Bear the Burden of Persuasion on the Relevant "Article of Manufacture" Under § 289 ........................72

2. Neither Policy Nor Any Other Consideration Justifies Shifting the Burden of Persuasion to the Defendant ........................76

3. The Erroneous Jury Instructions Prejudiced Seirus ...........................77

4. A New Trial on Infringement Would Also Justify a New Trial on Damages. ..................................................................78

CONCLUSION ................................................................................................79

CERTIFICATE OF COMPLIANCE ................................................................80

# TABLE OF AUTHORITIES

<b><u>Page(s)</u></b>

**Cases**

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
   2017 WL 4776443 (N.D. Cal. Oct. 22, 2017) ........................................65, 68, 69

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ............................................................67, 68, 70

*Brief for the United States as Amicus Curiae,*
   2016 WL 3194218, at *27-*29 ..................................... 28, 59, 60, 61, 62, 63, 68

*Bush & Lane Piano Co. v. Becker Bros.*,
   222 F. 902 (2d Cir. 1915) ...................................................................59, 60, 63

*Clem v. Lomeli*,
   566 F.3d 1177 (9th Cir. 2009) ....................................................................69

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010) ..................................................................35

*Curver Luxembourg, SARL v. Home Expressions Inc.*,
   938 F.3d 1334 (2019)...........................................................................36, 37, 38

*Dobson v. Dornan*,
   118 U.S. 10 (1886)...................................................................................11, 40

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665, 680 (Fed. Cir. 2008) ..........................................................35

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) (en banc) .....................................11, 13, 40, 47, 65

*Engel Indus. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) .............................................................40, 48, 49

*Garretson v. Clark*,
   111 U.S. 120 (1884).....................................................................................67

*Gasoline Products Co., Inc., v. Champlin Refining Co.*,
   283 U.S. 494 (1931)......................................................................................70

*In re Glavas*,
230 F.2d 447, 109 USPQ 50 (CCPA 1956)......................................................37

*Gorham Co. v. White*,
81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1872) .......... 12, 13, 14, 38, 49, 50, 52, 53

*Grand Rapids Refrigerator Co. v. Young*,
268 F. 966 (6th Cir. 1920) .................................................................................59

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) .......................................................................39, 48

*In re Harvey*,
12 F.3d 1061 (Fed. Cir. 1993) ...........................................................................37

*Kyocera Wireless Co. v. President Elecs.*,
Ltd., 179 F. App'x 53, 2006 WL 1153583, at *2 (Fed. Cir. 2006) ...................43

*Lee v. Dayton-Hudson Corp.*,
838 F.2d 1186, 1188 (Fed. Cir. 1988) ...............................................................35

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .........................................................................65

*In re Mann*,
861 F.2d 1581, 8 USPQ2d 2030 (Fed.Cir.1988) ..............................................37

*Meghrig v. KFC Western, Inc.*,
516 U.S. 479 (1996)...........................................................................................66

*Nitco Holding Corp. v. Boujikian*,
491 F.3d 1086 (9th Cir. 2007) ...............................................................33, 34, 35

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997) .........................................................................36

*Pepper v. United States*,
562 U.S. 476 (2011)...........................................................................................41

*Peralta v. Dillard*,
744 F.3d 1076 (9th Cir.2014) (en banc) .................................................32, 44, 51

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013) ....................................................................57

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
894 F.3d 1258 (Fed. Cir. 2018) ....................................................................67

*Rumsfeld v. Freedom NY, Inc.*,
329 F.3d 1320 (Fed. Cir. 2003) ....................................................................40

*Samsung Electronics Co., Ltd. v. Apple Inc.*,
137 S. Ct. 429 (2016).........................................................................28, 32, 68

*Schaffer ex rel. Schaffer v. Weast*,
546 U.S. 49 (2005).......................................................................................64

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
655 F.3d 1364 (Fed. Cir. 2011) . (*See* Blue Brief .) ...........................................32

*In re SurgiSil, L.L.P.*,
14 F.4th 1380 (Fed. Cir. 2021) ....................................................................38

*Unette Corp. v. Unit Pack Co. Inc.*,
785 F.2d 1026 (Fed. Cir. 1986) ...........................................................4, 49, 53

*Union Carbide Corp. v. Am. Can Co.*,
724 F.2d 1567 (Fed. Cir. 1984) ....................................................................43

*United States v. Echeverry*,
759 F.2d 1451 (9th Cir. 1985) ....................................................................44

*United States v. Parsons Corp.*,
1 F.3d 944 (9th Cir. 1993) ...................................................................45, 54

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
546 U.S. 394 (2006)......................................................................................33

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ....................................................................32

*Wagner v. Cnty. of Maricopa*,
747 F.3d 1048 (9th Cir. 2013) ....................................................................32

*Wilkerson v. Wheeler,*
    772 F.3d 834 (9th Cir. 2014) ............................................................55

**Statutes**

15 U.S.C. § 1117(a) ...........................................................................66

17 U.S.C. § 504(b) .............................................................................66

35 U.S.C. § 289 .................................... 28, 31, 58, 62, 64, 65, 66, 67, 69

**Other Authorities**

37 C.F.R. § 1.153(a) ..........................................................................59

H.R. Rep. No. 49-1966 (1886) .......................................................65, 69

MPEP 1502 ........................................................................................36

Rule 50 ..........................................................................................4, 33

Rule 51 ..............................................................................................45

Rule 56 ..............................................................................................13

Rule 59 ..............................................................................................33

S. Rep. No. 49-206 (1886) .................................................................69

## STATEMENT OF RELATED CASES

Plaintiff-appellant Columbia Sportswear North America, Inc. ("Columbia") is correct that this is the second appeal to this Court in this case. *See Columbia Sportswear North Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019) ("*Columbia I*") (LOURIE, Moore, Stoll) (Case Nos. 18-1329, -1331, -1728). That decision affirmed the jury's finding that Columbia's asserted utility patent is invalid, and vacated the district court's summary judgment that defendant-cross appellant Seirus Innovative Accessories, Inc. ("Seirus") infringed Columbia's asserted design patent, which is the patent at issue in this appeal following a remand trial. No other appeal from this case has been before this Court or any other appellate court in the United States.

In April 2017, Columbia also sued Seirus's supplier Ventex Co., Ltd. ("Ventex") in the United States District Court for the District of Oregon, accusing Ventex of infringing the design patent at issue here. That case, which is captioned *Columbia Sportswear North America, Inc., et al. v. Ventex Co., Ltd, et al.*, Case No. 3:17-cv-00623 (D. Or.), is stayed and may be affected by the outcome of this appeal.

Counsel is unaware of any other case that will directly affect, or will be directly affected by, this Court's decision in this appeal.

## STATEMENT OF JURISDICTION

Columbia is correct the district court had jurisdiction under 28 U.S.C. § 1331 and § 1338(a); the district court entered final judgment on August 20, 2021; and Columbia timely filed a notice of appeal on September 7, 2021. Seirus also timely filed a notice of conditional cross-appeal on September 20, 2021. This Court has jurisdiction under 28 U.S.C. § 1291 and § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.     Following this Court's decision in *Columbia I*, did the district court properly reject Columbia's attempt to read functional limitations into a design patent to avoid prior art?

2.     Also following *Columbia I*, did the district court properly reject Columbia's argument that Seirus's logo cannot be considered as part of the basis for noninfringement?

3.     Did the district court follow the law and permissibly exercise its discretion in drafting jury instructions consistent with *Columbia I?*

4.     (On the conditional cross-appeal) If the noninfringement verdict is disturbed, should the previous damages verdict be vacated where:

> (a)     The damages award was excessive because, as a matter of law, the relevant "article of manufacture" under 35 U.S.C. § 289 is the fabric with the accused design, not the entire end-product; and

> (b)     At a minimum, a new trial is required because the jury instructions improperly shifted the burden of persuasion on the article of manufacture issue to Seirus.

## INTRODUCTION

This is a very narrow appeal. Columbia waived both JMOL and new trial by not filing motions under Rules 50 or 59. All that is left is Columbia's appeal from two jury instructions and the exclusion of one related argument. Moreover, the underlying issues were resolved by the previous appeal, which Columbia improperly attempts to reargue. Indeed, Columbia would have this Court read a functional limitation into its design patent, exclude prior art on that basis, and also hold that Seirus's ornamental, slanted-box logo pattern *cannot* be considered as part of the overall design to avoid infringement. Yet this Court reversed the district court's previous grant of summary judgment on exactly those issues. *See Columbia I*, 942 F.3d at 1123-32 ("*L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo . . . It would be inconsistent with this mandate to ignore elements of the accused design entirely, simply because those elements included the name of the defendant"; also reversing summary judgment that excluded prior art that the district court concluded was "far afield from Columbia's 'heat management materials'") (emphasis in original).

Columbia now asks this Court to make the same errors it previously reversed. Columbia even goes so far as to suggest that this Court should overrule *Columbia I*. (*See* Blue Brief at 80 ("To the extent *Columbia I* is in conflict with *Unette*, *Braun*, or *L.A. Gear*, the prior cases control . . . [and] this Court's holdings in *L.A. Gear* and

12

*Columbia I* are difficult to reconcile.").)  However, this Court already rejected Columbia's petitions for rehearing in *Columbia I*, which is now law of the case. Columbia's renewed arguments are procedurally improper in addition to being wrong.

Finally, in *Columbia I*, this Court did not reach Seirus's appeal regarding damages.  Although the jury's finding of noninfringement rests on solid foundation, and thus the verdict should be affirmed, Seirus renews the damages appeal now as a conditional cross-appeal should the Court disturb the judgment of noninfringement.

## STATEMENT OF THE CASE

***The Parties:***  Seirus is a small, privately held company based in San Diego, California.  (Appx945 at 286:6-9.)  It sells innovative cold-weather accessories such as gloves and hats.  (Appx947 at 288:3-9.)  Its specialty products have received acclaim for their innovation and high quality.  (Appx1011 at 352:3-12.)  Columbia is a large public corporation based in Portland, Oregon.  (Appx910 at 251:1-3.)  It sells a variety of outdoor goods.  (Appx868 at 209:14-16.)

***The Patent-in-Suit:***  Columbia's asserted design patent (No. D657,093) does not cover the design of any specific end-product, like a glove or hat, but covers the design of a material used to make such a product.  The patent's title is "Heat Reflective Material," and, consistent with that description, the patent's claim is to

"[t]he ornamental design of a heat reflective material, as shown and described." (Appx4.) Figures 1 and 2 show the material's design:



FIG. 1

FIG. 2

(Appx1704.) The design is a dark, uninterrupted wave pattern, in which no other design elements are interspersed. Figure 2 shows that a given wave in the claimed design has the same thickness throughout its entire length and that lighter waves, consisting of the heat reflective material, are thinner than the dark waves. Figure 2 is also part of an infinitely repeating design, as Columbia admitted at trial. (Appx846-847 at 187:14-188:16 (Columbia inventor Snyder).)

Figure 3 confirms that the design of the '093 patent is three-dimensional (as also suggested by Figure 2), with two layers of approximate equal thickness:

FIG. 3

14

(Appx1704.)

The patent's other figures confirm it is directed to the heat-reflective material, not any end-product. Figures 5 and 8 separate the end-product (*e.g.*, a boot or a glove) from the material with the claimed design using broken lines:



(Appx6.) These "broken lines depict environmental subject matter only and form no part of the claimed design." (Appx4.) Consistent with this description, the inventor confirmed the pictured environments were not part of the claimed design. (Appx2220.) He instead admitted that his patent covers the material to which the design is applied, not the entire end-product. (Appx2220–2221.) Columbia has never used this wavy design in any of its products. (*See* Blue Brief at 17.)

***The Prior Art:*** Assessing the scope of a design patent (and whether it is infringed) requires examining how it fits with the prior art. Here, the prior art was replete with fabrics having wave designs. As a single example from the trial, U.S. Patent 5,626,949 to Blauer discloses a "breathable shell for outerwear" and relates to "fabric constructions" for "coats, pants, jackets, boots, gloves, and other outer clothing that are designed for protection against inclement weather." (Appx1460 at

15

1:10-15.) As shown below, Blauer discloses a two-layer wavy pattern for a fabric's inner surface, which closely resembles Columbia's design:



FIG. 5

(Appx1459.) Blauer's wavy lines printed on the fabric are continuous and uninterrupted by other design elements. Given that Blauer uses polyurethane, the waves could be any color. (Appx1462 at 5:6 ("urethane polymer"); Appx1201 at 542:13-17 (Columbia admitting Blauer uses polyurethane; Appx1140 at 481:2-13 (polyurethane can be any color).) Each given wave also has a uniform thickness at each point along that wave. And the waves have a similar wavelength and amplitude as the Columbia design.

***The Accused Products:*** The HeatWave fabric used in Seirus's accused products includes a wavy design that differs from Columbia's patent in several respects. Seirus's wavy design resulted from an collaborative design effort by Sean Carey and Mike Carey—both of whom testified at trial—which was an iterative process that resulted in the commercial pattern. (Appx961-971 (Seirus designer Sean Carey); Appx1011-1016 (Seirus CEO Mike Carey); *see also* Appx944-945, Appx950-952 (Seirus CFO Wendy Carey).) The wavy design is repeatedly

interrupted by staggered and slanted boxes that contain the stylized Seirus logo, which results in discontinuous waves.  The waves are oriented vertically in relation to the logo, unlike the horizontal waves in Columbia's design.  Moreover, any given wave has a non-uniform thickness, with thicker and thinner portions at different points along the wave:



(Appx1704; Appx3992; *see also* Appx3994.)  The varying thickness creates a visual effect of alternating darker and lighter channels (or stripes) running perpendicular to the waves, and in which the Seirus logo is staggered.  (Appx960 at 301:16-24; Appx1024 at 365:16-24; Appx966-967 at 307:14-308:20.)  The thickness of Seirus's silver waves relative to the underlying fabric also makes Seirus's overall design bright.  (Appx960 at 301:16-24; Appx1023-1024 at 364:11-365:24.)  To fully appreciate the differences, it may be useful to examine the physical product sample that Seirus will submit as a visual aid for argument, just as Seirus encouraged the

jury to look at Seirus's actual fabric samples. (*See* Appx747-748 at 88:25-89:10; Appx3994.) At trial, Seirus also developed evidence of additional important differences that will be discussed below.

Columbia suggests in its brief that Seirus copied Columbia, but that is wrong. (*See* Blue Br. at 11 ("Seirus set out to copy") and 12-13.) Seirus independently developed its accused design without any knowledge of Columbia's design patent, and Seirus' fabric designer (Sean Carey) offered ***unrebutted*** testimony that he and others at Seirus had developed their wave design, and the name of their product ("HeatWave"), from scratch. (Appx961-971; *see also* Appx1011-1016 (Seirus CEO Mike Carey); Appx944-945, Appx950-952 (Seirus CFO Wendy Carey); Appx2506–2519.) The jury in the first trial also found no willfulness. *Columbia I*, 942 F.3d at 1124.[1]

***The Previous Appeal:*** Leading to the previous appeal, the district court granted summary judgment that Seirus infringed the design patent-in-suit. *Columbia I*, 942 F.3d at 1123-24. It reached this judgment by (1) refusing to consider the effect of the logo in Seirus's design; (2) disregarding other differences in Seirus's design—such as orientation, wave spacing, and size—and also finding these differences "so

---

[1] The district court also precluded Columbia from alleging copying at the infringement trial on remand. (Appx424 at 17:18-22.) Columbia has not appealed that *in limine* ruling.

minor as to be nearly imperceptible"; (3) disregarding some prior art and also finding Columbia and Seirus's designs "substantially closer" than the prior art. *Id.* at 1130.

The district court also declined to construe the sole claim of the '093 patent beyond reference to the figures:

> The Court declines to construe the 'D093 patent with a detailed verbal description. "As the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.' " *Egyptian Goddess*, 543 F.3d at 679 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* The Court here follows that preferable course.

(Appx3987.)

At trial, the jury found that Columbia's asserted utility patent was invalid and awarded $3,018,174 in damages for infringement of the '093 patent. *Columbia I*, 942 F.3d at 1124.

Seirus appealed the summary judgment of infringement and also damages, while Columbia appealed invalidity of its utility patent. Neither party appealed the district court's decision not to construe the '093 patent beyond reference to the figures. *See Columbia I*, 942 F.3d 1119.

On appeal, this Court vacated the summary judgment that Seirus infringed the '093 patent and remanded for a new trial on infringement without reaching damages, and affirmed the jury's verdict that Columbia's utility patent is invalid. *Id.* at 1126,

1131-32. Regarding infringement of the '093 patent, the Court explained: "Given the record in this case, we are persuaded that the district court erred in granting summary judgment of infringement for two reasons: (1) the court improperly declined to consider the effect of Seirus's logo in its infringement analysis and (2) the court resolved a series of disputed fact issues, in some instances relying on an incorrect standard, that should have been tried to a jury." *Id.* at 1130-31.

Regarding Seirus's logo, the Court further held "*L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one." *Id.* at 1131 (emphasis in original). The Court elaborated that "the fact finder is tasked with determining whether an ordinary observer would find the 'effect of the whole design substantially the same'" under *Gorham* and that "[i]t would be inconsistent with this mandate to ignore elements of the accused design entirely, simply because those elements included the name of the defendant." *Id.*, citing *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1872).

In addition, this Court held that "[t]he district court's evaluation of the prior art and its evaluation of wave thickness present another problem. In both instances, the district court made a finding of fact—whether an element of Seirus's design would give an ordinary observer a different visual impression than Columbia's

design—over a disputed factual record.  Such fact findings are not permitted by Rule 56 and should be resolved by a jury on remand." *Id.*

***The Remand Trial:***  Following the previous appeal, the district court conducted a jury trial on the sole issue of whether Seirus infringes the '093 patent. The jury rendered a verdict that Seirus does not infringe.  (Appx1.)

The jury reached this verdict after being instructed on the *Gorham* test that this Court had held determinative.  That is, the district court instructed the jury in relevant part:

> If you find by a preponderance of the evidence that the overall appearance of the accused design is substantially the same as the overall appearance of the Design Patent, you must find that the accused design infringed the Design Patent.
>
> Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other.

(Appx1520.)  This language tracked this Court's opinion in *Columbia I*:

> The "ordinary observer" test is the sole test for determining whether a design patent has been infringed. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc).  The test originates from the Supreme Court's *Gorham* decision, which provides that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

*Columbia I*, 942 F.3d at 1129.  Columbia had also conceded the *Gorham* instruction should be given.  (Appx348 at 14:8-12.)

Consistent with *Columbia I*, the district court permitted the jury to *consider* the effect of Seirus's logo on the overall design.  It instructed the jury that "[t]he scope of the claim encompasses the design's visual appearance *as a whole*" and that "[i]f you find by a preponderance of the evidence that the *overall appearance* of the accused design is substantially the same as the *overall appearance* of the Design Patent, you must find that the accused design infringed the Design Patent." (Appx1519-1520 (emphasis added).)  *Compare Columbia I*, 942 F.3d at 1131 ("the district court's piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are similar, is at odds with our case law requiring the fact-finder to analyze the design as a whole").  Based on this Court's prior holding, the district court also declined Columbia's request to instruct the jury that "[l]abelling a product with source identification or branding *does not* avoid infringement."  (Appx256 at 22:3-4 (emphasis added).) *Compare Columbia I*, 942 F.3d at 1130 (reversing summary judgment based on same theory; "the court improperly declined to consider the effect of Seirus's logo in its infringement analysis").

At trial, Seirus was also careful to emphasize to the jury that infringement depended upon its overall design, including its logo, but that mere source identifiers were *not* relevant:

> A lot of argument was made, a lot of paper has been generated over whether or not logos are merely source identifiers, whether they just tell you who they are. Well it's true, they do sometimes. Like I said, there could be a label on your shirt that says Columbia, and then nothing else. And I don't think that's a part of the design. I wouldn't argue that that is an integral part of the design of the shirt. It just tells you it's Columbia's shirt. But logos are ornamental.

(Appx1247 at 588:1-9 (Seirus closing).) Columbia's arguments that Seirus relied on trademark-like arguments in closing are incorrect, and based on incomplete quotations. For example, the following quote from Seirus's closing argument reveals the context of the snippet Columbia quotes in its opening brief (at 40-41). Columbia's quotation is in *italics*; the key parts Columbia omitted are in ***bold italics***:

> [Sean Carey] was very proud of his artwork and so was the whole Seirus team. They were proud of it, and they were happy to put it out there to their consumer and to display their logo boldly, prominently and repeatedly.
> ***But not, as Columbia would have you think, only to give their name because you can do that pretty darn easily.*** When you buy a jacket or shirt, frequently it will say Patagonia or whatever it is. It will have a logo of some sort one time, one time. That's not what they did. ***That's not what Seirus did.*** Yes, it is true the name and logo does identify it as a Seirus product.
> *Remember when I showed you this instruction? Hard to imagine with all those logos that an ordinary observer, the consumer, would be deceived into thinking that's Columbia's patent. I don't see it. I don't see how that's possible because Seirus is telling the world this is ours. This is ours.* ***And we're telling it to you in a very decorative and ornamental way.*** The slanted box, the name of the company in its

classic traditional logo. Stippled I think was the word Mr. Sean Carey used which means it's just offset, alternating, offset, which give the Seirus rain. And as I said, to me, it gives a flow of up, right to left, because the tilting of the boxes kind of gives this kind of flow to it.

*That's design made by a gentleman who studied design and art*, graphic art, at a renowned school in Washington, D.C. He learned how to do this sort of thing. *He learned how to catch attention. And that's what he did with this design.*

(Appx1225-1226 at 566:13-567:15.)

By contrast, Columbia and its witnesses told the jury that brand is merely "source identification." (*E.g.*, Appx794-798 at 135:24-136:6 (Columbia inventor Snyder testifying "Sometimes they use the word 'source identification,' right? So that just means the brand identifies where it came from."); *see also id.* at 137:20-21, 138:5-7, 139:12-17 (similar testimony from Columbia inventor Snyder); Appx1214 at 555:7-8 (Columbia closing) ("Again, the HeatWave pattern serves one purpose. It's just to identify the source.").)

Also consistent with *Columbia I*, the district court largely left the impact of prior art on infringement to the jury. It instructed the jury that "[w]hen the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design *may be* important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same." (Appx1521 (emphasis added.) *Compare Columbia I*, 942 F.3d at 1129 ("If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the

hypothetical ordinary observer.")  In other words, the district court told the jury that prior art "may be" important to infringement, and it also emphasized that "[w]hile the evaluation of the ***prior art may be helpful***, please keep in mind that the ***sole test for infringement*** is whether the overall appearances of the accused design and the claimed design are substantially the same." (*Id.* (emphasis added).)  Columbia itself interpreted this instruction as putting the burden on Seirus to show prior art was relevant, and it told the jury that.  (Appx1200-1201 at 541:19-542:5.)

In addition, *at Columbia's request*, the district court limited admissible prior art to "fabrics."  (*E.g.*, Appx413 at 6:4-7; Appx421-422 at 14:13-15:16; Appx673-678 at 14:19-19:4 (excluding Adobe Illustrator wave pattern because not a fabric and considering whether to exclude prior art Exhibit 1457); Appx1153 at 494:15-20; Appx1174 at 515:13-4; Appx3989 (excluding prior art Exhibit 1457).)  Even so, the court refused Columbia's request to limit prior art to "heat reflective" fabric because it held this improperly read a functional limitation into a design patent.  (*E.g.*, Appx360 at 26:3-11; Appx369 at 35:3-7; Appx421 at 14:13-23.)

At trial, Seirus introduced three pieces of prior art showing wave patterns on fabric: Blauer, Boorn, and Respess.  (Appx1457-1475.)  Seirus used this prior art to confirm what everyone already knows, that wave patterns are common and old.  For example, as shown and discussed above, Blauer discloses a two-layer "breathable shell for outerwear" with a substrate layer over which a wave-patterned layer is

overlaid and is used as "fabric constructions" for "coats, pants, jackets, boots, gloves, and other outer clothing that are designed for protection against inclement weather." (Appx1460 at 1:10-15.) Boorn discloses "ornamental stripes on the surface of a coated fabric" (Appx1465 at 1:10-13), including wave patterns:



(Appx1464.) Boorn also discloses two-layer fabric. (*Id.* at Fig. 3.) And Respess discloses "fabric with its threads or cords located in wavy directions lengthwise thereof" (Appx1468 at 2:58-60), including this wave pattern:



(Appx1467.) Seirus also elicited testimony that wave patterns are commonly associated with heat. (Appx823-824 at 164:20-165:10 (admission of Columbia

inventor Snyder); Appx951 at 292:16-20 (Seirus manager Wendy Carey); Appx961-962 at 302:24-303:1 (Seirus designer Sean Carey).)

Most importantly, Seirus also introduced strong evidence that, regardless of the prior art, the overall appearances of the accused design and claimed design (reproduced below this paragraph) are *not* substantially the same. For example, as compared to the patented design, the Seirus design breaks the wave pattern with ornamental, offset, slanted boxes that contain the stylized Seirus logo—Seirus designer Sean Carey referred to this pattern of logo boxes as "Seirus rain." (Appx966-967 at 307:14-308:20.) This changes the overall appearance and has a calming effect that is less dizzying than the patented design. (Appx967-968 at 308:21-309:2; Appx1024 at 365:4-15 (patented design is "hard to look at"); Appx849 at 190:18-21 (Columbia inventor Snyder admitting logos "change the way it looks").) Seirus also uses thicker light lines, which creates a brighter design. (Appx844 at 185:19-23 (inventor Snyder admitting patented design is 30-40% light); Appx960-961 at 301:16-302:1 (Seirus designer Sean Carey describing Seirus' "bright" design); Appx1018 at 359:14-25, Appx1023-1024 at 364:11-365:24 (Seirus CEO Michael Carey describing "dramatic differences").) In addition, unlike the patent, Seirus varies the thickness of its waves, which creates the visual impression of horizontal channels (or stripes) orthogonal to the waves. (Appx960 at 301:16-24; Appx1024 at 365:16-24.) Seirus's waves are also oriented vertically relative to its

logo, whereas as the patented design has horizontal waves. (Appx1246 at 587:8-20.) These differences can be seen in the images below, but again Seirus asked the jury to compare the patent figures to its actual fabric samples:



FIG. 1

(Appx1704; Appx3992; *see also* Appx3994.)

Seirus also introduced ***unrebutted evidence*** that its design is substantially different from the patented design in the third dimension. As discussed above, the patented design (as detailed in Figures 2 and 3) is three-dimensional and consists of two layers (dark and light) of approximately equal thickness. (Appx1704; Appx842 at 183:9-15 (admission of inventor Snyder); Appx844 at 185:15 (same).) By contrast, Seirus' silver foil layer is much thinner than the underlying dark layer, which Seirus CEO Mike Carey analogized to "paint" on plywood. (Appx1030-1033 at 371:16-374:4 ("radically different").) Seirus illustrated this to the jury with the

28

following three-dimensional rendering of what Columbia's material would look like, based on Figure 3, if it were put into practice:



(Appx3991.)  By contrast, Seirus's CEO Mike Carey not only analogized Seirus's design to paint on plywood, but also explained why using layers of equal thickness would make Seirus's design "completely unappealing."  (Appx1030-1033 at 371:16-374:4.) Columbia introduced no contrary evidence.  Instead, it simply had its inventor Mr. Snyder testify that it was not "intended" for Figure 3 to be to scale. (Appx860-861 at 201:20-202:10.)  However, the district court gave an instruction to the jury—which Columbia has not appealed—that "[a]n inventor's subjective intent is not relevant to the scope of the claimed design."  (Appx1519.)  And per the claim

construction order, the claim is the figures, which in this case means the design

encompasses two equally thick layers as shown in Figure 3. (Appx3987.)

Columbia argued infringement based on an alleged similarity between the

patented design and a small portion of Seirus's design, which Columbia also turned

sideways, selectively scaled, and artificially darkened (while lightening its patent

figure), as shown below. (Appx742-743 at 83:25-84:3; Appx1085 at 426:8-11.)



Seirus's design

(Appx3993.)



## FIG. 2

(Appx1704.) This Columbia argument directly contradicted the district court's instruction to the jury (also not appealed) that "[t]he scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept and is not limited to isolated features of the drawings." (Appx1519.)

The only Columbia employee to testify at trial also admitted that he had never even looked at the patent. He testified "honestly, I would rather know less about the patent, so that I don't have to answer questions that I'm not qualified to answer." (Appx902 at 243:15-20.) Columbia also spent much of the trial talking about Seirus's marketing materials. (*E.g.*, Appx892 at 233:4-11.) This prompted the district court to give the following corrective instruction, which Columbia has not appealed: "You have also heard evidence about Seirus's marketing materials, including its hang tags. Seirus's marketing materials are not the accused design." (Appx1523.)

31

The jury found no infringement. Afterwards, Columbia did not file any post-trial motions (JMOL or new trial), waiving any challenge to the sufficiency of the evidence. This appeal followed.

***Damages (Conditional Cross-Appeal):*** In its previous opinion, this Court noted the parties had appealed damages issues—for example "whether the proper article of manufacture in this case should be the HeatWave product actually sold or the fabric encompassing the design"—but "[did] not reach them because we have vacated the infringement finding." *Id.* at 1132. Seirus conditionally renews its damages appeal as a cross-appeal here.

While Columbia accused a variety of Seirus cold-weather products—gloves, hats, socks, and glove liners—of infringing the design patent, the accused design is on a single component (the HeatWave fabric) that, for most of the products, is on the interior and is barely visible. (Appx3552-3558; Appx3377.) The products have many other components besides this interior fabric that are critical to their design and functionality. (Appx2598-2599, Appx2604-2613.)

For example, a schematic of one of Seirus's outer shell gloves reproduced below shows some of those other components, including a soft-shell fabric, back panels, a waterproof zipper, a cinch, and a bungee cord:



(Appx3970.) The gloves also include other critical components, such as an inner liner, insulation, and a waterproof membrane. (Appx2608-2613.) Each component embodies "distinct innovations" from the accused design. (Appx2414; Appx2431; Appx3566-3586; Appx2604-2613.)

Contrary to Columbia's assertion at the damages trial and in its opening brief here (at 11), Seirus did not "copy" Columbia's fabric or launch its products with the "support" of Columbia's manufacturers. Seirus selected the HeatWave name and designed its HeatWave pattern before it learned of the '093 patent. (Appx971 at 312:2-4; Appx945 at 286:19-21; Appx1015-1016 at 356:25-357:3; Appx1055 at 396:15-20; Appx1143 at 484:8-21.) Seirus also independently developed its HeatWave fabric with a different supplier, Ventex, and never launched any product that used a fabric from Columbia's manufacturers. (Appx2314–2317; Appx2435-

33

2436; Appx2504–2507.)  Ventex manufactures the HeatWave fabric separately from the other components of Seirus's products.  (Appx2600-2601; Appx2968-2969; Appx3065-3066.)  Ventex also sells it to other companies, who use it for different purposes.  (Appx2601-2604.)

The accused design is not visible in most of Seirus's products.  A customer cannot see it when she picks up Seirus's outer shell gloves—in the examples shown below, it is an interior fabric tucked deep inside the glove:



(Appx3552-3556.)  As shown below, the same is true for Seirus's socks (top), where the accused design is barely visible on the cuff, and on Seirus's black glove liners and hats (bottom) where it is not visible at all:

34







(Appx3559-3560.)

Seirus does make some products with the accused design on the exterior, but there was no evidence this impacts their sales. In fact, there was no evidence the accused design drove sales in any way, and, in one case, a product without the accused design had more sales than a comparable product with it. (Appx2420-2423; Appx2870-2872; Appx3561-3564.) Even Columbia argued it was the fabric's

35

functional aspects—its combination of warmth and breathability—that attracted customers, not the design. (Appx1995-1996.)

The parties' dispute regarding damages centered on the appropriate "article of manufacture" for calculating damages under 35 U.S.C. § 289. The Supreme Court had recently issued *Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429 (2016), which held that the "article of manufacture" might either be "a product sold to a consumer" or "a component of that product" but declined to specify the test for determining the appropriate article. *Id*. at 435. The Solicitor General had proposed a four-factor test for determining the article. *See Brief for the United States as Amicus Curiae,* 2016 WL 3194218, at *27-*29. The parties used those factors, but disagreed on who bore the burden of persuasion.

The district court ruled for Columbia, and its jury instruction put the burden on Seirus to prove that the relevant article is something less than the end-product, contradicting the statute and the traditional burden for proving damages:

> Columbia bears the initial burden of producing evidence identifying the article of manufacture for which it seeks profits. Columbia may meet that burden by showing that Seirus applied the patented design to a product that was sold and further proving Seirus's total profit from the sale. ***Seirus bears the burden of proving that the article of manufacture is something less than the entire product.***

(Appx3495-3497; Appx3341-3342.) The court acknowledged, however, that "reasonable people can disagree about this" and "an appellate court is going to tell us whether we are right or not." (Appx3496-3497.) Seirus objected to this

instruction. (Appx3405-3408; Appx3614; Appx3622; Appx1763; Appx1770; Appx3184.)

The disputed instructions certainly impacted the jury's damages award. Columbia's expert, after revising downward to correct some admitted mistakes, calculated damages as $3,018,174 by assuming the "article of manufacture" was the entire end-product. (Appx3078-3080; Appx3118.) Columbia did not present any alternative calculation if the article was instead simply the HeatWave fabric. By contrast, Seirus's expert calculated that damages were at most $500,817 if the relevant article was the HeatWave fabric. The jury ultimately awarded Columbia's amount, implicitly suggesting it found the article was the entire end-product. (Appx1722.)

Following trial, Seirus renewed its JMOL motion that the HeatWave fabric is the appropriate article of manufacture and that damages should be reduced accordingly. Seirus also moved for a new trial based on the erroneous jury instructions. The court summarily denied both motions. (Appx1727.) The court awarded interest and supplemental damages, again based on the erroneous assumption that the relevant article was Seirus's end-products, rather than the HeatWave fabric. (Appx1869; Appx1872; Appx3719-3720.)

<u>**SUMMARY OF THE ARGUMENT**</u>

***Design Patent Infringement.*** Infringement is an intensely factual issue where a jury should determine whether the overall impression of the two designs are sufficiently close to result in infringement. Here, there are striking differences between the designs. The patented design shows uninterrupted horizontal waves where each wave has a uniform thickness throughout. By contrast, Seirus's design features brighter vertical waves that are repeatedly interrupted by a unique, repeating ornamental feature—Seirus's slanted logo boxes—and where the thickness of each wave is not uniform. A jury found those differences significant, and Columbia now invites errors like the ones that prompted this Court to vacate the previous summary judgment.

In particular, Columbia seeks to read a functional limitation (heat reflectivity) into its design patent in order to disregard prior art relevant for the infringement analysis. Columbia also argues that Seirus's repeating, staggered, slanted boxes that contain the stylized Seirus logo cannot be the basis for noninfringement. Both of these positions are directly contrary to this Court's decision in *Columbia I*. Columbia even admits its position on the logo issue is "difficult to reconcile" with that decision, which is binding law of the case and also correct.

Columbia challenges the district court's jury instructions on these issues, and also the district court's exclusion of Columbia's argument that the jury should

disregard prior art that supposedly does not reflect heat. As detailed below, the district court correctly followed the law, including this Court's decision in *Columbia I*, and also properly exercised its discretion regarding the wording of the jury instructions.

*Design Patent Damages*. The § 289 damages award should be reversed or vacated if the noninfringement judgment is disturbed. The award is excessive as a matter of law because the relevant "article of manufacture" is the HeatWave fabric, not Seirus's end-products. The patent identifies the material as the relevant article, and Seirus's fabric is distinct from the many other components and technological innovations that make up its products. The fabric is manufactured and sold separately, and the accused design it bears does not drive demand for any of the accused products. Even Columbia now takes the position that its patent covers fabric rather than clothing. Thus, the fabric is the relevant article as a matter of law. At a minimum, a new trial on damages is appropriate, because the court improperly shifted the burden of proof (persuasion) on the relevant article to Seirus. That contradicts the presumption that a plaintiff bears the burden on damages, the statutory text, and how this Court has treated other damages sub-issues.

**ARGUMENT**

## I. STANDARDS OF REVIEW

The parties agree this Court applies Ninth Circuit law to the only issues presented by Columbia's appeal: jury instructions and exclusions of evidence or argument. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1328 (Fed. Cir. 2008) (jury instructions); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1372 (Fed. Cir. 2011) (exclusion). (*See* Blue Brief at 47-48.)

The parties also agree the Ninth Circuit "review[s] a district court's formulation of civil jury instructions for abuse of discretion," "review[s] de novo whether an instruction states the law correctly," and also reviews exclusion of evidence or argument for abuse of discretion. *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir.2014) (en banc) (jury instructions); *Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (exclusion).

Finally, Seirus's conditional cross-appeal depends in part upon the standard of review for jury instructions, but also depends upon legal issues surrounding the "article of manufacture," which are reviewed de novo. *See Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429 (2016).

## II. THE JURY VERDICT OF NONINFRINGEMENT SHOULD BE AFFIRMED

### A. Infringement Is an Intensely Factual Issue, and the Jury's Verdict Should Be Respected

This Court previously vacated summary judgment that Seirus infringes because infringement of a design patent is factual and should be resolved by a jury. *Columbia I*, 942 F.3d at 1130-31 (stating that "the court resolved a series of disputed fact issues, in some instances relying on an incorrect standard, that should have been tried to a jury"). The district court understood this ruling and properly submitted the issue to the jury on remand. By contrast, Columbia refuses to accept the prior decision and continues to invite the same errors that led to the previous reversal.

In addition, since Columbia filed neither a motion for new trial nor a motion for judgment as a matter of law, the scope of the present appeal is extremely narrow. In the Ninth Circuit, failure to file a Rule 50 motion waives all challenges to the sufficiency of the evidence. *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) ("As we noted in *Saman*, '[t]he Supreme Court has held that Rule 50(b) is to be strictly observed, and that failure to comply with it precludes a later challenge to the sufficiency of the evidence on appeal.'"). In addition, failure to file a Rule 59 motion waives Columbia's ability to seek a new trial on appeal based on weight of the evidence. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S.

394, 404-405 (2006) ("respondent never sought a new trial before the District Court, and thus forfeited its right to do so on appeal").

**B.** **The District Court Properly Refused to Read Functional Limitations Into Columbia's Design Patent**

**1.** **The District Court Properly Rejected Columbia's First Proposed Instruction**

The district court properly rejected Columbia's proposed instruction that the claim of its design patent was limited to fabrics that have the functional property of being "Heat Reflective" and further that "[t]he plain and ordinary meaning of 'Heat Reflective materials' in the context of the Design Patent does not include all materials." (*E.g.*, Appx360 at 26:3-11; Appx369 at 35:3-7; Appx421 at 14:13-23.)

First, Columbia's proposed instruction was directly contrary to this Court's decision in *Columbia I*. In that case, this Court reversed the district court's exclusion of prior art it found to be "far afield from Columbia's 'heat management materials.'" 942 F.3d at 1130; *see also id.* at 1131 (holding that evaluation of prior art was a fact issue for the jury). The Court also highlighted the importance of prior art to design patent infringement:

> The ordinary observer is considered to be familiar with prior art designs, and "[w]hen the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer."

42

*Id.* at 1129 (internal citations omitted), quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

The inconsistency of Columbia's argument with *Columbia I* is confirmed by Columbia's request that this Court instruct the district court to disregard the Blauer prior art on remand (Blue Brief at 58), even though it admits disregarding Blauer was one of the bases for reversal in *Columbia I* (*see id.* at 21). Columbia also did not object to the admissibility of Blauer at the remand trial. (Appx996-998 ("Now if they want to compare Blauer to the patent, that's fine.").) Similarly, Columbia did not preserve an objection to the admissibility of the Boorn prior art. (*See* Appx1036 ("That's fine, Your Honor").) Columbia thus did not preserve its argument that all of Seirus's prior art should be excluded. (*Compare* Blue Brief at 49-50 ("This Court should reverse and remand with clear instructions of the scope of comparison prior art relevant to a design patent infringement analysis. None of Seirus's alleged prior art qualifies.").)

Second, it is black letter law that design patents do not cover functionality. This Court has been clear that "[d]esign patents do not and cannot include claims to the structural or functional aspects of the article . . . Thus it is the non-functional, design aspects that are pertinent to determinations of infringement." *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) ("Where a design contains

both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."), quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Columbia relies on the MPEP and the *Curver* case to argue that the claims—and by extension prior art— should be limited to heat reflective material. *See Curver Luxembourg, SARL v. Home Expressions Inc*., 938 F.3d 1334, 1340-41 (2019). However, neither the MPEP nor *Curver* supports limiting the claim as Columbia proposes. The MPEP merely states that design patents are applied to articles of manufacture, and do not exist in a vacuum. *See* MPEP 1502, 1503. Seirus does not dispute that here; in fact, it agrees the article of manufacture is fabric. *Curver* is also inapposite. There, the design patent claim recited a "pattern for a chair," but the patent figures did not show the pattern applied to a chair. The court formulated the issue as follows: "whether claim language specifying an article of manufacture can limit the scope of a design patent, even if that article of manufacture is not actually illustrated in the figures." 938 F.3d at 1340 (finding no infringement of an accused ***basket*** that contained a similar design, because the patent claim recited a "pattern for a chair"). Again, that is not the dispute here. While the parties dispute whether the article of manufacture is fabric or clothing for damages purposes, they agree the

patent is limited to an article of manufacture. And, unlike the patent in *Curver*, the '093 patent at issue here does show the article of manufacture—*i.e.*, fabric.

Columbia attempts to take *Curver* much further than its actual holding or language, to suggest that design patents can be limited by ***functionality rather than form*** for purposes of *excluding prior art* otherwise relevant to evaluating infringement. Functionally limiting design patents is wrong, as this Court has repeatedly explained:

> Unlike an invention in a utility patent, a patented ornamental design has no use other than its visual appearance, *In re Glavas*, 230 F.2d 447, 450, 109 USPQ 50, 52 (CCPA 1956), and its scope is "limited to what is shown in the application drawings," *In re Mann*, 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed.Cir.1988). Therefore, in considering prior art references for purposes of determining patentability of ornamental designs, the focus must be on appearances and not uses. *In re Glavas*, 230 F.2d at 450, 109 USPQ at 52.

*In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993) (upholding finding of design patent invalidity)*; see also In re Glavas*, 230 F.2d 447, 450, 109 USPQ 50, 52 (CCPA 1956) ("The principle of nonanalogous arts, therefore, cannot be applied to design cases in exactly the same manner as to mechanical cases."). Columbia's argument would be akin to the patent in *Curver* claiming a "*tear-proof* pattern for a chair"—tear-proof is a functional feature, not ornamental. But that did not happen. *Curver*, 938 F.3d 1334. *Curver* also turned on the fact that "no 'ordinary observer' could be deceived into purchasing Home Expressions's baskets believing they were the same as the patterned chairs claimed in Curver's patent." 938 F.3d at 1343. This

has no relevance to whether the prior art in this case would cause the ordinary observer to notice the details in evaluating infringement.[2]

The recent *SurgiSil* case cited by Columbia does not change this law. *See In re SurgiSil, L.L.P.*, 14 F.4th 1380, 1382 (Fed. Cir. 2021). This three-page opinion simply applies settled law and does not make any new law. The issue in *SurgiSil* was whether the PTAB was correct in finding that an "ornamental design for a lip implant" was anticipated by a catalog showing "an art tool called a stump." *Id.* at 1381. In finding anticipation, the PTAB held "it is appropriate to *ignore* the identification of the article of manufacture in the claim language." *Id.* (emphasis added). Consistent with established precedent (namely *Gorham* and *Curver*), this Court reversed the PTAB's decision finding the article of manufacture "not limiting." *Id.* at 1382. However, the claim language in *SurgiSil* was directed to an article of manufacture (a lip implant), and this Court said nothing to suggest that *functional* limitations should be read into a design patent. *Id.* at 1382.

Third, Columbia argues that only prior art relevant to *anticipation* is relevant to infringement (*e.g.*, Blue Brief at 49), but that is not the law. As this Court explained in *Columbia I* and the cases cited therein, it is *close* prior art—not anticipatory prior art—that is relevant for infringement: "[w]hen the differences

---

[2] The difference between function versus form can also be understood if one considers the patented chair in *Curver*. The patented *design* would cover a toy chair even if it were too small to perform the *function* of supporting a person.

between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." *Columbia I*, 942 F.3d at 1129. If anticipatory prior art existed, the patent would simply be invalid.

Fourth, Columbia is judicially estopped from arguing the article of manufacture is heat reflective material. It argued in the damages trial that the article was clothing, and prevailed on that issue before the jury (although the issue still remains live in the conditional cross-appeal). (Appx3078-3080; Appx3118; *see also* Case Nos. 18-1329, -1331, -1728, Dkt. No. 37 at 22 ("Columbia produced more than substantial evidence that the relevant articles of manufacture were Seirus's products as sold to market, and not the fabric within them").) Columbia cannot now argue the article of manufacture is only "heat reflective material." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'").

Fifth, Columbia's proposed jury instruction—based on a narrow claim construction the district never adopted—is improper because Columbia waived construction of the asserted claim. Before the first appeal, the district court expressly

47

declined to construe the '093 patent beyond reference to the figures, and Columbia

did not appeal that decision, making it law of the case, as detailed below. By

contrast, the summary judgment order that Columbia relies upon was vacated,

meaning it is *not* law of the case, as also detailed below.

The district court explained its decision not to construe the '093 patent as

follows:

> The Court declines to construe the 'D093 patent with a detailed verbal description. "As the Supreme Court has recognized, a design is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.' " *Egyptian Goddess*, 543 F.3d at 679 (quoting *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* The Court here follows that preferable course.

(Appx3987.) Since Columbia did not appeal this order in *Columbia I*, it is precluded

from doing so here. *Engel Indus. v. Lockformer Co.*, 166 F.3d 1379, 1382-83 (Fed.

Cir. 1999) ("Unless remanded by this court, all issues within the scope of the

appealed judgment are deemed incorporated within the mandate and thus are

precluded from further adjudication.").

Columbia attempts to flip this result by relying upon statements in the district

court's summary judgment order excluding certain prior art as irrelevant, but that

order was vacated on appeal and no longer has any effect. *Rumsfeld v. Freedom NY,*

*Inc.*, 329 F.3d 1320, 1332 (Fed. Cir. 2003) ("The law of the case thus does not apply

because a vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.") (internal quotation omitted); *Pepper v. United States*, 562 U.S. 476, 507 (2011) (stating that a vacated decision cannot be the law of the case, regardless of the reason for vacatur).

Finally, Columbia's proposed instruction that "[t]he plain and ordinary meaning of 'Heat Reflective materials' in the context of the Design Patent does not include all materials" (Appx360 at 26:3-11) directly contradicts the admission of Columbia's own expert in the previous trial. Columbia's expert, Dr. Cole, testified that—according to an accepted law of physics called "Planck's Law," named after Professor Planck who was an early founder of "modern physics"—all materials are heat reflective. (Appx5994-5995 (Cole) at 1999:23 – 2000:4 ("[E]verything is a body radiator. Absolutely. That's true.").) In fact, Dr. Cole agreed with the same assertion about Planck's Law made by Seirus' expert, Dr. Block. (Appx2769, Appx2823-2824 (Block) at 1624:8-11 and 1678:16-1679:16; *see also* Appx363-367 (Seirus objecting to Columbia's proposed instruction on this basis).)

The district court thus properly rejected Columbia's proposed instructions on heat reflective materials.

### 2. The District Court Properly Rejected Columbia's Proposed Edit to the District Court's Own Instruction

The district court also acted within its discretion to deny Columbia's requested amendment to the district court's own proposed instruction on the eve of

deliberation. (*See* Appx1481 (Columbia proposing "The term 'prior art' refers to prior designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their designs.").)

First, the district court had previously agreed with Columbia that certain prior art references were irrelevant, and eliminated that prior art as a matter of law. Specifically, the court limited admissible prior art to *fabrics* showing wave patterns. (Appx413 at 6:4-7; Appx421-422 at 14:13-15:16; Appx673-678 at 14:19-19:4; Appx1153 at 494:15-20; Appx1174 at 515:13-4; Appx3989.) Moreover, each piece of prior art before the jury in fact showed a wave pattern on fabric. Blauer discloses a "breathable shell for outerwear" made from a substrate layer and a wave pattern layer overlaid on the substrate, disclosing "fabric constructions" for "coats, pants, jackets, boots, gloves, and other outer clothing that are designed for protection against inclement weather." (Appx1460 at 1:10-15.) Boorn discloses "ornamental stripes on the surface of a coated fabric." (Appx1465 at 1:10-13.) And Respess discloses "fabric with its threads or cords located in wavy directions lengthwise thereof." (Appx1468 at 2:58-60.) To the extent Columbia argues that these prior art fabrics are still irrelevant because they supposedly do not reflect heat (even though everything does), that argument is precluded by the rule that design patents cover form, not function.

Second, Columbia's eleventh-hour proposal regarding "a person of ordinary skill" would have made no sense to the jury because Columbia first proposed this language after the close of evidence (*see* Appx1481; Appx1172-1173 at 513:5-514:9.), and no witness had testified about or defined who "a person of ordinary skill" even was.[3] Indeed, Columbia's request for this instruction was the first time "ordinary skill" had been mentioned at trial. Thus, Columbia's instruction would have been meaningless to a reasonable jury.

Third, the wording of the jury instructions was within the trial judge's discretion, and he adequately informed the jury they should consider prior art only to the extent *they* found it relevant for infringement. That is, the judge told the jury prior art "may be" important to infringement, and he also emphasized that "[w]hile the evaluation of the prior art *may be helpful*, please keep in mind that the sole test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same." (*Id.* (emphasis added).) Columbia itself interpreted this instruction as putting the burden on Seirus to show prior art was relevant, and it told the jury that. (Appx1200-1201 at 541:19-542:5 ("[T]he judge is

---

[3] Since the patent at issue was easily understood by a lay jury, neither party designated outside technical experts to testify. This Court does not require expert testimony in such cases. *E.g.*, *Kyocera Wireless Co. v. President Elecs.*, Ltd., 179 F. App'x 53, 2006 WL 1153583, at *2 (Fed. Cir. 2006); *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984) ("appellant's invention are easily understandable without the need for expert explanatory testimony").

going to instruct you that when you're considering the prior art that they're going to present to you, that you must decide what is prior art and what is not prior art. And for it to be prior art to this field, to be something that somebody in this field would look at, they would have the burden of telling you why it's relevant. They would have the burden of telling you why someone like Mr. Snyder would look to these other designs for inspiration. That's the burden that they would have.").) In addition, consistent with *Columbia I*, the judge instructed the jury that "[w]hen the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design *may be* important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same." (Appx1521 (emphasis added.) *Compare Columbia I*, 942 F.3d at 1129 ("If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer.").

The district court thus properly acted within its discretion in deciding how to word the instructions. *Peralta,* 744 F.3d at 1082 ("We review a district court's formulation of civil jury instructions for abuse of discretion"); *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985) ("[s]o long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion"); *see also Columbia I*,

942 F.3d at 1128 ("Because Columbia does not challenge the instructions given as misleading or incorrect statements of the law, we review the district court's jury instruction for an abuse of discretion.").

Fourth, Columbia failed to preserve an appeal on this instruction because it stopped short of telling the trial judge that his proposed language was *wrong*. It merely asked the judge to exercise his discretion in Columbia's favor. (*See* Appx1481 ("COLUMBIA'S PROPOSED AMENDMENTS"); Appx1172-1173 at 513:5-514:9 (Columbia counsel stating "we would like the jury to have the opportunity to draw that conclusion for themselves").) Under Ninth Circuit law, Columbia thus did not preserve an appeal:

> District judges do a thousand things that call for the exercise of discretion, the wording of jury instructions being only one among them. One of the lawyer's functions is persuading the court to exercise its discretion in a way favorable to the client. Another quite different function is keeping the judge from straying outside the ambit of his discretion by pointing out errors of law. District judges are more likely to correct errors if they are aware the lawyer is raising legal objections, not just quibbling about matters within the court's discretion. So, in order to comply with Rule 51, it's not enough for an attorney to make a suggestion that the Court turns down. He must also make it clear that he believes the judge has erred as a matter of law. This the [appealing] attorney did not do.

*United States v. Parsons Corp.*, 1 F.3d 944, 945 (9th Cir. 1993).

Finally, Columbia's proposed instruction about undefined "ordinary skill" would have been confusing in the context of a trial in which Columbia had repeatedly attempted to distinguish prior art on the basis of function. (*E.g.*, Appx739

at 80:1-8 (Columbia opening stating "Columbia's invention, Mr. Snyder's invention, is just about heat-reflective material. . . . It has nothing to do with using it in any other type of fabric or anything else.  This is specific to heat-reflective materials, this particular patent."); Appx799 at 140:12-19 (inventor Snyder stating "so the design patent is about the heat reflective material").)

Indeed, Columbia *continues* to tout the functional advantages of its products in this appeal.  (*E.g.*, Blue Brief at 4 ("This case concerns Columbia's groundbreaking 'heat reflective material' . . .  Heat reflective materials derive from NASA's invention of the space blanket . . . In 2008, Columbia invented a new approach.  Columbia used two layers: a layer of heat reflective foil glued to a layer of breathable, base material . . . This way, the foil would reflect heat to keep the wearer warm while the exposed sections of base material would ensure breathability, keeping the inside of the garment dry."); *id.* at 17 ("Thus, not only did Seirus take Columbia's idea for a heat reflective material, but it also took the ornamental design of the D'093 patent for its own use.").)  These supposed functional advantages are irrelevant to a design patent.  Moreover, Columbia's utility patent directed to these alleged advantages was previously found invalid.  *Columbia I*, 942 F.3d at 1124, 1126.

In short, the jury was properly instructed, and the district court allowed Columbia to try to distinguish the prior art.  In fact, the district court informed the

jury that the "ordinary observer test" is the sole test for infringement, and that prior art "may be helpful." Given this context, the trial judge properly exercised his discretion to avoid adding weight to Columbia's attempt to distinguish prior art on functional grounds.

### 3. The District Court Properly Precluded Columbia from Arguing Prior Art Could Be Disregarded on Functional Grounds

Consistent with its rulings on the jury instructions, the district court also properly exercised its discretion to preclude Columbia from arguing Seirus's prior art should be disregarded because it allegedly did not perform the function of reflecting heat. (Appx421 at 14:13-23.) The district court acted properly for all the reasons discussed above with regard to the jury instructions:

- Design patents cover form, not functionality. *E.g.*, *Egyptian Goddess*, 543 F.3d at 680.

- *Columbia I* reversed the district court's summary judgment that excluded prior art that the district court had concluded was "far afield from Columbia's 'heat management materials.'" *Columbia I*, 942 F.3d at 1130-31.

- Prior art does not have to be anticipatory to be relevant to infringement. *Columbia I*, 942 F.3d at 1129.

- Columbia is judicially estopped by its successful argument in the first trial that the articles of manufacture are hats and gloves, not heat-reflective fabric. (Appx3078-3080; Appx3118; Case Nos. 18-1329, -1331, -1728, Dkt. No. 37 at 22.) *Hamilton*, 270 F.3d at 782.

- Columbia waived construction of the '093 patent and is precluded by the mandate rule. (Appx3987.) *Engel Indus.*, 166 F.3d at 1382-83.

- Columbia's own expert admitted all materials reflect heat. (Appx5994-5995 at 1999:23 – 2000:4; Appx363-367.)

- The district court limited prior art to fabrics at Columbia's request. (Appx413 at 6:4-7; Appx421-422 at 14:13-15:16; Appx673-678 at 14:19-19:4; Appx1153 at 494:15-20; Appx1174 at 515:13-4; Appx3989.)

All of these factors more than justify the district court exercising its discretion to prevent Columbia from misleading the jury by telling them prior art should be disregarded for infringement purposes because it supposedly did not reflect heat.

### C. The District Court Properly Rejected Columbia's Position That Seirus's Logos Cannot Avoid Infringement

#### 1. The District Court Properly Rejected Columbia's First Proposed Instructions

The district court properly rejected Columbia's proposed instructions that "[c]onfusion as to the source or provider of the goods accused of infringing is

56

*irrelevant* to determining whether a patent is infringed" and "[l]abelling a product with source identification or branding *does not* avoid infringement." (Appx348 at 14:13-14; Appx356 at 22:3-4 (emphasis added).) In fact, Columbia's proposal was directly contrary to this Court's decision in *Columbia I*, which reversed the district court's summary judgment on this very point:

> *L.A. Gear* does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one. Indeed, the fact finder is tasked with determining whether an ordinary observer would find the "effect of the whole design substantially the same." *Gorham*, 81 U.S. at 530. It would be inconsistent with this mandate to ignore elements of the accused design entirely, simply because those elements included the name of the defendant.

*Columbia I*, 942 F.3d at 1131 (emphasis in original).

It is telling that Columbia admits that its argument on appeal is contrary to *Columbia I*. (*See* Blue Brief at 80 ("To the extent *Columbia I* is in conflict with *Unette*, *Braun*, or *L.A. Gear*, the prior cases control . . . [and] this Court's holdings in *L.A. Gear* and *Columbia I* are difficult to reconcile").) To the contrary, *Columbia I* is law of the case, and cannot be re-argued now. *Engel Indus.*, 166 F.3d at 1383 ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.").

Columbia also repackages its previous petition for rehearing in arguing that *Columbia I* is contrary to *L.A. Gear* and the other cited cases. (*See* Case Nos. 18-

1329, -1331, -1728, Dkt. No. 102.)  However, this Court denied that petition, and should not revisit its holding now.  (*See* Case Nos. 18-1329, -1331, -1728, Dkt. No. 143.)  Moreover, as Seirus explained in its opposition to Columbia's rehearing petition, *Columbia I* properly applied the Supreme Court's *Gorham* infringement test, by requiring consideration of the design as a whole, including elements of its "ornamental logo," which is no departure from any cases of this Court or otherwise. (*See* Case Nos. 18-1329, -1331, -1728, Dkt. No. 130.)  *L.A. Gear* does not require the fact-finder to erase surface ornamentation that includes logos.  In fact, in *L.A. Gear*, such a logo was not at issue.  The question was whether the lower court had erred in applying its findings on trade dress to design patent infringement.  This Court found no error but noted a difference between the two: "[d]esign patent infringement relates solely to the patented design, and does not require proof of unfair competition in the marketplace or allow for avoidance of infringement by labelling." *L.A. Gear*.  988 F.2d 1117, 1126 (Fed. Cir. 1993).  Columbia takes this single sentence out of context and attempts to say this Court set forth a bright-line rule that logos may be considered as part of a trade dress case but *never* in a design patent case.  Columbia's rule would make logos irrelevant in all cases, even where a logo pattern overtakes the patented design.  This is not the holding in *L.A. Gear*, nor could it be, as such a holding would be contrary to the long standing precedent requiring comparison of the overall appearance of the accused and patented designs.

Finally, the reasoning of *Columbia I* is correct that Seirus's logo is very much part of its ornamental design and has a strong impact on the overall appearance of Seirus's fabric.  Seirus's pattern of offset, slanted logo boxes—the "Seirus rain"—break the wave pattern.  (Appx966-967 at 307:14-308:20.)  This changes the overall appearance and has a calming effect that is less dizzying than the patented design.  (Appx967-968 at 308:21-309:2; Appx1024 at 365:4-15 (patented design is "hard to look at").)  Indeed, even Columbia's inventor Mr. Snyder admitted that logos "change the way it looks."  (Appx849 at 190:18-21.)

In short, Columbia invited the district court to make the same mistake it made on the previous summary judgment.  The district court properly refused.

### 2. The District Court Properly Rejected Columbia's Proposed Edit to the District Court's Own Instruction

The district court also acted within its discretion to deny Columbia's requested amendment to the district court's own proposed instruction on the eve of deliberation.  (*See* Appx1481 (Columbia proposing "You do not need, however, to find that any purchasers were actually deceived, nor do you need to find any actual confusion or likelihood of confusion amongst consumers in the marketplace.").)

First, the wording of the jury instructions was again within the trial judge's discretion, and he adequately informed the jury that actual confusion was not required.  *See Peralta,* 744 F.3d at 1082 ("We review a district court's formulation of civil jury instructions for abuse of discretion").  That is, the district court

instructed the jury "You do not need . . . to find that any purchasers were actually deceived or confused by the appearance of the accused products."  (Appx1520.) Columbia complains because the district court said "actually deceived or confused" and did not mention "likelihood of confusion," but no testimony or other trial evidence turned on any distinction between actual or likely confusion.  In fact, the phrase "likelihood of confusion" had not been uttered to the jury before Columbia proposed this language after the close of evidence.  (*See* Appx1481; Appx1159-1160.)

Columbia also *agreed* the jury should be instructed that "[t]wo designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other."  (Appx1520 (district court's instruction); Appx377 (Columbia's proposed instruction) ("The test for infringement is whether in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same if the resemblance deceives the ordinary observer, causing him to purchase one supposing it to be the other.")  That is also what this Court held in *Columbia I*.  *Columbia I*, 942 F.3d at 1129 ("The 'ordinary observer' test is the sole test for determining whether a design patent has been infringed. . . . The test originates from the Supreme Court's *Gorham* decision, which provides that 'if, in

60

the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.'") What the district court added about actual confusion or deception *not* being required was more than sufficient to put this instruction in context, and well within the trial judge's discretion. The district court properly gave the *Gorham* instruction, and a further instruction on "likelihood of confusion" was unnecessary on this record.

Moreover, contrary to Columbia's argument, the *Gorham* test does reference consumer confusion. The Supreme Court was expressly concerned about whether "persons in the trade would be in danger of being deceived." *Gorham*, 81 U.S. at 531. The *Unette* case that Columbia emphasizes does not change this law. *See Unette Corp. v. Unit Pack Co. Inc.*, 785 F.2d 1026 (Fed. Cir. 1986). In *Unette*, this Court *affirmed* a finding of noninfringement because the district court applied the *Gorham* test. *Id.* at 1029. The Court so held even though the district court cited "point of novelty" and "likelihood of confusion" tests—these were held harmless errors given the court's reliance on *Gorham*. *Id.* at 1028-29.

Second, Columbia again failed to preserve an appeal because it stopped short of telling the trial judge that his proposed language was *wrong*. It merely asked the judge to exercise his discretion in Columbia's favor. (*See* Appx1481

("COLUMBIA'S PROPOSED AMENDMENTS"); Appx1159-1160 at 500:17-501:25 (Columbia counsel stating "The Court's current instruction *does address that*, but we think it *could go a little further* in view of the case law . . . So we *suggest a slight modification* to the Court's instruction on this point.") (emphasis added).) Under Ninth Circuit law, Columbia's "suggestion" did not preserve an appeal. *United States v. Parsons Corp.*, 1 F.3d at 945 (stating that "it's not enough for an attorney to make a suggestion that the Court turns down").

Finally, Columbia's proposed instruction would have been misleading in the context of a trial in which Columbia had repeatedly attempted to tell the jury that Seirus's logos were merely "source identification." (*E.g.*, Appx794-798 at 135:24-136:6, 137:20-25, 138:5-7, 139:12-17 (Columbia inventor Snyder); Appx1214 at 555:7-8 (Columbia closing stating "Again, the HeatWave pattern serves one purpose. It's just to identify the source.").) By contrast, Seirus was careful to emphasize to the jury that infringement depended upon its overall design, including its logo, but that mere source identifiers were *not* relevant. (Appx1225-1226 at 566:13-567:15; Appx1247 at 588:1-9.)

The district court thus properly exercised its discretion in wording the jury instructions, and was consistent with this Court's decision in *Columbia I*.

**D. Any Error in the Jury Instructions or Exclusion of Argument Was Harmless**

As explained above, the district court's jury instructions were within its discretion and consistent with *Columbia I*, as was its exclusion of Columbia's attempt to distinguish prior art on functional grounds. In addition, to the extent this Court has doubt, it should still affirm the verdict because any error regarding prior art or logo was harmless.

In the Ninth Circuit, "prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered. Harmless error review for a civil jury trial ... shifts [the burden] to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014); *see also Columbia I*, 942 F.3d at 1128 (finding other instruction errors alleged by Columbia harmless).

Here, the district court made clear that the main issue before the jury was comparison of the patented and accused designs. The district court took care to emphasize that prior art was ancillary, and also that no one design feature (including the logo) was dispositive. (*E.g.*, Appx1521 ("[w]hile the evaluation of the prior art may be helpful, please keep in mind that the sole test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same"); Appx1519 ("The scope of the claim encompasses the design's visual

63

appearance as a whole. It does not cover a general design concept and is not limited to isolated features of the drawings.").)

Most importantly, the jury received overwhelming and unrebutted evidence that Seirus's accused design is substantially different from Columbia's patented design. For example, as compared to the patented design, the Seirus design breaks the wave pattern with ornamental, offset logo boxes ("Seirus rain"). (Appx966-967 at 307:14-308:20.) This changes the overall appearance and has a calming effect that is less dizzying than the patented design. (Appx967-968 at 308:21-309:2; Appx1024 at 365:4-15 (patented design is "hard to look at"); Appx849 at 190:18-21 (Columbia inventor Snyder admitting logos "change the way it looks").) Seirus also uses thicker light lines, which creates a brighter design. (Appx844 at 185:19-23 (inventor Snyder admitting patented design is 30-40% light); Appx960-961 at 301:16-302:1 (Seirus designer Sean Carey describing Seirus' "bright" design); Appx1018 at 359:14-25, Appx1023-1024 at 364:11-365:24 (Seirus CEO Michael Carey describing "dramatic differences").) In addition, unlike the patent, Seirus varies the thickness of its waves, which creates the visual impression of horizontal channels (relative to the waves) that, with the repeating logos, dominate the overall visual effect and subordinate the waves. (Appx960 at 301:16-24; Appx1024 at 365:16-24.) Seirus's waves are also oriented vertically relative to its logo, whereas

as the patented design has horizontal waves. (Appx1246 at 587:8-20.) These differences can again be seen below:



FIG. 1

(Appx1704; Appx3992; *see also* Appx3994.)

Seirus also introduced evidence that its design is substantially different from the patented design in the third dimension. This issue alone is dispositive, as the testimony on this point was unrebutted. As discussed above, the patented design (as detailed in Figures 2 and 3) is three-dimensional and consists of two layers (dark and light) of approximately equal thickness. (Appx1704; Appx842 at 183:9-15 (admission of inventor Snyder); Appx844 at 185:15 (same).) By contrast, Seirus' silver foil layer is much thinner than the underlying dark layer, like "paint" on plywood. (Appx1030-1033 at 371:16-374:4 ("radically different").)

Given the general verdict, this Court must assume the jury agreed with Seirus on these differences. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,

711 F.3d 1348, 1377 (Fed. Cir. 2013) ("Where, as here, the jury returns a general verdict, we must 'presume[ ] the existence of fact findings implied from the jury's having reached that verdict.'").

Finally, Columbia also does not argue that any of the jury instructions were legally wrong, just that they were incomplete in its view. However, Columbia's requested amendments—concerning a "person of ordinary skill" and "likelihood of confusion"—would not have affected a reasonable jury because no witness testified about either "ordinary skill" or "likelihood of confusion." These instructions would have meant nothing to a reasonable jury.

The Court should therefore affirm the jury's noninfringement verdict.

## III. (*CONDITIONAL CROSS-APPEAL*) THE HEATWAVE FABRIC, NOT SEIRUS'S END-PRODUCTS, IS THE RELEVANT "ARTICLE OF MANUFACTURE" AS A MATTER OF LAW

This cross-appeal is moot if the Court affirms the jury's noninfringement verdict. However, should that verdict be disturbed, Seirus hereby preserves its damages appeal.

This Court should hold Seirus's HeatWave fabric is the relevant "article of manufacture" for calculating § 289 damages. At the infringement trial, Columbia even argued its patent covers fabric rather than clothing (albeit it improperly added a functional limitation to the fabric). The parties also previously agreed the Solicitor General's four-factor test for determining the relevant article is the proper legal

inquiry. As discussed below, each factor suggests the article is the HeatWave fabric. Moreover, the fabric is like other components that prior courts have determined are the relevant articles. *See, e.g.*, *Grand Rapids Refrigerator Co. v. Young*, 268 F. 966, 974 (6th Cir. 1920) (relevant article was a refrigerator latch, not the entire refrigerator); *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 903–04 (2d Cir. 1915), *subsequent appeal* 234 F. 79, 81–82 (2d Cir. 1916) (relevant article was a piano case, not the entire piano). This Court should streamline further proceedings by determining the article is the fabric.

## A.     The Patent Shows the Relevant Article is the Fabric

The Solicitor proposes first examining "the scope of the design claimed in the plaintiff's patent," because "the patent identifies the article of manufacture that the patentee views as the article to which the design is applied." *See* 2016 WL 3194218, at \*27-\*28. That is consistent with the applicable regulations, which require that the patent's title and claim specify the article of manufacture. *See* 37 C.F.R. § 1.153(a). The patent here establishes the article is the fabric (material), not any end-product. The title is "Heat Reflective Material," and the claim covers "[t]he ornamental design of a heat reflective material." (Appx4.) The figures confirm that the material with the design is the relevant article. Figures 5 and 8, for example, separate most of the end-product from the heat-reflective material with broken lines:



FIG. 5

FIG. 8

(Appx6.) The "broken lines depict environmental subject matter only and form no part of the claimed design," (Appx6; Appx2222), underscoring that only the material is the article. Even the inventor admitted the patent claims a design applied to a fabric, not the end-product. (Appx2220-2221 (testifying patent covers the material to which the design is applied, a "foil").)

Given the patent's own designation of the relevant article, Columbia cannot recover damages on an end-product well beyond what it claimed. *Bush and Lane Piano Co.*, 222 F. at 904 (reversing damages award that treated an entire piano as the relevant article, because "[w]hat Lane invented was a piano case, not a piano" and "[h]e received a patent for a 'piano case' and not for a piano").

## B. The Accused Design's Relative Lack of Prominence in the End-Products Shows the Article is the Fabric

The Solicitor's second factor—"the relative prominence of the design within the product as a whole"—also shows the relevant article is the fabric. *See* 2016 WL 3194218, at *28. The Solicitor explains that "[i]f the design is a minor component of the product, like a latch on a refrigerator, or if the product has many other

components unaffected by the design, that fact suggests that the 'article' should be the component embodying the design." *Id*.

That describes the accused design here to a tee. Seirus's products have many other components other than the HeatWave fabric. For example, Seirus's various gloves include buckles, straps, pockets, zippers, different colors, leather palms, different stitching, different types of waterproofing technologies, different insulating materials, and even a feature that lets you operate your smartphone without taking off the glove. (Appx2424; Appx2427; Appx2606-2610.) Moreover, sales of all Seirus's products are driven by factors wholly unrelated to the accused design. The products are marketed based on their ability to keep customers warm, dry, and comfortable, not the accused design. (Appx3721; Appx3731; Appx3735-3737; Appx3763; Appx3835; Appx3836-3967; Appx1995-1996; Appx2386; Appx2427.) Customers actually bought more units of a glove without the HeatWave fabric than an otherwise identical glove that included the HeatWave fabric. (Appx2420-2423; Appx287-2872; Appx3561-3564.) Even Columbia's witnesses admitted that customers buy the products for reasons other than the accused design, including their color, sizing, fit, quality, buckles, pockets, straps, and liners, along with whether they are waterproof, the quality of their insulation, and the Seirus brand. (Appx2045-2046; Appx2142-2144.) Indeed, the accused design is not visible on

69

most accused products unless one digs in to look at the interior fabric. (*See, e.g.,* Appx3555-3556; Appx2210.)

The relevant article is thus only the fabric with the accused design. Columbia did not invent and has not patented the many other components of Seirus's products. It should not be permitted to collect § 289 damages on features unrelated to the accused design. *Bush and Lane Piano Co.*, 222 F. at 903–04 ("To attribute the sale of 958 Imperial pianos solely to the design of the case which inclosed them seems unwarranted."). Instead, Columbia's damages should be tied to the article that actually bears the accused design—the HeatWave fabric.

## C. The Patented Wave Design Is Conceptually Distinct from the Glove

The Solicitor's third factor—"whether the design is conceptually distinct from the product as a whole"—also dictates the HeatWave fabric is the article of manufacture. "If the product contains other components that embody conceptually distinct innovations, it may be appropriate to conclude that a component is the relevant article." *See* 2016 WL 3194218, at \*28-\*29.

That, once again, describes this case. Seirus's products have dozens of other components that include distinct innovations to keep customers warm and dry. (Appx2598-2599; Appx2604-2608.) For example, Seirus's outer shell gloves include insulation, a waterproof membrane, inner liner soft shell fabric, back panels, a waterproof zipper, a cinch, a bungee cord, a buckle, and a palm portion.

70

(Appx2604-2608; Appx3565-3586; Appx3970.) These components are unrelated to the HeatWave fabric with the accused design. Columbia should not be permitted to recover damages on these unpatented components. *Bush and Lane Piano Co.*, 222 F. at 904 ("When the patent owner is awarded the profits due to his design he receives all he is entitled to.").

### D. The HeatWave Fabric is the Relevant Article Because It Is Manufactured and Sold Separately

The Solicitor's final factor—"the physical relationship between the [accused] design and the rest of the product"—also dictates that the relevant article is the HeatWave fabric. The relevant article is likely the component, not the entire product, when the design is on a component that (1) "can physically separate from the product as a whole," (2) "is manufactured separately from the rest of the product," or (3) "can be sold separately." *See* 2016 WL 3194218, at *29.

The HeatWave fabric meets each of those descriptions. It can physically separate from Seirus's outer shell gloves. (Appx2612; Appx2679.) It is separately manufactured by a third-party, Ventex. (Appx2601; Appx3133.) And it is sold separately—Ventex sells to many others, including Harley Davidson. (Appx2601-2603; Appx3133.) This confirms what the other factors already demonstrate: the HeatWave fabric is the article as a matter of law.

**E.**      **At a Minimum, the Court Should Grant a New Trial on Damages**

If the Court does not determine the relevant article of manufacture as a matter of law, then it should order a new trial on the issue, because the jury was incorrectly instructed on the burden of proof, and that error prejudiced Seirus. The plaintiff traditionally has the burden of proof on damages. Nothing justifies shifting that burden—the statute does not permit burden-shifting, nor do policy considerations. In addition, damages are intertwined with liability—typically requiring a new trial on damages if there is a new trial on liability—and here Columbia's arguments during the infringement trial were inconsistent with its arguments during the damages trial. The Court should thus vacate the damages award and remand for a new trial if the noninfringement verdict is not affirmed.

**1.**      **The Plaintiff Should Bear the Burden of Persuasion on the Relevant "Article of Manufacture" Under § 289**

The jury should have been instructed that Columbia, not Seirus, bore the burden of proving the relevant article of manufacture for determining damages under § 289. The burden of proving all elements of its case traditionally falls on the plaintiff. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005) ("we have usually assumed without comment that plaintiffs bear the burden of persuasion regarding the essential aspects of their claims."). "Absent some reason to believe that Congress intended otherwise, therefore, we will conclude the burden of persuasion lies where it usually falls, upon the party seeking relief." *Id*. at 57–58.

Following that rule, "[t]he burden of proving damages falls on the patentee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Identifying the relevant article of manufacture is part of the plaintiff's damages case, so the plaintiff bears the burden of proof on it. *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 2017 WL 4776443, at *13 (N.D. Cal. Oct. 22, 2017) ("[T]he plaintiff bears the burden of persuasion on identifying the relevant article of manufacture").

Section 289's text is consistent with imposing the burden of proof (persuasion) on the patentee to show the relevant article of manufacture. The statute sets out the boundaries of liability as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) **sells or** exposes **for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable** to the owner to the extent of his total profit. . . .

35 U.S.C. § 289 (emphasis added). This language imposes the burden of proving infringement on the plaintiff. *See Egyptian* Goddess, 543 F.3d at 678. And it does not shift the burden of proof on any damages issue to the defendant. Indeed, the legislative history suggests there was no such intent and that the plaintiff had the burden of proving its damages. *See, e.g.,* H.R. Rep. No. 49-1966, at 3 (1886) ("the patentee recovers the profit actually made on the infringing article *if he can prove that profit*") (emphasis added); *Apple*, 2017 WL 4776443, at *13 ("[T]he legislative

history of the predecessor to § 289 shows that Congress intended that the plaintiff bear the burden of persuasion.").

Section 289's text stands in stark contrast to other IP-related statutes, where Congress explicitly shifted the burden of proof on some element of damages. For example, the trademark statute allows an award of the defendant's profits and adds that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Likewise, the copyright statute permits an award of the defendant's profits and again says that, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Section 289, by contrast, contains no such language. The upshot is that the plaintiff bears the burden of proving all aspects of § 289 damages, including the identity of the relevant article of manufacture. When Congress wanted to shift the burden of proof it does so expressly. *See, e.g.*, *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define remedies under RCRA does not provide that remedy.").

Placing the burden of proof for the article of manufacture on the plaintiff is consistent with how this Court has treated other sub-issues relevant to patent

74

damages. For example, a plaintiff seeking § 284 damages on a multi-component product must either apportion the value of the patented component or prove the entire market value rule applies. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 894 F.3d 1258, 1272 (Fed. Cir. 2018). "The burden of proof in this respect is on the patent holder." *Id*.; *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("[T]he patentee must show in what particulars his improvement has added to the usefulness of the machine or contrivance."). This rule ensures the plaintiff's damages do "not overreach and encompass components not covered by the patent." *Power Integrations*, 894 F.3d at 1271. Determining the appropriate article of manufacture under § 289 serves a similar purpose—it ensures the patentee receives compensation only for the article to which the design is actually applied, not also for unrelated, unpatented components. It is thus appropriate that the patentee should bear the burden to prove the relevant article, just as it bears the burden on the entire market value rule and apportionment.

Another example is marking under § 287, where, once again, the plaintiff bears the burden of proof. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368–69 (Fed. Cir. 2017). This Court recently reiterated that "the patentee bears the burden of pleading and proving he complied with § 287" and ordered a new trial where the jury instructions erroneously shifted that burden to the defendant. *Id*. The Court did impose an initial "burden of production" on the

defendant to identify unmarked goods that potentially practice the patent but stressed this was a "low bar" and concluded that "the patentee bears the burden to prove the products identified do not practice the patented invention." *Id*. Applying that approach here shows the jury instructions were erroneous. Seirus would, at most, have the burden of production to identify an "article of manufacture" less than its end-products, which it did by identifying the HeatWave fabric. (Appx2601; Appx2930-2932.) At that point, Columbia should have had the burden of proving the appropriate article of manufacture. *Apple*, 2017 WL 4776443, at *14. Yet the jury instruction put the burden of proof (persuasion) on Seirus. That was legal error requiring a new trial, as in *Arctic Cat*.

### 2. Neither Policy Nor Any Other Consideration Justifies Shifting the Burden of Persuasion to the Defendant

The district court gave little explanation for why it shifted the burden of persuasion, instead just adopting what it perceived to be the Solicitor General's suggestion to that effect in *Apple*. (Appx3495-97.) The Solicitor's brief is unclear on whether it contemplates a shifting of the burden of persuasion or merely the burden of production. *See* 2016 WL 3194218, at *30-*31. But, either way, the suggestion is based on policy—the Solicitor thought the defendant has "superior knowledge" on the issue. *Id*. at *31. This is insufficient. Policy considerations cannot trump the statutory text and default rule that the plaintiff must prove its claim. Moreover, the statute already provides for a situation in which the plaintiff has

76

difficulty providing its claim by setting a minimum recovery. *See* 35 U.S.C. § 289; *See* H.R. Rep. No. 49-1966, at 3 ("[T]o meet the case where the exact profit in dollars and cents cannot be proved … the bill prescribes a minimum recovery of $250."); S. Rep. No. 49-206, at 2 (1886) (similar). Courts should not use burden-shifting to address an issue for which Congress already provided the remedy.

Moreover, the Solicitor is wrong to think the defendant has "superior knowledge." There is "no reason why ordinary discovery would not be sufficient to allow a design patent plaintiff to carry its burden of persuasion on identifying the relevant article of manufacture." *Apple*, 2017 WL 4776443, at *14. The plaintiff can access physical samples of the accused products, documents showing how they are manufactured, and testimony about the other technologies incorporated into them. Plaintiffs must already use this type of information to meet their burden on the entire market value rule. They could do it equally for the article of manufacture.

### 3. The Erroneous Jury Instructions Prejudiced Seirus

The instruction erroneously shifting the burden of proof on the "article of manufacture" issue prejudiced Seirus, requiring a new trial. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). By shifting the burden of proof, the instruction necessarily skewed the jury's deliberations—its default position was to give Columbia all the damages it sought, unless Seirus could prove a lower number. But the inquiry should have been reversed: the burden should have been on Columbia

to show it was entitled to damages for something more than just the fabric to which the design was actually applied. This Court has set aside other verdicts where the jury was wrongly instructed on the burden for damages. *Arctic Cat*, 876 F.3d at 1368-69. The same result is appropriate here.

### 4. A New Trial on Infringement Would Also Justify a New Trial on Damages.

Under *Gasoline Products Co., Inc., v. Champlin Refining Co.*, 283 U.S. 494 (1931), a new trial on liability would typically require a new trial on damages because the two uses are usually "interwoven." *Id.* at 500. Here, damages and liability are interwoven because both depend on "article of manufacture." Columbia's position now that the article of manufacture is "heat-reflective material" directly contradicts its argument at the damages trial that the article was Seirus's clothing. (*See* Case Nos. 18-1329, -1331, -1728, Dkt. No. 37 at 22 ("Columbia produced more than substantial evidence that the relevant articles of manufacture were Seirus's products as sold to market, and not the fabric within them")).) Columbia inflated damages to over $3 million based on this argument.

This inconsistency underscores the need for a new trial on damages should the Court order a new trial on infringement. However, Seirus makes this request only if the Court disturbs the infringement verdict, which it should not do.

## CONCLUSION

For the foregoing reasons, this Court should affirm the jury's noninfringement verdict.  However, should that verdict be disturbed, the Court should also vacate the previous jury's damages verdict.

Dated:  April 20, 2022

Respectfully submitted,

 /s/ *John W. Thornburgh*
Christopher S. Marchese
Seth M. Sproul
John W. Thornburgh
FISH & RICHARDSON, P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
(858)-678-5070

*Counsel for* Defendant-Cross-Appellant

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 15,005 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:  April 20, 2022                    */s/ John W. Thornburgh*
                                          John W. Thornburgh