No. 21-2299, - 2338

Iɴ Tʜᴇ

# United States Court of Appeals
## for the Federal Circuit

COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,

Plaintiff-Appellant,

v.

SEIRUS INNOVATIVE ACCESSORIES, INC.

Defendant-Cross-Appellant.

Appeal from the United States District Court for the Southern District of California, No. 3:17-cv-01781-HZ, Judge Marco A. Hernandez

## DEFENDANT-CROSS-APPELLANT SEIRUS INNOVATIVE ACCESSORIES, INC.'S REPLY BRIEF

Christopher S. Marchese
Seth M. Sproul
John W. Thornburgh
FISH & RICHARDSON, P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: 858-678-5070

June 17, 2022                    Attorneys for Defendant-Cross-Appellant

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Defendant-Cross-Appellant Seirus Innovative Accessories, Inc.

("Seirus") certifies the following:

1.    Provide the full names of all entities represented by undersigned counsel in this case.

    **Seirus Innovative Accessories, Inc.**

2.    Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

    **None**

3.    Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    **None**

4.    List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    **Fish & Richardson P.C.: Oliver J. Richards, Michael A. Amon, Garrett K. Sakimae, Craig Countryman**

    **Markowitz Herbold PC: Harry Wilson, Renee Rothauge**

    **Troutman Sanders LLP: Paul McGowan, Lisa D. Hardie, Matthew D. Murphy, Alison A. Grounds, Eric Jaegers, Anup M. Shah**

5.    Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

    **None**

6.    Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**None**

June 17, 2022                    */s/ John W. Thornburgh*
                                        John W. Thornburgh

# **TABLE OF CONTENTS**

**Page(s)**

CERTIFICATE OF INTEREST ................................................................. I

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................. 1

I.    THE HEATWAVE FABRIC IS THE APPROPRIATE
      ARTICLE OF MANUFACTURE. ...................................................... 1

    A.    The Accused Products All Have Multiple Components. ...................... 2

    B.    The Solicitor General's Test Shows the Fabric is the Article. .............. 2

    C.    Columbia Cannot Rely on the Entire Market Value Rule. .................. 6

II.   AT MINIMUM, A NEW JURY TRIAL IS REQUIRED ON
      DAMAGES. ......................................................................... 8

    A.    The District Court Misallocated the Burden of Persuasion
      Regarding the Article of Manufacture. .................................... 8

    B.    The Error on the Burden of Persuasion Prejudiced Seirus ................ 13

    C.    A New Trial on Infringement Would Also Justify a New Trial on
      Damages. .................................................................... 16

    D.    There is a Right to Jury Trial on § 289 Damages. ......................... 17

CONCLUSION ............................................................................. 21

CERTIFICATE OF COMPLIANCE ....................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AI Realty Mktg. of New York, Inc.*,
    293 B.R. 586 (Bankr. S.D.N.Y. 2003)....................................................9

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
    2017 WL 4776443 (N.D. Cal. Oct. 22, 2017) ....................................8

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) ....................................................13, 14

*Bergstrom v. Sears, Roebuck and Co.*,
    496 F. Supp. 476 (D. Minn. 1980).......................................................9

*Burdell v. Denig*,
    92 U.S. 716 (1875)...............................................................................19

*Bush & Lane Piano Co. v. Becker Bros.*,
    222 F. 902 (2d Cir. 1915) ...................................................................15

*Chauffeurs v. Terry*,
    494 U.S. 558 (1990)......................................................................17, 18

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962).............................................................................20

*Gordon v. New York City Bd. of Educ.*,
    232 F.3d 111 (2d Cir. 2000) ..............................................................13

*Henry Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak Corp.*,
    270 F.2d 635 (5th Cir. 1959) ...............................................................9

*Kennedy v. Lakso Co., Inc.*,
    414 F.2d 1249 (3d Cir. 1969) ............................................................19

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988) ....................................................3, 4, 7

*Markman v. Westview Insts., Inc.*,
    517 U.S. 370 (1996)............................................................................17

*Mowry v. Whitney*,
81 U.S. 620 (1871) ...................................................................................12, 19

*Nordock, Inc. v. Systems, Inc.*,
2017 WL 5633114 (E.D. Wisc. Nov. 21, 2017) .............................................1, 8

*Packet Co. v. Sickles*,
86 U.S. 611 (1874) ...........................................................................................19

*Petrella v. MGM*,
134 S. Ct. 1962 (2014) .................................................................................18, 19

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018) ...........................................................................7

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*,
970 F.2d 552 (9th Cir. 1992) ............................................................................19

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
719 F.3d 1305 (Fed. Cir. 2013) (*en banc*) .......................................................20

*Ross v. Plastic Playthings, Inc.*,
138 F. Supp. 887 (S.D.N.Y. 1956) ..............................................................18, 20

*S.E.C. v. Bilzerian*,
29 F.3d 689 (D.C. Cir. 1994) ............................................................................11

*S.E.C. v. Halek*,
537 F. App'x 576 (5th Cir. 2013) .....................................................................11

*S.E.C. v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) ..........................................................................11

*Samsung Elecs. Co., Ltd. v. Apple Inc.*,
137 S. Ct. 429 (2016) ........................................................................1, 6, 10, 15

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
137 S. Ct. 954 (2017) ........................................................................................19

*Sec. & Exch. Comm'n v. Whittemore*,
744 F. Supp. 2d 1 (D.D.C. 2010) .....................................................................11

v

*SEC v. First City Financial Corp.*,
  890 F.2d 1215 (D.C. Cir. 1989) .......................................................10, 11

*Sid & Marty Krofft Television v. McDonald's Corp.*,
  562 F. 2d 1157 (9th Cir. 1977) ...............................................................20

*Stevison by Collins v. Enid Health Sys., Inc.*,
  920 F.2d 710 (10th Cir. 1990) ................................................................14

*Swofford v. B&W, Inc.*,
  336 F.2d 406 (5th Cir. 1964) ...........................................................19, 20

*Tilghman v. Proctor*,
  125 U.S. 136 (1888)...................................................................................8

**Statutes**

35 U.S.C. § 74 (1946) ..................................................................................18

1952 Patent Act ....................................................................................11, 12

16 Stat. 198, 206, § 55 (1870).......................................................................6

24 Stat. 387, § 1 (1887)...............................................................................18

**Other Authorities**

Seventh Amendment ......................................................................17, 18, 19

9C Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure, § 2312 (3d ed. 2008).........................................................20

H.R. Rep. No. 49-1966 (1886)......................................................................9

Jason J. DuMont, *The Origins of American Design Patent Protection*,
  88 Ind. L.J. 837, 854 (2015) ................................................................17

Restatement (Third) of Restitution and Unjust Enrichment § 4, Cmt. b
  (2011)...................................................................................................18

## INTRODUCTION

This Court should affirm the jury's verdict of noninfringement and end the case.  But if it does not, the damages award cannot stand.  That award was tainted by an erroneous instruction that shifted the burden of persuasion for determining the article of manufacture to the defendant.  A plaintiff bears the burden of persuasion on all aspects of its case, including the substantive aspects of a profits claim.  Seirus's opening brief demonstrated that the statutory text, legislative history, and history all put the burden on the plaintiff.  The only other courts to address this issue (*Apple* and *Nordock*) agreed.  Columbia does not cite any contrary case, and its discussion of the burdens for disgorgement law would, at most, support shifting the burden on the mathematical calculation of the defendant's expenses, not the article of manufacture.  This Court thus should, at the very least, order a new jury trial on damages, and could also constrain matters further by entering JMOL that the relevant article is the HeatWave fabric.

## ARGUMENT

## I.    THE HEATWAVE FABRIC IS THE APPROPRIATE ARTICLE OF MANUFACTURE.

Columbia's damages demand in any new trial on infringement should be limited by the fact that the relevant "article of manufacture" under § 289 is the HeatWave fabric.  The accused products all have multiple components, and, under the Solicitor General's test, the fabric is the relevant article.  Columbia's contrary

arguments are all legally insufficient, including its alternative argument on the entire market value rule.

**A.    The Accused Products All Have Multiple Components.**

Columbia is wrong to suggest that any accused products have only a single component. A "component" is "a constituent part," https://bit.ly/2PkeAnU, or a "part or element of a larger whole." *See* https://bit.ly/2OTA7EA. The accused gloves have multiple parts—Seirus's opening brief (at 32-33, 70-71) lists over a dozen, (Appx2604-2613; Appx5929; Appx5943-5946; Appx3565-3586), and even Columbia acknowledges (at 36) the gloves have multiple "pieces." It does not matter whether the fabric performs the "function of the glove" because the glove still has other, unrelated parts. Nor does it matter that the fabric "cannot be separated" without "destroying the glove." The same is true of microprocessors, which Columbia acknowledges (at 54) are separate components.

The accused hats, socks, and liners also have multiple parts. They include not only fabric but also separate stitching that holds them together. Appx6782-6783; Appx6611-6613. Columbia acknowledges (at 54) they include stitching. Stitching is a part or element of a larger whole, making these products multi-component.

**B.    The Solicitor General's Test Shows the Fabric is the Article.**

**Factor 1:**  The scope of the claimed design is determinative here and shows the article is the fabric. The patent's title and claim refer to a "material," not an end-

product.  Appx1728.  The figures have dotted lines that exclude the parts of the end-product other than the material from the claim (Appx1729-1731), confirming the article is the material (fabric), not the whole product.  The inventor's testimony underscores the article is something less than the end-product—he said the claimed article was the "heat-reflective material" *i.e.,* the "silver" foil attached to the fabric, not even the entire fabric.  Appx2219-2221.  Columbia's reference (at 59) to the fabric's function is irrelevant to claim scope, which excludes functional features.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988) ("Design patents do not and cannot include claims to the structural or functional aspects of the article.").  Columbia's insistence that, for damages, the patent covers the end-product also contradicts its infringement argument that the Court can consider only the material.

**Factor 2:**  The accused design is not prominent in the accused products.  The accused gloves have many other components with different functions.  Appx2424; Appx2427; Appx2606-2610.  Columbia's witnesses confirmed consumers buy the products for many reasons other than the accused design (Appx2045-2046; Appx2142-2144), and, in most products, it is not visible.  Appx3552-3556; Appx2210.  Customers bought over 240 times more units of a product without the accused design than the comparable one with it.  Appx2420-2423; Appx2870-2872.

Columbia's arguments (at 57-59) are all legally insufficient. Columbia cannot rely on the fabric's functionality because a design patent cannot cover function. *Lee*, 838 F.2d at 1188. If anything, the importance of warmth—which Columbia calls the "technological benefit" and the "key technological feature" (at 35, 63 n.11)—shows the design's relative *unimportance*. The glove's functionality is "unaffected by the design," which "suggests that the 'article' should be the component embodying the design." *See* 2016 WL 3194218, at *28. It is appropriate to limit the article to the component with the design where non-design features drive demand. Columbia would still get the total profit on the relevant article, but could not overreach to get profit on components unrelated to the design.

Columbia's evidence on the aesthetics was insufficient. Its cited testimony on why Columbia uses silver (Appx5927) is irrelevant to the importance of the design in Seirus's products. Its inventor's opinions about the design are, at most, unsupported speculation about customer behavior (Appx4402-4403) and conflict with the objective evidence that a glove without the accused design was 240 times more popular than a comparable one with it. Appx2870-2872. Columbia's reliance on hangtags is also misplaced—they are not accused and do not infringe. Regardless, the hangtags focus on the fabric's function, and their direction to "look inside" underscores the fabric with the design is separate from the rest of the glove, making the fabric the relevant article.

**Factor 3:**    Seirus's products contain many other components with conceptually distinct innovations that serve different functions.    Appx2604-2613; Appx2424, Appx2427, Appx3970; Appx3565-3586.  The water-proof components, like Gore-Tex, keeps hands dry.  Zippers, cinches, bungee cords, and buckles ensure the glove fits comfortably.  Clips on the gloves keep the pair together when not in use.  Some gloves include a feature on the fingers that allows the user to operate his smartphone.    Even other components that provide warmth—like additional insulative layers—are separate from the fabric.  Columbia identifies no reason to leverage a design patent on a "heat reflective material" into a damages claim on unrelated components.  That the fabric is "integrated" with the other components and cannot be separated does not change the fact they are different innovations with different functions.

**Factor 4:**  The fabric can physically separate from the rest of the accused products and is manufactured and sold separately.  Appx2601-2603, Appx2612, Appx2679, Appx3133.  Columbia does not dispute these facts.  Its discussion (at 59) about "replac[ing]" the lining is not part of the Solicitor's test.  The fabric is the article, and Columbia should not get a windfall on components unrelated to its design.

### C.    Columbia Cannot Rely on the Entire Market Value Rule.

The Court should reject Columbia's suggestion (at 60-66) that it could affirm the damages award under the entire market value rule even if the relevant article were the fabric.  The jury did not find the entire market value rule applies to the design patent.  Columbia never articulated this theory to the jury; the court refused to give Columbia's instruction on it (*cf.* Appx1761 (alternative 3); Appx3341-3342), and the final instructions did not reference the rule as a basis for § 289 damages, much less explain the prerequisites for applying it to the accused design.  Appx3343.

What's more, the entire market value rule cannot be used under § 289.  A § 289 damages analysis involves only "two steps"—(1) identifying the relevant "article of manufacture," and (2) "calculat[ing] the infringer's total profit made on *that* article of manufacture."  *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 434 (2016).  Neither the statute nor *Samsung* let the patentee recover the defendant's profit on something more than the relevant article of manufacture.  Columbia does not cite any case applying the entire market value to § 289, and its citations (at 61-62) to old utility patent cases are inapplicable, because the applicable statute did not tie damages to any particular "article of manufacture."  *See* 16 Stat. 198, 206, § 55 (1870).

But even if a patentee could theoretically invoke the entire market value rule for § 289 damages, the rule could not apply to these facts.  Columbia would have to

show that the patented *design* "drove demand," just as, in a utility patent case, it would have to show the "patented *technology* drove demand." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 978 (Fed. Cir. 2018). Where, as here, "the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product." *Id*. at 979. The patented feature must be "the sole driver of consumer demand" and "alone motivate[] consumers to buy the accused products." *Id*. at 980. The accused design does not meet those standards. Customers bought 240 times more units of a product without the accused design than a comparable product with it, (Appx2870-2872), and a plethora of other features impact demand. Appx2045-2046; Appx2142-2144.

It is no answer for Columbia to argue (at 61-66) that the fabric's technical benefits were important to customers. Design patents do not cover function, *Lee*, 838 F.2d at 1188, so Columbia cannot rely on it. If anything, Seirus's extensive marketing of the products' functionality underscores that the accused *design* does not drive demand. Regardless, Columbia's evidence is much weaker than in *Power Integrations*, where the entire market value rule did not apply to patented technology that was "essential" to many customers, was featured in marketing materials, and that (unlike here) caused products with it to outsell those without it. *Power Integrations*, 904 F.3d at 978–980. The fabric's design did not drive demand.

## II.    AT MINIMUM, A NEW JURY TRIAL IS REQUIRED ON DAMAGES.

### A.    The District Court Misallocated the Burden of Persuasion Regarding the Article of Manufacture.

Seirus's opening brief (at 72-77) showed the patentee bears the burden of persuasion on the relevant article of manufacture.  The plaintiff traditionally bears the burden of persuasion on all elements of its claim, including damages.  Determining the relevant article is an essential element of that claim.  Section 289's text and legislative history support putting the burden of persuasion on the plaintiff, especially when compared with the trademark and copyright statutes, which have explicit burden-shifting language that § 289 lacks.  Section 289 has similar wording to §§ 284 and 287, where the plaintiff has the burden of persuasion on substantive damages sub-issues (*e.g.*, marking and the entire market value rule), so the article of manufacture issue should be treated similarly.  The only other cases to analyze the issue put the burden of persuasion on the patentee.  *See Apple Inc. v. Samsung Elecs. Co. Ltd.*, 2017 WL 4776443, at *13 (N.D. Cal. Oct. 22, 2017); *Nordock, Inc. v. Systems, Inc.*, 2017 WL 5633114, at *3–4 (E.D. Wisc. Nov. 21, 2017).

Columbia ignores these points.  Instead, Columbia argues that § 289 is a disgorgement remedy, and that historical practice requires shifting the burden to the defendant.  Columbia is wrong—the plaintiff bore the burden of persuasion on a claim for the defendant's profits.  *See, e.g.*, *Tilghman v. Proctor*, 125 U.S. 136, 151 (1888) ("The plaintiff has the burden of proving the amount of profits that the

8

defendants have made by the use of his invention"). Congress applied this rule to design patents. *See* H.R. Rep. No. 49-1966, at 3 (1886) ("the patentee recovers the profit actually made on the infringing article *if he can prove that profit*, that is what the infringer realized *from the infringing articles* minus what they cost him"). Indeed, Congress provided for a minimum $250 recovery in § 289 to "meet[] the case when the exact profit in dollars and cents cannot be proved," S. Rep. No. 49-206 at 2 (1886), which would be unnecessary if the defendant bore the burden of persuasion.

Columbia does not cite any case holding the defendant has the burden of persuasion on the article of manufacture. Instead, the design patent cases it cites address the mathematical calculation of profits after the relevant article has been determined and suggest the defendant must prove deductible expenses. *See Henry Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959) (holding the defendant had to prove costs, such as "depreciation," "taxes," and "interest" from loans); *In re AI Realty Mktg. of New York, Inc.*, 293 B.R. 586, 618 (Bankr. S.D.N.Y. 2003) (putting burden on defendant to establish "the nature and amount of the costs that should be considered" and "their relationship to the infringing product"); *Bergstrom v. Sears, Roebuck and Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980) (same).

None of those cases involved a dispute over the article of manufacture, so they are not relevant. That the defendant might have a burden related to the mathematical calculation of the *amount* of profits after the relevant article has been determined says nothing about who has the burden on determining what the article is. *Samsung* separated the § 289 analysis into "two steps"—first "identify the 'article of manufacture,'" and then "calculate the infringer's total profit made on that article of manufacture." 137 S. Ct. at 434. Columbia's cases address the burden at step two, not step one.

Columbia's cited cases from other areas of law are even less relevant. Most involve intentional wrongdoing and none deal with the specific statutory language here. Even if considered, however, they again focus on shifting the burden on the mathematical calculation of profits. For example, *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989), dealt with disgorgement of profits illegally obtained through deliberate insider trading. It held the plaintiff "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment" and that, as part of that burden, it must "distinguish between legally and illegally obtained profits." *Id.* at 1231–32. The government met that burden by proving which trades were "tainted." *Id*. at 1232. Applying that rule here would require Columbia to prove the relevant article of manufacture upon which profits will be calculated. At that point, the burden shifted to the defendant

to show the amount of profits was not a "reasonable approximation," *id*., which here would be analogous to requiring Seirus to prove deductible expenses after the article had been identified.

The other securities cases similarly emphasize the plaintiff's burden of persuasion on the substantive damages claim and simply find it met where the defendant submits "no evidence" to rebut it. *See S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (holding the "SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment," at which point the defendant must come forward with evidence suggesting a lower amount); *S.E.C. v. Halek*, 537 F. App'x 576, 581 (5th Cir. 2013) (same); *S.E.C. v. Bilzerian*, 29 F.3d 689, 697 (D.C. Cir. 1994) (same); *Sec. & Exch. Comm'n v. Whittemore*, 744 F. Supp. 2d 1, 8 (D.D.C. 2010) (same). That is not this case.

Columbia's citations to the copyright and trademark statutes are also irrelevant, because their text differs markedly from § 289.  The copyright and trademark statutes have explicit burden-shifting language, while § 289 does not.  The copyright and trademark statutes were enacted before § 289—both had burden-shifting language in 1905, decades before the 1952 Patent Act.  So, if Congress had wanted to include burden shifting for design patents, it knew how.  It chose not to,

which, along with the legislative history of § 289's predecessor, confirms that Congress put the burden of persuasion on the plaintiff.

Columbia's reliance on the common law is also misplaced. Its cited source refers to copyright, which is irrelevant, and then proposes a "more modern" rule. Restatement Third of Restitution and Unjust Enrichment, § 51, cmt. i (2011). Whatever the merits of that proposal, it does not illuminate the text of § 289 or reflect historical practice. The proposed rule again relates only to the mathematical calculation of profits, not a substantive aspect of the damages claim (like "article of manufacture"). And the authors justify their proposed "evidentiary burdens" by invoking "the equitable disposition that resolves uncertainty in favor of the claimant against the *conscious* wrongdoer." *Id*. There was no conscious wrongdoing here— the jury found Seirus was not willful, as it did not know of the patent before this suit. Appx1723; Appx2506-2518.

Columbia's suggestion that the "profits" remedy in § 289 has a different purpose than other types of damages does not help its argument. The Supreme Court has long recognized that, "[t]hough called profits, they are really damages," *Mowry v. Whitney*, 81 U.S. 620, 653 (1871). Moreover, the purpose of burden-shifting in other contexts is (1) to address intentional wrongdoing and (2) require the defendant to untangle its own finances, which it is better situated to do. The first consideration does not apply—there was no willful infringement. The second does not apply

12

either:  the plaintiff is perfectly capable of proving the relevant article, and any issues about the burdens regarding calculating the profits on that article are a separate step in the analysis that is not at issue here.

The bottom line is that Columbia bears the burden on proving the appropriate article of manufacture.  Both the statutory text and legislative history forbid burden shifting—the text is similar to that in §§ 271 and 284, where the plaintiff bears the burden, and the legislative history requires the plaintiff to "prove that profit." Proving the article of manufacture is a substantive element of the § 289 claim, just like marking, an issue on which *Arctic Cat* reaffirmed the plaintiff bears the burden. The district court's jury instruction on the burden was thus erroneous.  *See Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1368-69 (Fed. Cir. 2017).

**B.    The Error on the Burden of Persuasion Prejudiced Seirus.**

The erroneous jury instruction is prejudicial and requires a new trial.  The parties' dispute over the article of manufacture was the key damages issue, and putting the burden on Seirus to prove the article was something less than the end-products almost certainly skewed the jury's deliberation.  *Arctic Cat*, 876 F.3d at 1368-69 (error on burden of persuasion for marking required new trial); *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("If an instruction improperly directs the jury on whether the plaintiff has satisfied her burden of proof,

it is not harmless error because it goes directly to the plaintiff's claim, and a new trial is warranted."); *Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d 710, 714 (10th Cir. 1990) ("Jury instructions outlining the appropriate burdens of proof are almost always crucial to the outcome of the trial"). With the burden wrong, it does not matter that the district court adopted other aspects of Seirus's proposed instructions.

None of Columbia's arguments establish the error was harmless either. Seirus identified the HeatWave fabric as the proper article of manufacture and adduced evidence under the Solicitor General's four factor test. Appx6769; Appx6778; Appx1950-1953; Appx2634; Appx2641-2642; Appx2647; Appx2925; Appx2930-2932; Appx2943; Appx3170; Appx3246-3247; Appx3302-3303. Seirus's expert explained how she calculated the total profits on the fabric. Appx2930-2942. Columbia understood Seirus was contending the fabric was the article. Appx1905; Appx3118-3119; Appx3230. That met any burden of production that Seirus may have. *Cf. Arctic Cat*, 876 F.3d at 1368 (defendant's burden to "articulate the products it believes are unmarked" is a "low bar").

Columbia's criticisms of Seirus's damages calculation are irrelevant. The issue is who had the burden of persuasion on the relevant article (*Samsung*'s step 1), not anything to do with the mathematical calculation once the article was established (*Samsung*'s step 2). Seirus met any burden of production it had on *Samsung*'s step

1 by identifying the relevant article and submitting evidence relevant to the Solicitor's test. Nevertheless, Seirus's expert also addressed *Samsung*'s step 2 and submitted both an alternative number—$500,817—and a detailed explanation of how she calculated it. Appx2930-2943. Columbia may disagree with her methodology, but those disagreements are for a properly-instructed jury.

Columbia's criticisms are also wrong on the merits. *Samsung* did not dictate any particular methodology for calculating the profits attributable to a component. It did not require including unrelated costs like labor as part of the fabric's value. Indeed, precedent suggests that comparing the component's cost to the overall product's cost is appropriate. *Bush & Lane Piano Co. v. Becker Bros.*, 222 F. 902, 904 (2d Cir. 1915) (no "serious difficulty in computing the profits on the [piano] case alone," because the defendant "purchases them from others at a cost of $38 for each case").

It also does not matter whether labor is a "component" of the products. All products included material components other than the fabric—the gloves had many other pieces, while the socks, hats, and liners, included at least the stitching. (*See* Seirus's opening brief at 32-33, 70-71.) No product was 100% fabric. (*Id*.) And although Columbia complains about the percentages that Seirus's expert attributed to the fabric in the socks, hats, and liners, Seirus still met any burden of production it had.

Finally, Columbia's discovery gripes are erroneous.  Seirus produced all financial information it had, and provided extensive deposition testimony from its CFO.  Appx6614-6642.  Columbia never moved to compel anything more.

**C.  A New Trial on Infringement Would Also Justify a New Trial on Damages.**

Seirus preserved the right to request a new trial on damages by its previous damages appeal, which this Court did not reach.  *See Columbia I*, 942 F.3d at 1132. Seirus also filed a new notice of appeal to renew that appeal as a conditional cross appeal here.

While Seirus did not request a new damages trial from the district court on remand after *Columbia I*, that was not necessary or appropriate because this Court did not rule on the pending damages issues and simply remanded for a jury trial on infringement.[1]

Finally, Columbia cannot refute the fact that damages and liability are intertwined in this case because they both relate to the relevant article.  Columbia's full position on the relevant article for infringement purposes—*fabric* that reflects heat—also became much clearer at the infringement trial, as detailed in the briefing on the main appeal.  *See* Appx413 at 6:4-7; Appx421-422 at 14:13-15:16; Appx673-

---

[1] Notably, Seirus did not "agree" with Columbia that damages and liability are distinct in this case.  It merely agreed that there was no need for a damages trial before this Court resolves the present appeal.  *See* Appx6650.

16

678 at 14:19-19:4; Appx1153 at 494:15-20; Appx1174 at 515:13-4; Appx3989. Columbia's positions at trial and on appeal directly contradict its position that the article of manufacture is clothing for purposes of damages, so if there is a new trial on infringement, there needs to be a new trial on damages too, so the jury can judge this inconsistency for itself.

### D.    There is a Right to Jury Trial on § 289 Damages.

Finally, Columbia is wrong to say there is no right to jury trial on § 289 damages. The Seventh Amendment protects the jury right in "suits at common law." The Court assesses whether a claim meets that description by analyzing "the nature of the issues involved and the remedy sought," where the latter is "more important." *Chauffeurs v. Terry*, 494 U.S. 558, 565 (1990). Both establish a jury right here, and the history of § 289's predecessors also shows there is a statutory jury right.

The first factor "compare[s] the statutory action to 18th-century actions brought in the courts of England." *Id*. Design patents did not exist in England until 1839 (or in America until 1842). *See* Jason J. DuMont, *The Origins of American Design Patent Protection*, 88 Ind. L.J. 837, 854 (2015). But today's design patent cases are like utility patent cases, which, in 1790, were tried in English law courts to juries. *Markman v. Westview Insts., Inc.,* 517 U.S. 370, 377 (1996) ("[I]nfringement cases today must be tried to a jury, as their predecessors were more than two centuries ago.").

17

The second factor examines if the remedy is "legal or equitable." *Chauffeurs,* 494 U.S. at 565. Disgorgement of profits "is not easily characterized as legal or equitable, for it is an amalgamation of rights and remedies drawn from both systems." Restatement (Third) of Restitution and Unjust Enrichment § 4, Cmt. b (2011). "If restitution to the claimant is accomplished exclusively by a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law, the remedy is presumptively legal." *Id.* at Cmt. c. That describes § 289—Columbia wants money, not an injunction or other equitable device.

The design patent statute underscores its remedy is legal, at least for Seventh Amendment purposes, and shows that Congress intended a statutory right to jury. Section 289's predecessors provided for recovery of the defendant's profits "by an action at law." *See* 35 U.S.C. § 74 (1946); 24 Stat. 387, § 1 (1887). Although Congress removed that reference in § 289, that did not change the remedies' character. A complaint seeking the defendant's profits still "pleads an action at law," so the parties have a jury right. *Ross v. Plastic Playthings, Inc.*, 138 F. Supp. 887, 888 (S.D.N.Y. 1956).

Columbia does not cite any case holding that there is no jury right on § 289 damages. Columbia mostly relies on cases that do not address the jury right, but rather laches in copyright or utility patent infringement (*Petrella v. MGM*, 134 S. Ct.

1962, 1967 n.1 (2014); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 964 (2017)); whether a court can freeze a trademark defendant's assets (*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559–60 (9th Cir. 1992)); or whether equity courts may award profits (*Packet Co. v. Sickles*, 86 U.S. 611, 617–618 (1874); *Burdell v. Denig*, 92 U.S. 716, 720 (1875)).

None of those cases require treating the profits remedy in an infringement action as purely equitable for Seventh Amendment purposes.  It was long established that "[t]hough called profits, they are really damages," *Mowry v. Whitney*, 81 U.S. 620, 653 (1871), and "it has always been recognized that there may be a suit for accounting at law." *Kennedy v. Lakso Co., Inc.*, 414 F.2d 1249, 1253 (3d Cir. 1969). Juries calculated profits when the remedy was awarded at law. *Id.*  Although profits were also available in equity courts, this was only "incidental to an injunction to avoid multiplicity of suits," and "not because the jury was considered an inappropriate office for compensation." *Swofford v. B&W, Inc.*, 336 F.2d 406, 411 (5th Cir. 1964).  It was "a rule of administration and not of jurisdiction." *Id.*  So, although *Petrella* allowed laches to bar recovery of profits in copyright, as equity courts had historically, this does not mean there is no jury right, as there was when law courts had awarded profits.

Indeed, courts who have addressed the issue in infringement cases find a jury right on an accounting for profits.  *See, e.g., Kennedy*, 414 F.2d at 1253–54 ("[N]o

distinction can be drawn which would justify recognition of the right to jury trial for 'damages' and its denial in a claim for 'profits' on the theory that 'damages" are recoverable in an action at law whereas 'profits' have their origin in equitable principles which hold the infringer a trust for the patent holder."); *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F. 2d 1157, 1175 (9th Cir. 1977) (finding jury right on profits in copyright and refusing "to deprive the parties of a jury on what is basically a money claim for damages based on a charge of . . . infringement"); *Swofford*, 336 F.2d at 411 (same for patent infringement); *Ross*, 137 F. Supp. at 888 (same for § 289); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962) (jury right on "accounting" for trademark damages, which included a defendant's profits); *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1314 (Fed. Cir. 2013) (*en banc*) (describing *Dairy Queen* as holding that "even if a proceeding was, in the traditional sense, an equitable accounting, a jury trial was nonetheless required"); 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2312 (3d ed. 2008) ("In terms of jury trial, there is now no difference between a claim for damages and a claim for profits.  No matter how characterized, there is a right to jury trial."). This Court should thus likewise find a right to jury trial here.

## <u>**CONCLUSION**</u>

The Court should affirm the jury's noninfringement verdict. However, should that verdict be disturbed, the Court should also vacate the previous jury's damages verdict.

Dated: June 17, 2022                         Respectfully submitted,

                                             */s/ John W. Thornburgh*
                                             Christopher S. Marchese
                                             Seth M. Sproul
                                             John W. Thornburgh
                                             FISH & RICHARDSON, P.C.
                                             12860 El Camino Real, Suite 400
                                             San Diego, CA 92130
                                             (858)-678-5070

                                             *Counsel for* Defendant-Cross-Appellant

## **CERTIFICATE OF COMPLIANCE**

This brief is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).   The brief contains 5,039 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).   This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:   June 17, 2022                    */s/ John W. Thornburgh*
                                          John W. Thornburgh